## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| JAMES TRACY,<br><br>    Plaintiff,<br><br>    v.<br><br>FLORIDA ATLANTIC UNIVERSITY<br>BOARD OF TRUSTEES, a/k/a FLORIDA<br>ATLANTIC UNIVERSITY, et al.<br><br>    Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Case No. 9:16-cv-80655-RLR-JMH

**PLAINTIFF'S MEMORANDUM
OF LAW IN OPPOSITION
TO DEFENDANTS'
MOTION TO DISMISS**

COMES NOW, Plaintiff, JAMES TRACY, files this Memorandum of Law in Opposition to the Motion to Dismiss filed by Defendants Florida Atlantic University Board of Trustees, a/k/a Florida Atlantic University, John W. Kelly, Christopher Beetle, Gary Perry, Diane Alperin and Heather Coltman (the "FAU Defendants") and Defendants Florida Education Association, United Faculty of Florida, Michael Moats, and Robert Zoeller, Jr. (the "Union Defendants"), and states as follows:

## I.    INTRODUCTION

Plaintiff, Dr. James Tracy, was awarded lifetime tenure by Florida Atlantic University ("FAU") in 2008. In 2016, Plaintiff was wrongfully terminated from his tenured faculty position in and through violations of his constitutionals rights, giving rise to the present action. Plaintiff was first threatened with disciplinary action by school officials in early 2013, for not reporting his constitutionally protected online speech for administrative evaluation and censorship pursuant to the Defendant University's "Conflict of Interest/Outside Activities" policy. *See* Am. Compl., ¶¶ 57-80. However, FAU's initial attempt at unlawful discipline against Plaintiff ended following intervention by Plaintiff's union representatives, and cease and desist letters from the

American Association of University Professors ("AAUP") and Foundation for Individual Rights in Education ("FIRE"). *See* Am. Compl., ¶¶ 73-74; Ex. I; Ex. J; ¶ 80. Plaintiff was once again threatened with the same unconstitutional disciplinary action by the FAU Defendants in late 2015, but this time, the Union Defendants turned on Plaintiff, conspiring with and aiding the FAU Defendants in wrongfully terminating Plaintiff's employment. *See* Am. Compl., ¶¶ 85-110.

The Defendants baldly argue Plaintiff fails to state *any* claims against *anyone* in his Amended Complaint. However, the Amended Complaint and *applicable* case law demonstrate Plaintiff has clearly and sufficiently pled multiple valid claims against each and every named Defendant. As set forth in more detail below, Plaintiff's Amended Complaint clearly and sufficiently alleges that Professor Tracy's termination, and the manner in which it was secured, violated his constitutional rights, including his right to free speech and due process of law.

Plaintiff's ten (10) counts are as follows:

**A.     Count I - Against Defendant University for Facial Challenge to Florida Atlantic University's "Outside Activities/Conflict of Interest" Policy Under the First and Fourteenth Amendments. (Am. Compl. ¶¶ 139-148)**

It is well settled that any statute or policy attempting to restrict or burden the exercise of First Amendment rights must be narrowly drawn. *See Broadrick v. Oklahoma,* 413 U.S. 601, 611-612 (1973)(holding, *inter alia*, that "litigants are permitted to challenge a statute not because their own rights of free expression are violated, but because a judicial prediction or assumption that the statute's very existence may cause others not before the court to refrain from constitutionally protected speech or expression."). The Defendant University's "Conflict of Interest/Outside Activities" Policy is unconstitutional if Plaintiff establishes that "persons of common intelligence must necessarily guess at the meaning and differ as to its application." *Connally v General Construction Company*, 46 S.Ct. 126 (1926).

Plaintiff's Amended Complaint satisfies the legal threshold for stating a claim for a facial challenge to the Defendant University's "Conflict of Interest/Outside Activities" policy, sufficiently alleging that it "is unconstitutionally overbroad and vague, does not serve a significant governmental interest, is not narrowly drawn, and impermissibly restricts faculty expression and freedom of speech." *See* Am. Compl. ¶ 142. Plaintiff alleges, "[t]here is no set of circumstances that exist under which the Defendant University's "Conflict of Interest/Outside Activities" policy would be valid." *See* Am. Compl. ¶ 143. "The Defendant University's "Conflict of Interest/Outside Activities" policy is so vague and overbroad persons of common intelligence must necessarily guess at its meaning and differ as to its application. Even senior administrative officials at the Defendant University do not understand the scope and application of the policy." *See* Am. Compl. ¶ 144.

Count I further alleges: "As a direct result of the Defendant University's unconstitutional "Conflict of Interest/Outside Activities" policy, faculty at the Defendant University are deprived of their right to free speech under the First and Fourteenth Amendments to the Constitution, one of whom was Professor Tracy." See Am. Compl. ¶ 145. "The Defendant University's "Conflict of Interest/Outside Activities" policy deters or chills persons of ordinary firmness from engaging in constitutionally protected speech, and will continue to do so in the future." See Am. Compl. ¶ 146. "Without intervention from this Court, employees and faculty at Florida Atlantic University will be deterred or chilled from exercising their constitutional rights, including but not limited to sharing unpopular information or expressing unpopular opinions." *See* Am. Compl. ¶ 147. "As a legal consequence of the Defendant University's facially unconstitutional "Outside Activities/Conflict of Interest" Policy, which violated Professor Tracy's and other similarly situated individuals' First and Fourteenth Amendment rights, all of which is irreparable injury

per se, Professor Tracy is entitled to declaratory and injunctive relief, including but not limited to reinstatement." *See* Am. Compl. ¶ 148.

### B.    Count II – Against Defendants Kelly, Alperin, Perry and Coltman for As Applied Violation of Plaintiff's Right to Free Speech Under First and Fourteenth Amendments. (Am. Compl. ¶¶ 149-159)

An as-applied challenge to Defendant University's policy addresses whether it is unconstitutional based on the facts of Plaintiff's case. *See Harris v. Mexican Specialty Foods, Inc.*, 564 F.3d 1301, 1308 (11th Cir. 2009). Plaintiff's challenge requires the development of a factual record for the Court to consider. *Id; see also Siegel v. LePore*, 234 F.3d 1163, 1171 (11th Cir. 2000). The Amended Complaint sufficiently alleges that Plaintiff has suffered, or imminently will suffer, an injury-in-fact; the injury is fairly traceable to the operation of the Defendant University's "Conflict of Interest/Outside Activities" policy; and a favorable judgment is likely to redress the injury. *See Harell v. The Florida Bar, 608 F.3d 1241, 1253;* Kelly v. Harris, 331 F.3d 817, 819–20 (11th Cir.2003).

Count II alleges Professor Tracy engaged in constitutionally protected expression and was disciplined and fired in response to his exercise of constitutional rights. *See* Am. Compl. ¶ 150. Defendants Alperin, Coltman, Perry and Kelly are alleged to have supervised, facilitated, recommended and approved Plaintiff's discipline and termination using the unconstitutional policy; and acted intentionally, knowingly, willfully, wantonly, and in reckless disregard of Professor Tracy's federally-protected constitutional rights and violated clearly established constitutional rights of which all reasonable college administrators and staff should have known, rendering them liable to Professor Tracy under 42 U.S.C. § 1983. (*See* Am. Compl. ¶¶ 151-156).

The count also sets forth that "[t]he termination of Professor Tracy's tenured position with Florida Atlantic University, pursuant to the Defendant University's unconstitutional "Conflict of Interest/Outside Activities" policy, directly resulted in substantial and irreparable

4

harm to Professor Tracy, including lost income, reputational disparagement, the loss of a tenured appointment at Florida Atlantic University and out of pocket expenses, including but not limited to attorneys' fees and costs." *See* Am. Compl. ¶ 157. "To prevent further violation of constitutional rights of the Defendant University's faculty members, it is appropriate and proper that this Court issue a declaratory judgment declaring that the Defendant University's "Conflict of Interest/Outside Activities" policy is unconstitutionally vague, overbroad, and not narrowly tailored to serve a substantial government interest and unconstitutionally imposes prior restraints on faculty expression and speech." *See* Am. Compl. ¶ 158.

C.      **Count III – Against Defendants Alperin, Coltman, Perry, Kelly and Beetle for Retaliation in Violation of Plaintiff's Rights to Free Speech & Substantive Due Process Under First and Fourteenth Amendments. (Am. Compl. ¶¶ 160-175)**

To establish a claim for retaliation under Section 1983, Plaintiff must show that he engaged in constitutionally protected activity and that the protected conduct played a substantial or motivating role in the alleged adverse employment action. *See Walden v. CDC*, 669 F.3d 1277, 1289 (11th Cir. 2012). In retaliation cases where a public employer's claimed reasons for discharging an employee are unrelated to the employee's speech, federal courts still apply the *Pickering* "balancing" test. See *Vista Community Services v. Dean*, 107 F.3d 840, 845 (11th Cir. 1997).

Plaintiff clearly states a claim for First Amendment retaliation against the FAU Defendants. Count III alleges that "[a]t all times material to the Amended Complaint, Professor Tracy engaged in constitutionally protected activities, which included his independent research, analysis and viewpoints and other speech involving matters of public concern expressed online and on his personal blog," and that Plaintiff's "constitutionally protected speech, including his independent research, analysis, viewpoints and other speech involving matters of public concern

expressed online and on his personal blog, played a substantial part and was a motivating factor in the decision of Defendants Alperin, Coltman, Perry, Kelly, and other unknown officials at FAU, to terminate Professor Tracy's tenured employment." *See* Am. Compl. ¶¶ 164-165.

Additionally, Plaintiff alleges that his constitutionally protected speech "played a substantial part and was a motivating factor in the Defendant University's decision to terminate Professor Tracy's tenured employment" and that "Defendants Alperin, Coltman, Kelly, Perry, and other senior administrative officials used Defendant University's "Conflict of Interest/Outside Activities" policy to unconstitutionally and unlawfully restrict faculty expression and freedom of speech." *See* Am. Compl. ¶¶ 166-167.

Defendant Beetle is also alleged to have "aided and participated in the unlawful discipline of Professor Tracy, and other similarly situated FAU faculty members, by denying multiple requests by FAU faculty members to investigate and/or refer complaints about FAU's unlawful 'Conflict of Interest/Outside Activities' policy to the FAU Faculty Senate's Academic Freedom and Due Process Committee, and by failing to seek a moratorium against such unconstitutional and unlawful discipline, which resulted in Professor Tracy's unconstitutional termination." *See* Am. Compl. ¶ 169.

Plaintiff also alleges FAU Defendants "had no legitimate government interest in disciplining and terminating Professor Tracy and other similarly situated faculty members for exercising their constitutional rights to freedom of speech and expression." *See* Am. Compl. ¶ 170. "The retaliatory actions of officials at the Defendant University, including but not limited to Defendants Alperin, Coltman, Perry, Kelly and Beetle, in response to Professor Tracy's constitutionally protected speech, have had a chilling effect that acts as a deterrent to free speech." *See* Am. Compl. ¶ 171. "Through their acts and/or omissions, Defendants Alperin,

Coltman, Perry, Kelly, Beetle, and other officials at the Defendant University, violated clearly established constitutional rights of which all reasonable college administrators and staff should have known, rendering them liable to Professor Tracy under 42 U.S.C. § 1983." *See* Am. Compl. ¶ 172. "The termination of Professor Tracy's tenured position with Florida Atlantic University directly resulted in substantial and irreparable harm to Professor Tracy, including lost income, reputational disparagement, the loss of a tenured appointment at Florida Atlantic University and out of pocket expenses, including but not limited to attorneys' fees and costs, as a consequence of being denied his First and Fourteenth Amendment rights." *See* Am. Compl. ¶ 175.

**D.    Count IV – Against Defendant University and Defendants Alperin, Coltman, Perry and Kelly for Declaratory Judgment and Injunction. (Am. Compl. ¶¶ 176-181)**

Plaintiff's Amended Complaint alleges a real and substantial justiciable controversy; a definite and concrete case admitting of an immediate and definite determination of the legal rights of the parties. *See Public Service Commission of Utah v. Wycoff Co. Inc., 344 U.S. 237, 242-243 (1952).* Count IV provides, "[a]n actual controversy has arisen and now exists between Professor Tracy, other similarly situated faculty members at the Defendant University, and the Defendant University's officials, including but not limited to Defendants Alperin, Coltman, Perry and Kelly, concerning the rights of Professor Tracy and other similarly situated faculty members at the Defendant University, under the United States Constitution." *See* Am. Compl. ¶ 177. "Professor Tracy desires a judicial determination of his rights and the rights of other similarly situated FAU faculty members, against the Defendant University and Defendants Alperin, Coltman, Perry and Kelly, to speak without being subjected to the Defendant University's unconstitutional "Conflict of Interest/Outside Activities" policy." *See* Am. Compl. ¶ 178.

7

Count VI further alleges "To prevent further violation of constitutional rights of the Defendant University's faculty members, it is appropriate and proper that this Court issue a declaratory judgment declaring that the Defendant University's "Conflict of Interest/Outside Activities" policy is unconstitutionally vague, overbroad, and not narrowly tailored to serve a substantial government interest and unconstitutionally imposes prior restraints on faculty expression and speech." *See* Am. Compl. ¶ 179. "To prevent further violation of constitutional rights of the Defendant University's faculty members, it is appropriate and proper that this Court issue a declaratory judgment declaring that Defendants Alperin, Coltman, Perry, Kelly, and any and all other officials and representatives of the Defendant University, cannot use the policy to impose prior restraints on constitutionally protected faculty speech and expression." *See* Am. Compl. ¶ 180.  "This Court is authorized, pursuant to 28 U.S.C. §§ 2201-2202 and Rules 57 and 65 of the Federal Rules of Civil Procedure, to award the requested declaratory and injunctive relief, including but not limited to Professor Tracy's reinstatement." *See* Am. Compl. ¶ 181.

> **E.      Count V – Against Defendants Alperin, Coltman, Perry and Kelly for Violation of Plaintiff's Right to Procedural Due Process (Am. Compl. ¶¶ 182-187.)**

Plaintiff has sufficiently alleged he suffered a deprivation of life, liberty or property without proper notice or opportunity for hearing. See *Cleveland Board of Education v. Laudermill*, 105 S.Ct. 1487 (1985). Count V provides that "Professor Tracy possessed a property interest in his membership in the Defendant University's tenured faculty…which he was deprived of when Defendants Alperin, Coltman, Perry, Kelly, and other unknown officials at the Defendant University, unlawfully terminated Professor Tracy for his constitutionally protected speech." *See* Am. Compl. ¶ 183. "Professor Tracy also suffered a deprivation of his liberty interest as a result of the false and defamatory statements made about Professor Tracy [by the

FAU Defendants], in conjunction with Professor Tracy's unconstitutional disciplinary action and termination. The false and defamatory statements—including but not limited to public statements falsely claiming that Professor Tracy had been insubordinate and failed to comply with the Defendant University's policies—caused Professor Tracy to suffer substantial harm and stigma to his professional, intellectual and business reputation. *See* Am. Compl. ¶ 184. Based on the manner in which Professor Tracy's employment was terminated, he was deprived of a property interest and a liberty interest in violation of his rights under the Fourteenth Amendment to the Constitution of the United States. *See* ¶ Am. Compl. 185.

Additionally, Plaintiff alleges that by being terminated for alleged non-compliance with the Defendant University's "Conflict of Interest/Outside Activities" policy, when the actual reason for his firing was his constitutionally protected speech, Defendants Alperin, Coltman, Perry and Kelly failed to provide Professor Tracy with notice or a fair opportunity to be heard, or to challenge the unconstitutional disciplinary action. *See* Am. Compl. ¶ 186. Count V also alleges as a "direct and proximate result of the denial of actual notice of the [*actual*] reason for his termination, or a fair opportunity to be heard or to challenge the termination through pre-termination or post-termination procedures, Professor Tracy suffered substantial and irreparable harm, including lost income, reputational damage, the loss of a tenured appointment at Florida Atlantic University, monetary damages and other out of pocket expenses, including but not limited to attorneys' fees and costs. *See* Am. Compl.  ¶ 187.

## F.   Count VI – Against Union Defendants and Other Unknown Co-Conspirators for Conspiracy to Violate Plaintiff's Right to Procedural Due Process (Am. Compl. ¶¶ 188-200)

The Amended Complaint clearly states claims for civil conspiracy and an actual deprivation of Plaintiff's rights. *See Hampton v. Hanrahan, et al.*, 600 F.2d 600 (7th Cir. 1979).

Count VI alleges the conspiracy involved the combination of two or more persons acting in concert to commit unlawful acts and an agreement between the parties to inflict a wrong against or injury upon another, and overt acts resulting in damage. *Id.* The Plaintiff is not required to provide direct evidence of any agreement between the conspirators. *Id. See also Hoffman-LaRoche, Inc. v. Greenberg,* 447 F.2d 872, 875 (7th Cir. 1971); *United States v. Varelli,* 407 F.2d 735, 741-42 (7th Cir. 1969).

Count VI of the Amended Complaint satisfies the requisite elements of conspiracy and violations of procedural due process under Section 1983, alleging numerous overt acts resulting in harm and damages to Plaintiff, and a chilling effect on speech to other similarly situated faculty members at the Defendant University. The Amended Complaint alleges "Defendants Zoeller, Defendant Moats and officials and/or representatives of the Defendant University, in addition to other co-conspirators not yet known to Professor Tracy, shared the common goal of terminating Professor Tracy's employment at FAU and violating his constitutional rights, and acting alone or in concert with others, conspired to terminate Professor Tracy's tenured appointment at Florida Atlantic University and to violate Professor Tracy's constitutional rights, including his right to free speech and due process." See Am. Compl. ¶ 189.

It is alleged that "Union Defendants, including Defendants Zoeller, Moats, and Defendants UFF and FEA, are deemed state actors under 42 U.S.C. § 1983 because, at all times material to the Amended Complaint, they were intertwined in a symbiotic relationship with the Defendant University, which involved conspiring with FAU officials and/or representatives to violate the constitutional rights of Professor Tracy, and similarly situated tenured faculty at the Defendant University." See Am. Compl. ¶ 190; *See Lehman v. Scott*, 2009 WL 1228433, at *3 (M.D. Fla. May 4, 2009). "Defendants Zoeller and Moats, in addition to other co-conspirators

not yet known to Professor Tracy, met with FAU officials and/or representatives of the Defendant University not yet known to Professor Tracy, and reached an agreement to deny Professor Tracy the opportunity to challenge the Defendant University's unconstitutional disciplinary action." See Am. Compl. ¶ 191.

Plaintiff alleges, "[i]n furtherance of the conspiracy to deny Professor Tracy's right to procedural due process, the Union Defendants, including but not limited to Defendant Zoeller and Defendant Moats, in addition to other co-conspirators not yet known to Professor Tracy, failed to file a grievance or respond to the Defendant University's November 2015 Notice of Discipline and Notice of Intent to Terminate on Plaintiff's behalf, as was promised by representatives and agents of the Defendants UFF and FEA, including Defendant Moats." See Am. Compl. ¶ 192. "In furtherance of the conspiracy to deny Professor Tracy's right to procedural due process, the Union Defendants, including Defendant Moats and other agents and representatives of the Defendants UFF and FEA: (1) misadvised Professor Tracy that the unlawful disciplinary actions of officials at the Defendant University were valid or otherwise lawful; (2) attempted to coerce Professor Tracy into resigning to avoid termination; and (3) attempted to pressure Professor Tracy into accepting a meager severance offer made by the Defendant University, and to not file a lawsuit." See Am. Compl. ¶¶ 193-195.

It is also alleged that "[a]s a result of the Union Defendants' failure to file a grievance on behalf of Professor Tracy, and failure to defend Professor Tracy and respond to the Defendant University's Notice of Intent to Terminate, Professor Tracy was denied the opportunity to challenge the Defendant University's wrongful discipline, to tell his side of the story and be heard by an impartial decision maker." See Am. Compl. ¶ 196. "Based on the manner in which Professor Tracy's employment was terminated, he was denied any hearing or opportunity to

challenge that action either before or after it was taken. Defendants Zoeller, Defendant Moats, and officials and/or representatives of the Defendants UFF, FEA and the Defendant University, in addition to other co-conspirators not yet known to Professor Tracy, thereby deprived Professor Tracy of a property interest and a liberty interest in violation of his rights under the Fourteenth Amendment to the Constitution of the United States." See Am. Compl. ¶ 197.

Plaintiff also alleges "[i]n furtherance of the conspiracy, each of the co-conspirators committed overt acts and was an otherwise willful participant in joint activity." See Am. Compl. ¶ 198. "The misconduct described in this Count was objectively unreasonable and was undertaken intentionally with willful indifference to Professor Tracy's constitutional rights. See Am. Compl. ¶ 199. "As a direct and proximate result of the denial of pre-termination or post-termination procedures, Professor Tracy suffered substantial and irreparable harm, including lost income, the loss of a tenured appointment at Florida Atlantic University and out of pocket expenses, including but not limited to attorneys' fees and costs." *See* Am. Compl. ¶ 200.

### G. Count VII – Against Defendants Alperin, Coltman, Kelly, Beetle, Moats, Zoeller and Other Unknown Co-Conspirators for Conspiracy to Interfere with Plaintiff's Civil Rights (Am. Compl. ¶¶ 201-206)

Count VII also satisfies the requisite elements of civil conspiracy under Section 1983. Plaintiff alleges that "Defendants Alperin, Coltman, Perry, Kelly, Beetle, Moats and Zoeller, and other unknown officials and/or representatives of the Defendant University and Defendants UFF and FEA, acting alone or in concert with other co-conspirators not yet known to Professor Tracy, conspired to interfere with and deprive Professor Tracy of his constitutional rights, including his right to freedom of speech and due process; and as a direct and proximate result of the illicit agreement and conspiracy, Professor Tracy's rights were violated, resulting in substantial and irreparable harm, including lost income, the loss of a tenured appointment at Florida Atlantic

University and out of pocket expenses, including but not limited to attorneys' fees and costs. *See* Am. Compl. ¶¶ 202-206.

### H.      Count VIII – Against Defendant University for Breach of Contract (Am. Compl. ¶¶ 207-217)

Plaintiff sufficiently alleges the existence of a valid contract, a material breach and damages. *See Trowell v. South Financial Group, Inc.*, 315 Fed.Appx 163 (11th Cir. 2008). Count VIII states that "[a]t all times material to this Amended Complaint, there was a valid and enforceable contract between Professor Tracy and the Defendant University. *See* Am. Compl. ¶ 208; See Exhibit "C".

It is further alleged that the Defendant University "breached the FAU BOT/UFF Agreement, including but not limited to, Sections 5.3(c) and (d), by (1) attempting to censor Professor Tracy, and prevent him from exercising his constitutional rights, including but not limited to the exercise of his freedom of speech; (2) changing the Defendant University's "Conflict of Interest/Outside Activities" policy without providing proper advance notice to FAU's faculty as required by the Agreement; (3) by disciplining Professor Tracy for requesting clarification on the FAU's vague and confusing "Conflict of Interest/Outside Activities" policy; (4) wrongfully disciplining and terminating Professor Tracy's tenured appointment without just cause." *See* Am. Compl. ¶ 213-216. "As a result of the breach of the FAU BOT/UFF Agreement by the Defendant University, Professor Tracy has suffered damages, including but not limited to monetary damages, lost income and benefits, the loss of a tenured position at the Florida Atlantic University, reputational damage, in addition to attorneys' fees and costs." *See* Am. Compl. ¶ 217.

I. **Count IX – Against Union Defendants for Breach of Contract (Am. Compl. ¶¶ 218-223)**

Count IX also sets forth a valid claim for breach of contract, alleging "[a]t all times material…there was a valid and enforceable contract between Professor Tracy and Union Defendants, including Defendant Zoeller, Defendant Moats and Defendants UFF and FEA. *See* Am. Compl. ¶ 219; Exhibit "C".

Plaintiff alleges Union Defendants, "including Defendant Zoeller, Defendant Moats and other representatives of the Defendants UFF and FEA, breached the FAU BOT/UFF Agreement, including Section 20, by failing to file a grievance or response on behalf of Professor Tracy when he was faced with unlawful disciplinary action." *See* Am. Compl. ¶ 221. The Union Defendants, including Defendants Zoeller and Moats and other agents and representatives of the Defendants UFF and FEA, also breached the FAU BOT/UFF Agreement by failing to represent and defend Professor Tracy when faced with unlawful disciplinary action. *See* Am. Compl. ¶ 222. "As a result of the Breach of the FAU BOT/UFF Agreement by the Union Defendants, Professor Tracy has suffered damages, including but not limited to monetary damages, lost income and benefits, the loss of a tenured position at the Florida Atlantic University, reputational damage, in addition to attorneys' fees and costs." *See* Am. Compl. ¶ 223.

J. **Count X – Against Union Defendants for Breach of Fiduciary Duty (Am. Compl. ¶¶ 224-236)**

Count X alleges the existence of a fiduciary duty, breach of that duty, and damages flowing from the breach. *See Rhodes v. O. Turner & Co., LLC*, 117 So.3d 872 (Fla. 4th DCA 2013). It states, "Defendant Zoeller, Defendant Moats and other agents and representatives of the Defendants UFF and FEA, knew or had reason to know that Professor Tracy was placing trust and confidence in them and that Professor Tracy was relying on their representations to ensure

proper protocol and procedures were followed in all matters pertaining to safeguarding Professor Tracy's constitutional rights and tenured employment at the Defendant University." *See* Am. Compl. ¶ 225. "The Union Defendants, including Defendant Zoeller, Defendant Moats and other agents and representatives of the Defendants UFF and FEA, had a fiduciary relationship and duty expressly and impliedly based upon the BOT/UFF Agreement and the specific circumstances described herein surrounding the long term employment relationship and personal assurances of the Union Defendants." *See* Am. Compl. ¶ 226. "Professor Tracy was justified in placing trust and confidence in the Union Defendants, including Defendant Zoeller, Defendant Moats and other agents and representatives of the Defendants UFF and FEA." *See* Am. Compl. ¶ 227.

It's alleged that Union Defendants breached their fiduciary duty to Plaintiff by: 1) "failing to ensure that proper procedures were followed to safeguard and protect Professor Tracy's tenured employment and constitutional rights." *See* Am. Compl. ¶ 228; 2) "denying Professor Tracy his right to union representation when, in November of 2015, senior administrative officials at the Defendant University again sought to wrongfully and unconstitutionally discipline Professor Tracy." *See* Am. Compl. ¶ 229; 3) "advising and instructing Professor Tracy that he should submit "Outside Activities" forms for his personal blogging and constitutionally protected speech, despite this advisement and instruction directly contradicting the advisement and instruction Defendant Moats and other agents and representatives of the Defendants UFF and FEA rendered to Professor Tracy in 2013." *See* Am. Compl. ¶ 230; 4) "failing to file a grievance requested by Professor Tracy, and by advising Professor Tracy and other union representatives that the unconstitutional disciplinary action threatened by the Defendant University was "not grievable". *See* Am. Compl. ¶ 231; 5) "failing to respond to the Notice of Termination issued by senior administrative officials at the Defendant

University, as promised." *See* Am. Compl. ¶ 232; 6) "advising Professor Tracy that the unlawful disciplinary actions of senior administrative officials at the Defendant University were "valid" or otherwise lawful." *See* Am. Compl. ¶ 233; 7) "attempting to coerce Professor Tracy into resigning to avoid termination." *See* Am. Compl. ¶ 234; and 8) "attempting to pressure Professor Tracy into accepting a meager severance offer made by the Defendant University, and to not file a lawsuit. *See* Am. Compl. ¶ 235.

Count X further alleges "[a]s a result of the breach by the Union Defendants, Professor Tracy has suffered damages, including but not limited to monetary damages, lost income and benefits, the loss of a tenured position at the Defendant University, reputational damage, in addition to attorneys' fees and costs." *See* Am. Compl. ¶ 236.

## II.   PLAINTIFF'S COMPLAINT SATISFIES *TWOMBLY/IQBAL* STANDARD

Defendants' Motion to Dismiss impermissibly asks the Court to raise the "exceedingly low" threshold that Plaintiff's Complaint must meet to survive a motion to dismiss. *See Ancata v. Prison Health Svcs., Inc.* 769 F.2d 700, 703 (11th Cir. 1985); *Jackam v. Hospital Corp. of Am. Mideast, Ltd.*, 800 F.2d 1577, 1579 (11th Cir. 1986). A complaint survives a motion to dismiss even if it is "improbable" that a plaintiff would be able to prove those facts and if the possibility of recovery is extremely "remote and unlikely". *See Bell Atlantic v. Twmobly*, 550 U.S. 544, 556 (2007); *see also Sanjuan v. American Bd. Of Psychiatry and Neurology, Inc.*, 40 F. 3d 247, 251 (7th Cir. 1994) (noting that at the pleading stage, the plaintiff "receives the benefit of imagination").

The Amended Complaint, including more than two hundred (200) paragraphs and dozens of exhibits, is far from illusory or imaginative. Plaintiff explicitly, and with the level of specificity required under the law, alleges Defendants have violated and will continue to violate

well established law and constitutional rights absent intervention from the Court. When read in the light most favorable to Plaintiff, the Amended Complaint indisputably satisfies the legal standard for surviving a motion to dismiss, allowing the Court to draw the reasonable inference the Defendants are liable for all alleged misconduct. *See Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1940 (2009).

## III.   PLAINTIFF STATES MULTIPLE VALID CLAIMS AGAINST FAU DEFENDANTS

### A.   Plaintiff is Entitled to Declaratory & Injunctive Relief To End FAU Defendants' Ongoing Violations Of Law & Constitutional Rights

Official capacity suits against state officials are not only permissible, but necessary when the plaintiff seeks prospective equitable relief to end continuing violations of law by state officials. *See Ex parte Young*, 209 U.S. 123 (1908); *See also Summit Med. Assocs. v. Pryor*, 180 F.3d 1326, 1336. Chief Justice John Marshall stated over two centuries ago that the essence of civil liberty lies in the right of every citizen to claim the protection of the laws. *See Marbury v. Madison*, 5 U.S. 137 (1803). As the Supreme Court has pointed out on many occasions, federal courts are empowered to fashion such remedies, including the issuance of injunctions, as are necessary to vindicate rights which have been secured under the Constitution and laws of the United States. *See also Bell v. Hood*, 327 U.S. 678, 684 (1946). *See also Spielman Motor Sales Co. v. Dodge*, 295 U.S. 89, 95 (1935); Requests for reinstatement constitute such prospective injunctive relief. *See Allen v. Autauga County Board Education,* 685 F.2d 1302 (11th Cir. 1982) (holding "reinstatement is a basic element of the appropriate remedy in wrongful employee discharge cases and, except in extraordinary cases, is required." (internal citations omitted)); See also *Cross v. Ala. State Dep't of Mental Health & Mental Retardation*, 49 F.3d 1490, 1503 (1995).

Section 1983 was designed to provide a comprehensive remedy for the deprivation of federal constitutional and statutory rights, including back pay, which is not a claim for damages, but rather an integral part of the equitable remedy of injunctive reinstatement. *See Harkless v. Sweeny Independent School District*, 427 F.2d 319, 324 (5th Cir. 1974); *See also NLRB v. Jones & Laughlin Steel Corp.*, 301 U.S. 1 (1937); *Agwilines, Inc. v. NLRB*, 87 F.2d 146, 151 (1936). FAU Defendants fail in demonstrating Plaintiff is not entitled to injunctive and declaratory relief (including but not limited to back pay) because Plaintiff has sufficiently alleged past and ongoing violations of clearly established constitutional and statutory rights. FAU Defendants rely solely on *Walden* to support their invalid claim that "a former employee has no standing to seek declaratory or injunctive relief for alleged violations of constitutional law when his employment has been terminated and he cannot allege that his constitutional rights continue to be burdened or are likely to be burdened in the future." See *Walden v. CDC*, 669 F.3d 1277, 1289 (11th Cir. 2012).  FAU Defendants reading and reliance on *Walden* is misplaced and not supported by federal law. *See infra.*

It is true that certain prospective injunctive relief may only be granted when there are continuing violations of federal law. This "continuing violation" requirement applies to bar only requests for prospective declaratory or injunctive relief when such requests equate to a request for a "general . . . court-ordered directive that a defendant obey the law" or a "declaration that these defendants violated . . . rights in the past". *See Spurrier v. Bd. of Trustees of the U. of Alabama*, 2016 WL 4137971, at FN 3 (N.D. Ala. Aug. 4, 2016).

However, in unlawful termination cases, when a Plaintiff requests reinstatement as a form of prospective injunctive relief, the "continuing violation" requirement is met and the claim for such prospective relief is viable. *See Id.* at *5, FN 3 (N.D. Ala. Aug. 4, 2016)(*citing  Wood v.*

*Dixon*, 2013 WL 6183143, at *4 (S.D. Ala. Nov. 26, 2013).

In *Wood*, the Court explicitly held that the plaintiff lacked standing to assert prospective injunctive relief pursuant to *Ex parte Young* because she was not seeking reinstatement. *See Wood v. Dixon*, 2013 WL 6183143, at *4 (S.D. Ala. Nov. 26, 2013). Whether an unlawfully terminated plaintiff has standing to assert requests for prospective injunctive or declaratory relief turns upon whether the plaintiff seeks reinstatement of employment. *See* Hollywood Mobile Estates Ltd. v. Cypress*, 415 Fed. App'x 207, 209–10 (11th Cir. Feb. 24, 2011). This is because when a plaintiff seeks reinstatement, the plaintiff is asserting that the constitutionally wrongful termination is a continuing violation because the state official continues to keep the Plaintiff out of his former position. *See Id.* at 209 (citing *Elliott v. Hinds*, 786 F.2d 298, 302 (7th Cir. 1986)(holding that "the goal of reinstatement and the removal of damaging information from the plaintiffs work record is not compensatory; rather, it is to compel the state official to cease her actions in violation of federal law and to comply with constitutional requirements. [Plaintiff's] alleged wrongful discharge is a continuing violation; as long as the state official keeps him out of his allegedly tenured position the official acts in what is claimed to be derogation of [plaintiff's] constitutional rights.").

"[I]n the context of unlawful termination claims,'[e]very Circuit to have considered the issue ... has held that claims for reinstatement to previous employment satisfy *Ex parte Young* exception to the Eleventh Amendment's sovereign immunity bar.' *See Hollywood Mobile Estates Ltd.,* 415 Fed. App'x at 209–10 (11th Cir. Feb. 24, 2011) (quoting *State Emps. Bargaining Agent Coal. v. Rowland,* 494 F.3d 71, 96 (2d Cir. 2007)).

In *Walden*, relied upon by FAU Defendants, the plaintiff asserted a free exercise claim, a free exercise retaliation claim, a free speech retaliation claim, and a RFRA claim, and sought

only damages and declaratory relief. Significantly, the *Walden* plaintiff **did not** request reinstatement of her employment. *See Walden v. CDC*, 669 F.3d 1277, 1289 (11th Cir. 2012). Unlike the plaintiff in *Walden,* Plaintiff's Amended Complaint establishes a prima facie case of First Amendment retaliation resulting in past, present and future injury, and **does** seek reinstatement.

Plaintiff alleges FAU Defendants have violated and will continue to violate constitutional rights using Defendant University's vague and confusing "Conflict of Interest/Outside Activities" policy. Plaintiff alleges the policy deters or chills persons of ordinary firmness from engaging in constitutionally protected speech, and will continue to do so in the future. *See* Am. Compl. ¶¶ 146-147. Plaintiff necessarily seeks declaratory judgment to prevent further violation of constitutional rights by the FAU Defendants. *See* Am. Compl. ¶¶ 158, 179-180. As a legal consequence of FAU Defendants' violations of Plaintiff's rights, which is irreparable injury *per se,* Plaintiff appropriately seeks declaratory relief and prospective injunctive relief, including enjoining FAU Defendants from violating constitutional rights, and including Plaintiff's request for reinstatement of his federally protected tenured employment.

**B.      Plaintiff's Claims Against Individual FAU Defendants in Official Capacities Are Appropriate and Clear.**

FAU Defendants baldly assert that Plaintiff's claims are "duplicative" and target only the Defendant University, or would be "possibly confusing" to the jury. The Complaint states claims not only against the Defendant University for its facially unconstitutional policy, but also against specific university officials, the individual FAU Defendants, who have used that policy to violate clearly established law and will continue to do so absent judicial intervention.

FAU Defendants rely primarily on one case, *Busby*, which dealt with a wrongful termination suit against a city police department. In that case, the plaintiff had no federally

protected property right, and withdrew her First Amendment claims long before the 11th Circuit determined that, "[b]ecause suits against a municipal officer sued in his official capacity and direct suits against municipalities are functionally equivalent, there no longer exists a need to bring official-capacity actions against local government officials, because local government units can be sued directly." *See Busby v. City of Orlando, et al.*, 931 F.2d 764 (11th Cir. 1991).

The Defendant University is not a municipality, thus *Busby,* or any other case involving the municipality exception to sovereign immunity, is wholly inapplicable to the present action. Plaintiff's claims against both the Defendant University and the FAU officials who violated clearly established law would not confuse a jury, given proper instruction, or the Court who will ultimately be tasked with shaping the appropriate and necessary equitable relief.

### C.    FAU Defendants Are Not Entitled To Qualified Immunity

In evaluating the qualified immunity defense for alleged constitutional violations by state officials, Courts utilize a two-part framework. First, as a threshold inquiry, the Court addresses whether the plaintiff's allegations, if true, establish a constitutional violation. *Saucier v. Katz,* 533 U.S. 194, 201 (2001). If the facts, construed in the light most favorable to the plaintiff, show that a constitutional right has been violated, then the Court asks whether the right violated was "clearly established." *Id.*

Qualified immunity only protects government officials performing discretionary functions from liability in their individual capacity if their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Hope v. Pelzer*, 536 U.S. 730 (2002) (quotation omitted). Qualified immunity does not shield against equitable claims. *Marx v. Gumbinner*, 855 F.2d 783, 787 (11th Cir. 1988). In determining whether Plaintiff has alleged a violation of a clearly established right, the Court must look to

prevailing First Amendment law, and apply the *Pickering* "balancing" test. *See Williams v. Alabama State University*, 102 F.3d 1179 (11th Cir. 1997); *See Pickering v. Board of Ed. of Township High School Dist. 205, Will Cty.,* 391 U.S. 563, 568 (1968); *see also infra.* Section III, E.

FAU Defendants assert Plaintiff "fails to plead facts that substantiate any wrongful act on the part of any individual FAU Defendants" hoping to prevent the Court from applying the *Pickering* test. However, Plaintiff alleges FAU Defendants were responsible for unconstitutional policy decisions at Defendant University, despite holding themselves out to be committed to protecting freedom of speech and principles of academic freedom, and an atmosphere of free and open inquiry. *See* Am. Compl. ¶ 41; Exhibit "A". It is alleged that FAU officials, including Defendants Alperin and Coltman, first attempted to wrongfully violate Plaintiff's indistinguishable constitutional rights in 2013 using the Defendant University's vague and confusing "Conflict of Interest/Outside Activities" policy to evaluate and censor his speech on matters of public concern. *See* Am. Compl. ¶¶ 58-79. The initial unlawful disciplinary action was withdrawn in 2013 when met with opposition on constitutional grounds, and for more than two years, FAU Defendants did not attempt to discipline Plaintiff pursuant to the policy. *See* Am. Compl., ¶¶ 80-83.

Plaintiff further alleges that by late 2015, FAU Defendants were well aware, as reasonable school officials would have been under the circumstances, that their conduct and policies were unlawful and violated the constitutional rights of Plaintiff and other similarly situated professors. *See Maddox v. Stephens*, 727 F.3d 1109, 1121 (11th Cir. 2013). The Amended Complaint details the wrongful conduct engaged in by the FAU Defendants, and documented during a September 4, 2015, recorded official meeting, wherein FAU Defendants

Kelly, Beetle, Alperin, and Perry, as well as Union Defendant Zoeller, were all present when several faculty members met to complain of ongoing violations of clearly established constitutional law, and request an official cease and desist. *See* Am. Compl., ¶¶ 117-126; Ex. AE. These complaints were summarily dismissed by Defendant Beetle, the Faculty Senate President and FAU Board of Trustee Member, even though he openly agreed with the concerns and confusion of many FAU faculty members. *See* Am. Compl. ¶¶ 120-126. Defendant Alperin is also on record at this meeting acknowledging and agreeing that the Defendant University's "Conflict of Interest/Outside Activities" policy was problematic, and that FAU school officials had been trying to change it for years. *See* Am. Compl. ¶ 123.

It's further alleged that, despite it being well known at the Defendant University that FAU Defendants were violating clearly established law, the FAU Defendants nonetheless continued to knowingly violate the tenured faculty's constitutional rights through enforcement of FAU's unconstitutionally vague and confusing policy, resulting in Plaintiff's wrongful termination. *See* Am. Compl. ¶¶ 124-127. FAU Defendants must ignore these facts and instead attempt to discredit Plaintiff by misrepresenting his allegations, and the law. However, when read in the light most favorable to Plaintiff, the Amended Complaint clearly and sufficiently pleads past and ongoing violations of indistinguishable constitutional rights. For example, the Amended Complaint abundantly alleges that the motivating factor for Plaintiff's termination was Plaintiff's constitutionally protected speech. *See* Am. Compl. ¶¶ 128-129; 165-166.

Each individual FAU Defendant is alleged to have "violated clearly established constitutional rights which all reasonable college administrators and staff should have known" and each is alleged to have "acted intentionally, knowingly, willfully, wantonly, and in reckless disregard of the federally protected constitutional rights of Plaintiff and other similarly situated

tenured faculty…" *See* Am. Compl., ¶¶ 21; 138; 156; 172. Plaintiff also adequately pleads each

of the individual FAU Defendants acted under color of state law and in the scope of his or her

employment while engaging in the wrongful and unlawful conduct complained of. *See* Am.

Compl. ¶ 20. When read in the light most favorable to Plaintiff, the Amended Complaint

sufficiently pleads violations of clearly established law against each individual FAU Defendant

for which they cannot be immune.

      **D.**      **Plaintiff Adequately Pleads Individual FAU Defendants Were Acting Under Color of State Law**

Defendants disingenuously, and ironically, in *shotgun* fashion, mischaracterize the

allegations in Plaintiff's Amended Complaint as "shotgun-style". Plaintiff has not alleged bare,

unadorned, "the defendant unlawfully harmed me" accusations or mere legal conclusions, as

Defendants claim. Each and every paragraph and cause of action asserted in Plaintiff's Amended

Complaint is not difficult to comprehend, or for Defendants to admit or deny. Plaintiff's

allegations are rather crystal clear, not vague or immaterial, and sufficiently set forth claims upon

which relief may be granted. *See Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1940 (2009).

The Amended Complaint clearly and sufficiently states how each individual defendant,

through their own individual actions, and inaction, acted under the color of state law and violated

the Constitution. Plaintiff alleges each individual FAU Defendant, acting under the color of state

law, violated the Defendant University's policies, procedures and commitment to protect

freedom of speech and principles of academic freedom, and clearly established law which all

reasonable university officials knew or should have known. *See* Am. Compl. ¶¶ 20-21, 138, 156,

172; *see also* Am. Compl. ¶ 43 (quoting Section 5.1 and 5.2 of the Defendant University's

Collective Bargaining Agreement: "The Board, the University and the UFF are committed to

maintaining and encouraging full academic freedom… [t]he principal elements of academic

freedom include the freedom to: (a) Present and discuss academic subjects, frankly and forthrightly, without fear of censorship. . . . (c) Speak freely on, and seek changes in, academic and institutional policies. (d) Exercise constitutional rights without institutional censorship and discipline.").

Defendants must ignore countless allegations throughout the Amended Complaint detailing the involvement of each and every individual FAU Defendant, each of whom is or was a public school official at the Defendant University charged with playing a pivotal role in the wrongful disciplinary action taken against Plaintiff. *See* Am. Compl. ¶¶ 150-159. When accepting all of Plaintiff's allegations as true, and evaluating all inferences derived from those facts in the light most favorable to Plaintiff, the Amended Complaint plausibly gives rise to Plaintiff's entitlement to relief. *See Hunnings v. Texaco, Inc.* 29 F.3d 1480, 1483 (11th Cir. 1994).

### E.    Plaintiff States A Claim For Retaliation Against FAU Defendants

Plaintiff clearly states a valid claim for retaliation against FAU Defendants. Moreover, in retaliating against Plaintiff for his speech, Defendants also deprived Plaintiff of his substantive due process rights because tenured public university employees, like Professor Tracy, who can be discharged only for cause, have a constitutionally protected property interest in their tenure. *See Gilbert v. Homar*, 117 S.Ct. 1807, 1811 (1997); *see also Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 578 (1972).

Defendants' misinterpretation and misapplication of *Bennett* is misleading. FAU Defendants assert Plaintiff "cannot show his speech was adversely affected by his termination" because Plaintiff is still blogging. This is not the standard. As the 11th Circuit opined in *Bennett*, Plaintiff's claim depends not on the denial of his constitutional right, but on the harassment

received for exercising his rights. *See Bennett v. Hendrix*, 423 F.3d 1247, 1243 (11th Cir. 2005). Furthermore, Plaintiff's Amended Complaint satisfies the *Bennett* inquiry, which requires the Court to apply an objective standard in determining whether FAU Defendants' retaliatory conduct in disciplining and firing Plaintiff for his personal blogging would likely deter a person of ordinary firmness from the exercise of First Amendment rights. *Id.* at 1254.

Plaintiff's Amended Complaint clearly establishes a causal connection between Plaintiff's termination and his protected speech, abundantly alleging each individual FAU Defendant played a pivotal role in terminating Plaintiff's federally protected tenured employment, without just cause, and did so in an effort to censor his protected speech and expression. *See* Am. Compl. ¶¶ 15-21; 112-129; 136-138; 149-187.

Defendants distort and ignore not only their own institutional policies, but decades of First Amendment jurisprudence involving public schools and public school officials violating free speech rights, attempting to twist the standard to excuse their unlawful conduct. The Defendants do not include any case authority involving tenured university professors who were disciplined for exercising their freedom of speech, or any case alleging conspiracy between university officials and union representatives to violate civil rights.

In *Pickering v. Board of Ed. of Township High School Dist. 205, Will Cty.,* 391 U.S. 563, 568 (1968), the Supreme Court set forth the legal standard for review of First Amendment claims against state actors, requiring that federal courts balance "the interests of the [employee], as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." Under the first step of the *Pickering* analysis, if the speech is made pursuant to the employee's ordinary job duties, then the employee is not speaking as a citizen for First Amendment

26

purposes, and the inquiry ends. *Garcetti v. Ceballos*, 547 U.S. 410, 421. But if the "employee spoke as a citizen on a matter of public concern," the inquiry turns to "whether the relevant government entity had an adequate justification for treating the employee differently from any other member of the general public." *Id.,* at 418.

> The *Garcetti/Pickering* test asks:
>
> (1) whether the speech was made pursuant to an employee's official duties; (2) whether the speech was on a matter of public concern; (3) whether the government's interest, as employer, in promoting the efficiency of the public service are sufficient to outweigh the plaintiff's free speech interests; (4) whether the protected speech was a motivating factor in the adverse employment action; and (5) whether the defendant would have reached the same employment decision in the absence of the protected conduct. *See Seifert v. Unified Government of Wyandotte County, et al.,* 779 F.3d 1141, 1151 (10th Cir. 2015).

The first three elements of the *Garcetti/Pickering* test are typically questions of law (though they can turn on disputed issues of fact), while the last two are typically questions of fact. *Id.* (internal citations omitted). The test must be done before a case is sent to the jury for its determination of whether a plaintiff was actually fired for his speech. *See Vista Community Services*, 107 F.3d at  845-846.

The United States Supreme Court has long held that freedom of speech and freedom of the press, which are protected by the First Amendment are among the fundamental personal rights and liberties which are protected by the Fourteenth Amendment from invasion by state action. *See Gitlow v. New York*, 268 U.S. 652, 666 (1925); *Stromberg v. California*, 283 U.S. 359 (1931); *Near v. Minnesota*, 283 U.S. 697 (1931); *Grosjean v. American Press Company*, 297 U.S. 233, 244 (1936); *De Jonge v. Oregon,* 299 U.S. 353, 364*; Malloy v. Hogan,* 378 U.S. 1, at 24 (1964); *Mapp v. Ohio*, 367 U.S. 643 (1961); *Ker v. California*, 374 U.S. 23, 33–34 (1963); *Aguilar v. Texas,* 378 U.S. 108 (1964); *Pointer v. Texas*, 380 U.S. 400, 406 (1965); *Duncan,*

*supra, at 149, 157–158; Benton v. Maryland,* 395 U.S. 784, 794–795 (1969)*; Wallace v. Jaffree*, 472 U.S. 38, 48–49 (1985).

State colleges and universities are not enclaves immune from the sweep of the First Amendment. *See Healy v. James*, 408 U.S. 169, 180 (1972); *see also Bloedom v. Grube*, 631 F.3d 1216 (11th Cir. 2011); *Keeton v. Anderson-Wiley*, 664 F.3d 865 (11th Cir. 2011). "State employees retain a federal cause of action under the First Amendment when they allege that government employment decisions were taken in an attempt to chill expression protected by the First Amendment." *See Beckwith v. City of Daytona Beach Shores Fla.,* 58 F.3d 1554, 1563 (11th Cir. 1995).

Plaintiff's Amended Complaint, when read in the light most favorable to Plaintiff, passes the *Garcetti/Pickering* test for establishing that First Amendment violations occurred. Defendants ignore this test, do not assert and cannot demonstrate any governmental interest in terminating Plaintiff's tenured employment. Instead, Defendants must ignore Plaintiff's First Amendment claims altogether and baldly and impermissibly assert that all of the individual FAU Defendants "acted reasonably and in good faith in their administration of University policies and procedures" in terminating Plaintiff pursuant to the Defendant University's vague and confusing "Conflict of Interest/Outside Activities" policy.

### F.    Plaintiff's Complaint Properly Alleges Civil Conspiracy

Plaintiff is not required to produce a "smoking gun" to prove a conspiracy to violate his constitutional rights resulted in his unlawful termination. *See Bendiburg v. Dempsey*, 909 F. 2d 463, 469 (11th Cir. 1990). Actual proof of the existence of a conspiracy may be based on circumstantial evidence. *Grinder v. City of Auburn*, 618 F. 3d, 1240*, 1260 (11th Cir. 2010). Circumstantial evidence in a conspiracy alleged under 42 U.S.C. §§ 1983 and 1985(3) has no

less weight than direct evidence. *Burrell v. Bd. Of Trs. Of Ga. Military College*, 970 F.2d 785, 788-789 (11th Cir. 1992). It is open to a jury to infer from circumstantial evidence that a state actor and private party had a "meeting of the minds". *Id. See also Adickes v. S.H. Kress & Company*, 398 U.S. 144, 158 (1970). Plaintiff abundantly alleges ample circumstantial and direct evidence, including overt acts, and *inaction,* by all named Defendants, from which the Court and a jury could reasonably infer that a conspiracy to violate Plaintiff's civil rights existed. *See* Am. Compl. ¶¶ 62-84; 93-110; 112-129; 189-199; 202-205.

### G. Plaintiff States a Claim for Denial of Procedural Due Process

Defendants absurdly claim that, "taking the facts as pled in the Amended Complaint as true," Plaintiff was offered due process. Taking Plaintiff's allegations as true actually requires the Court to accept that Plaintiff was only afforded the illusion of due process, since Defendants Alperin, Coltman, Perry, Kelly, Beetle, Moats and Zoeller, and other unknown officials and/or representatives of the Defendant University and Defendants UFF and FEA conspired to deprive Plaintiff of due process and prevented him from timely responding to the unconstitutional disciplinary action. *See* Am. Compl. ¶ 201-206; 189-199.

It must further be accepted as true Defendants UFF and FEA, including Defendant Moats, defended Plaintiff against the same unlawful disciplinary action in 2013 (*See* Am. Compl. ¶¶ 71-76), and that the Union Defendants, which had the exclusive contractual right and duty to represent Plaintiff in grievances against the Defendant University, unlawfully deceived and betrayed Plaintiff in late 2015 in failing to file a timely grievance or response on his behalf. *See* Am. Compl. ¶¶ 100-110; 189-199. It must also be true that Union Defendants deceived and misled Plaintiff by misrepresenting that a response to FAU Defendants' threatened discipline, on Professor Tracy's behalf, would be submitted within the ten (10) day response deadline required

by his contract. *See* Am. Compl. ¶¶ 107-110; Exhibits "AB"-"AD". Thus, the absence of a timely response or grievance by Plaintiff was merely an extension of the Defendants' unlawful joint action, which included Union Defendants' purposeful inaction.

Additionally, it must be accepted as true that by terminating Plaintiff for alleged non-compliance with the Defendant University's "Conflict of Interest/Outside Activities" policy, when the actual reason for Plaintiff's firing was his constitutionally protected speech, Defendants Alperin, Coltman, Perry and Kelly failed to provide Professor Tracy with notice or a fair opportunity to be heard, or to challenge the unconstitutional disciplinary action. *See* Am. Compl. ¶ 186.

## IV.  THIS COURT HAS SUBJECT MATTER JURISDICTION AND PLAINTIFF'S COMPLAINT STATES MULTIPLE VALID CLAIMS AGAINST THE UNION DEFENDANTS

### A.  Legal Standard

It is extremely difficult to dismiss a claim for lack of subject matter jurisdiction. *Simanonok v. Simanonok*, 787 F.2d 1517 at 1519. (11th Cir. 1986). The test is whether the cause of action alleged is so patently without merit as to justify the court's dismissal for want of jurisdiction. *Duke Power Co. v. Carolina Environmental Study Group,* 438 U.S. 59, 70, 98 S.Ct. 2620, 2629, 57 L.Ed.2d 595 (1978).

Fed.R.Civ.P. 8(f) requires that all pleadings must be construed so as to do "substantial justice" to the parties. *Conley v. Gibson,* 355 U.S. 41, 48, 78 S.Ct. 99, 103, 2 L.Ed.2d 80 (1957); *Cameron v. Fogarty,* 705 F.2d 676, 678 (2d Cir.1983).

### B.  PERC Has No Jurisdiction Over Plaintiff's Claims Which Require Judicial Adjudication & A Jury Trial

Union Defendants' Motion to Dismiss asserts that the Florida Public Employees Relations Commission ("PERC") has exclusive jurisdiction over Plaintiff's claims. This is

patently untrue and by any reading of Chapter 447, the Public Employees Relations Act ("PERA"), Plaintiff's claims are specifically excluded from PERC coverage. *See* Fla. Stat. § 447.501.

Union Defendants' Motion to Dismiss also fails to acknowledge that PERC's jurisdiction is limited to specifically enumerated fact disputes listed under Florida Chapter 447. PERC derives its authority from its enabling statutes, which does not include complaints involving federally protected constitutional claims or rights, conspiracies to deprive employees of federally protected rights, or disputes against both employer and union for conspiracy to violate constitutional or contractual rights. Seven (7) of Plaintiff's counts in the Amended Complaint arise and are remediable only under federal law and are well outside of PERA's scope. This Court has subject matter jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. § 1331. Plaintiff's additional state law counts, which are inextricably intertwined with Plaintiff's federal claims, are also outside of PERC's scope.  The District Court has supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367.

Union Defendants incorrectly allege that PERC has exclusive jurisdiction over any claim brought by a public employee against a public employer and union. To the contrary, it is well settled that not every activity or dispute between public employees and their public employer gives rise to the preemption jurisdiction of PERC. *See Maxwell v. School Board of Broward County*, 330 So.2d 177, 180 (Fla. 4th DCA, 1976).

> i.      *PERC Lacks Authority to Adjudicate Plaintiff's Claims*

 PERC Administrative hearing officers lack jurisdiction to consider constitutional issues, especially facial challenges to state policy, which are at the heart of Plaintiff's claims. *Gulf Pines Memorial Park, Inc. v. Oaklawn Memorial Park, Inc.*, 361 So.2d 695 (Fla.1978) (holding that "it

is pointless to require [plaintiffs] to endure the time and expense of full administrative proceedings" when there is a facial challenge to a statute); *Department of Revenue v. Young American Builders*, 330 So.2d 864 (Fla. 1st DCA 1976) (holding that a plaintiff challenging the constitutionality of a law has no remedy in an administrative proceeding where the facial challenge cannot be adjudicated).

All seven (7) federal counts set forth in Plaintiff's Complaint fall outside the scope of PERA and PERC. Unlike other public employees whose post-termination claims may be resolvable in a limited non-judicial state administrative forum, the termination of Plaintiff's tenured faculty employment, a federally protected property right, requires judicial adjudication and a jury trial. *See Board of Regents of State Colleges v. Roth*, 408 U.S. 564 (1972); *Perry v. Sindermann*, 408 U.S. 593 (1972); *See also Monterey v. Del Monte Dunes*, 119 S.Ct. 1624 (1999) (holding that the Seventh Amendment jury guarantee extends to 1983 actions so long as the claims can be said to sound in tort and seek legal relief); *Curtis v. Loether,* 415 U.S. 189, 195–196 (1974).

Additionally, Counts VIII, IX and X of the Amended Complaint are state law claims also outside of PERC's limited statutory jurisdiction. Counts VIII and IX are claims for Breach of Contract alleging violations of the UFF-FAU Collective Bargaining Agreement. Federal law uniformly holds that a breach of a collective bargaining agreement does not constitute an unfair labor practice, thus Counts VIII and IX are not preempted by PERC, which only has limited jurisdiction over enumerated unfair labor practice claims. *See Maxwell v. School Board of Broward County,* 330 So.2d at 180 (citing *Smith v. Evening News Association*, 371 U.S. 195 (1962)). Count X is a claim for Breach of Fiduciary Duty, not "Fair Representation" as claimed by Union Defendants. Regardless, neither cause of action can be preempted by a state

administrative forum that does not afford plaintiffs a jury trial. *See Chauffers, et al. v. Terry*, et al., 110 S.Ct. 1339, 1345-46 (1990) (holding that a claim against union for breach of duty of fair representation and/or fiduciary duty requires a jury trial under the Seventh Amendment of the United States Constitution).

ii.     *PERA/PERC Would Be Inadequate and Futile For Plaintiff*

Union Defendants assert Plaintiff's due process claims must technically be dismissed because Plaintiff did not attempt to seek redress through PERC. However, this argument is inconsistent with Florida and Federal Law, which has consistently held that where a constitutional claim is being presented, that access to the Courts will not be denied. *See*, e.g. *Gulf Pines Memorial Park, Inc.,* 361 So. 2d 695 (Fla. 1978). The United States Supreme Court has unequivocally held that the exhaustion of state remedies is not a pre-requisite to the initiation of section 1983 actions. *See Patsy v. Board of Regents of Florida,* 457 U.S. 496 (1982).

Furthermore, the Supreme Court has also held that "the exhaustion of the administrative remedies is not required where resort to administrative remedies would be 1) futile or 2) inadequate." *See McGee v. United States*, 402 U.S. 479, 483 (1971)); *Smith v. Robinson*, 468 U.S. 992, 1014 n. 17, 1019 n. 22 (1984).

The U.S. Supreme Court has categorically held that plaintiffs need not exhaust state administrative remedies before bringing a Section 1983 suit in federal court. *See Patsy,* 457 U.S. at 500-501 (1982); *Felder v. Casey*, v 131, 147 (1988). In *Patsy*, the Court held:

"Beginning with *McNeese v. Board of Education*, 373 U.S. 668, 671– 673, 83 S.Ct. 1433, 1435–1436, 10 L.Ed.2d 622 (1963), we have on numerous occasions rejected the argument that a § 1983 action should be dismissed where the plaintiff has not exhausted state administrative remedies. (citations omitted); Cf. Steffel v. Thompson, 415 U.S. 452, 472–473, 94 S.Ct. 1209, 1222, 39 L.Ed.2d 505 (1974) ("When federal claims are premised on [§ 1983]—as they are here—we have not required exhaustion of state judicial or administrative remedies, recognizing the

paramount role Congress has assigned to the federal courts to protect constitutional rights”).” *Patsy,* 457 U.S. at 500-501.

Exploring the legislative intent behind Section 1983, the Supreme Court also held:

> “As we recognized in *Mitchum v. Foster*, 407 U.S. 225, 242, 92 S.Ct. 2151, 32 L.Ed.2d 705 (1972) (quoting *Ex parte Virginia*, 100 U.S. 339, 346, 25 L.Ed. 676 (1880)), “[t]he very purpose of § 1983 was to interpose the federal courts between the States and the people, as guardians of the people's federal rights—to protect the people from unconstitutional action under color of state law, ‘whether that action be executive, legislative, or judicial.’” *Id.* at 503.

The Supreme Court later opined, in *Felder*, that "Congress meant to provide individuals immediate access to the federal courts and did not contemplate that those who sought to vindicate their federal rights in state courts could be required to seek redress in the first instance from the very state officials whose hostility to those rights precipitated their injuries." *Felder*, 487 U.S. at 133. The *Felder* Court's reasoning parallels the reasoning in *Patsy*:

> “[T]he 1871 Congress would not have wanted to impose an exhaustion requirement. A major factor motivating the expansion of federal jurisdiction through §§ 1 and 2 of the bill was the belief of the 1871 Congress that the state authorities had been unable or unwilling to protect the constitutional rights of individuals or to punish those who violated these rights.” *Patsy,* 457 U.S. at 505.

> “[O]f primary importance to the exhaustion question was the mistrust that the 1871 Congress held for the fact finding processes of state institutions.” *Id.* at 506.

Moreover, PERC would be inadequate and futile for Plaintiff's claims because PERC offers only limited non-judicial administrative hearings for enumerated factual disputes. It would be futile for Plaintiff to seek any form of remedy in PERC due to its lack of jurisdiction, as explained above. Furthermore, PERC administrative hearing officers have no authority to award Plaintiff compensatory damages, punitive damages, and declaratory or injunctive relief, all forms of relief Plaintiff seeks through this action. *See Healy v. Town of Pembroke Park*, 831 F.2d 989 (11th Cir. 1987). PERC also does not allow Plaintiff to conduct discovery or exercise his constitutional right to trial by jury.

     *iii.*     *Defendants' Case Law Is Inapplicable*

Defendants' reliance on *Gadzinski* in claiming the Court lacks subject matter jurisdiction is specious and without merit. *Gadzinski* and *Alexander* were not cases involving plaintiffs with federally protected constitutional rights and property interests, nor did they involve union and state actors conspiring to deprive such rights.

Defendants cherry-pick non-analogous cases involving plaintiffs with claims within the limited enumerated list of unfair labor practices defined by PERA, and thus within PERC's jurisdiction. The *Gadzinski* plaintiff, for example, was a non-tenured city fire inspector whose employment dispute against his city employer did not involve any federally protected property interest.   The *Alexander* plaintiff was an elementary school teacher, also with no tenure. In *Alexander,* the District Court only dismissed one (1) count out of seventeen (17) count complaint, which included federal civil rights claims, state law torts and other claims well outside the scope of PERC.

Additionally, Defendants rely upon *Alexander* to mischaracterize Plaintiff's claims as a breach of duty of fair representation claim that would fall within PERA's limited jurisdiction. Importantly, the only reason that the *Alexander* court characterized the Alexander plaintiff's breach of contract claim as a "breach of duty of fair representation", is because the breach of contract claim was solely based upon her union's failures in representing her during a discrimination dispute between Alexander and her public employer.

In the present action, Plaintiff's breach of contract claims are not only based upon Union Defendants' failure to represent Plaintiff, but also Union Defendants' failure to protect and safeguard Plaintiff's constitutional rights as required by the UFF-FAU Collective Bargaining Agreement.   Defendants cite no case involving egregious union misconduct, including

nonfeasance, misdirection and duplicity towards a plaintiff, let alone a conspiracy to violate a plaintiff's civil rights. Nor do Defendants cite any case wherein a plaintiff has been deprived a federally protected property interest, such as life-tenured faculty employment at a public university.

The heart of the allegations set forth in the Amended Complaint are constitutional challenges to Defendant University's "Outside Activities/Conflict of Interest" policy, the disciplinary action taken against Plaintiff, and the conspiratorial conduct of the Defendants to violate Plaintiff's civil rights. Accordingly, Plaintiff sets forth a dispute which remains wholly outside of the limited enumerated PERC jurisdiction set forth in Chapter 447.

PERA and PERC were not designed to and cannot resolve Plaintiff's claims. The limited, non-judicial state administrative forum lacks jurisdiction over Plaintiff's claims and is an inappropriate mechanism to address and remedy the Defendants' unlawful conduct, or restore Plaintiff's federally protected property right. The District Court has subject matter jurisdiction over all claims presented in the present action, and is the only forum which can provide Plaintiff with all appropriate legal and equitable remedies available under Plaintiff's federal and state law claims, including his claims against Union Defendants for violations of federal law, breach of contract, and breach of fiduciary duty.

A.     **Union Defendants Can Be Liable Under § 1983 For Violating Plaintiff's Civil Rights**

A private party can be viewed as a 'state actor' for Section 1983 purposes. *Rayburn v. Hogue*, 241 F.3d 1341, 1347 (11th Cir. 2001). Three tests have evolved to determine whether a private citizen might be considered a state actor for purposes of Section 1983: the public function test; the state compulsion test; and the nexus/joint action test. *See Focus On The Family v. Pinellas Suncoast Transit Authority*, 344 F.3d 1263, 1277 (11th Cir. 2003); *Willis v. Univ.*

*Health Servs., Inc.*, 993 F.2d 837, 840 (11th Cir. 1993). The nexus/joint action test, also known as the joint participation doctrine, requires courts to examine whether the government and the defendant are "intertwined in a symbiotic relationship," as well as whether the relationship involves "the specific conduct of which plaintiff complains." *Id.* These tests can be fact-intensive and often require discovery to flesh out. *See Lehman v. Scott*, 2009 WL 1228433, at *3 (M.D. Fla. May 4, 2009). For purposes of [Section 1983], the plaintiff must plead in detail, through reference to material facts, the relationship or nature of the conspiracy between the state actor(s) and the private persons." *See Harvey v. Harvey*, 949 F.2d 1127, 1133 (11th Cir. 1992).

Plaintiff has pled in detail, with supporting exhibits, the material facts of his claims describing and outlining the Union Defendants' role in the conspiracy to deprive Plaintiff of his federally protected rights. *See* Am. Compl., ¶¶ 188-206. The Union Defendants first defended Plaintiff from the Defendant University's initial attempts to encroach on Plaintiff's federally protected rights in 2013. *See* Am. Compl., ¶¶ 65-76. In late 2015 and early 2016, however, under similar circumstances, the Union Defendants jointly participated with the FAU Defendants in violating Plaintiff's constitutional rights. Union Defendants, in furtherance of the conspiracy, deprived Plaintiff of his right to file a grievance or respond to FAU Defendants' unlawful disciplinary action. The Union Defendants' dubious reasoning for their failure to timely respond to the FAU Defendants' unlawful disciplinary action, on Plaintiff's behalf, as was promised, is as follows: "Nothing we could have said would have satisfied them." *See* Am. Compl., Exhibit AD.

Plaintiff clearly pleads that the Union Defendants not only failed to represent and defend Plaintiff when he was faced with unconstitutional disciplinary action, they also actively deceived the Plaintiff by assuring him they would respond and grieve on his behalf. It's further alleged the Union Defendants aided in the unlawful efforts of the FAU Defendants, by misadvising Plaintiff

that FAU Defendants' unconstitutional disciplinary action was lawful. Despite representing to Plaintiff a timely response or grievance would be filed, the Union Defendants admittedly had no intention of ever intervening on Plaintiff's behalf. *See* Am. Compl., Exhibit "AD". It is well pled that the Defendants' unlawful joint action (and Union Defendants' *inaction*) paved the way for the automatic termination of Plaintiff's tenured employment.

Defendants ignore the fact allegations contained in Counts IX and X, asserting only that Counts VI and VII fail to state claims upon which relief can be granted, implying Union Defendants simply cannot be subject to 1983 liability because they are not state actors. Union Defendants do, however, describe Plaintiff's allegations of conspiracy as vague, conclusory and implausible, denying any alleged motivation by Union Defendants to "about face" Plaintiff. Such verbiage is legally insufficient to support their Motion to Dismiss and is more appropriate in their Answers required in law. Finally, Defendants' Motion offers Union Defendants' own unsupported conclusions as dispositive of the facts at issue.

Defendants mischaracterize Plaintiff's claims, in effect asking the Court to view their own twisted factual allegations in the light most favorable to the Defendants. This is plainly improper. While the Defendants assert that Plaintiff's allegations demonstrate that the Union Defendants somehow "persistently and aggressively advanced Plaintiff's interests…," the actual facts and circumstances set forth in the Amended Complaint, when read in the light most favorable to Plaintiff, indisputably allow the Court to draw the reasonable inference that the Defendants are liable for all alleged misconduct. *See Iqbal*, 129 S. Ct. at 1949.

## V.     CONCLUSION

Defendants ultimately seek a ruling from this Court that any Florida public university, its administrators, and its faculty union, are immune from federal action whenever they violate a

tenured faculty member's constitutional rights to freedom of speech and due process. Defendants impermissibly seek the Court's assistance in further depriving Plaintiff of his constitutional rights, including his right to trial by jury. However, Defendants are not entitled to immunity or dismissal for violations of clearly established constitutional law. The Defendants' Motion to Dismiss is inconsistent with federal law, First Amendment jurisprudence and Supreme Court precedence and, if granted, would in effect nullify the First and Fourteenth Amendments of the U.S. Constitution.

WHEREFORE, Plaintiff respectfully requests that the Defendants' Motion to Dismiss be denied, and grant any and all further relief as is just and proper.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 26th day of September 2016, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day per the attached Service List.

/s/ Louis Leo IV
**Louis Leo IV, Esq.**
Florida Bar No. 83837
louis@floridacivilrights.org
**Joel Medgebow, Esq.**
Florida Bar No. 84483
joel@medgebowlaw.com
Florida Civil Rights Coalition, P.L.L.C.
& Medgebow Law, P.A.
4171 W. Hillsboro Blvd. Suite 9
Coconut Creek, FL 33073
Telephone: 954-478-4223
Fax: 954-239-7771