**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 9:16-CV-80655-ROSENBERG/HOPKINS**

JAMES TRACY,

     Plaintiff,

v.

FLORIDA ATLANTIC UNIVERSITY
BOARD OF TRUSTEES a/k/a
FLORIDA ATLANTIC UNIVERSITY,
et al.,

     Defendants.

_____/

**ORDER GRANTING IN PART AND DENYING**
**IN PART DEFENDANTS' MOTION TO DISMISS**

     This cause is before the Court on Defendants' Motion to Dismiss ("motion") [DE 79].

The motion has been fully briefed and the Court heard oral argument on the motion on December

1, 2016.   For the reasons set forth below, the motion is granted in part and denied in part.

     This is a case about the First Amendment right to free speech.  The setting for this case is

a college campus, which is certainly a familiar setting for First Amendment jurisprudence.  The

story of this case is a story of two competing narratives.  The first such narrative, brought by

Plaintiff, is that he, a professor, was terminated for exercising his right to free speech in a

personal, off-campus blog.  The second narrative belongs to Defendants and, according to them,

Plaintiff was terminated for consistently and willfully refusing to comply with internal

administrative requirements.  In the quintessential course of litigation, the Court would expect

these competing narratives to be offered by each side marshaling the evidence and arguments in

support of their respective positions.  In this case, however, Plaintiff pleads both narratives in his

complaint.  In so pleading, it can be inferred that it is Plaintiff's position that the Defendants' narrative was a pretext—an attempt to find a justification, any justification, for terminating Plaintiff for his (controversial) exercise of free speech.  The precise contours of Plaintiff's allegations of pretext, however, are not clear.  Plaintiff's allegations are not clear because Plaintiff's narrative intertwines multiple constitutional theories and, as a result, both this Court and Defendants struggle to define the alleged constitutional injury in this case.  This lack of clarity leads to the ultimate result that, for the reasons specified below, Plaintiff must amend portions of his complaint.

## I.      PLAINTIFF'S CLAIMS

Plaintiff has brought the following claims against Florida Atlantic University: Count I (A Challenge to the Facial Constitutionality of FAU policies), Count IV (A Request for Declaratory Relief and an Injunction), and Count VIII (Breach of Contract).

Plaintiff has brought the following claims against Florida Atlantic University officials in both their official and personal capacities: Count II (An "As-Applied" Challenge to the Constitutionality of FAU policies), Count III (Retaliation in Violation of Plaintiff's Constitutional Rights), Count IV (A Request for Declaratory Relief and an Injunction), Count V (Violation of Plaintiff's Right to Due Process), and Count VII (Conspiracy to Violate Plaintiff's Civil Rights).

Plaintiff has brought the following claims against the Florida Education Association union, the United Faculty of Florida union, and certain individual union representatives: Count VI (Conspiracy to Violate Plaintiff's Right to Procedural Due Process), Count VII (Conspiracy to Violate Plaintiff's Civil Rights), Count IX (Breach of Contract), and Count X (Breach of

Fiduciary Duty).

## II.    BACKGROUND[1]

Plaintiff is a former college professor who taught at Florida Atlantic University ("FAU"). Amended Complaint ¶ 33.  After Plaintiff published certain controversial comments on his private blog, FAU required Plaintiff to fill out an "outside activities form" ("Form").  *See* DE 75-5 (containing a copy of the Form);  Amended Complaint ¶¶ 54-63.  That Form required a faculty member to disclose outside activities and to certify that those activities would neither present a conflict of interest nor cause classes to be missed.  Amended Complaint, Exhibit E.  That certification was required by an FAU policy.  *See id.*  Plaintiff was advised by his union representative that because the purpose of the Form was to disclose outside activities that may present a conflict of interest and because Plaintiff's personal blogging activities did not present a conflict of interest, Plaintiff should not complete the Form.  Amended Complaint ¶ 67.  Plaintiff refused to complete the Form.  Amended Complaint ¶¶ 68-70.

After Plaintiff's refusal to complete the Form, FAU issued a notice of discipline against Plaintiff.  Amended Complaint ¶ 70.  That notice of discipline, however, did not focus on Plaintiff's failure to complete the Form and instead focused on another matter—Plaintiff's refusal to remove any reference to FAU on his personal blog.  *Id.*  Plaintiff was advised by his union that the discipline was unfounded[2] and the union filed a grievance on Plaintiff's behalf. Amended Complaint ¶ 76.  That grievance was denied; however, the parties engaged in

---

[1] For the purposes of background, Plaintiff's factual allegations are accepted as true.  *Resnick v. AvMed, Inc.*, 693 F.3d 1317, 1321 (11th Cir. 2012).

[2] The reference to FAU on the blog included: "All items published herein represent the views of James Tracy and are not representative or condoned by Florida Atlantic University . . . ."  Amended Complaint ¶ 49.  FAU's dissatisfaction with this reference appears to be grounded in its contention that the disclaimer was not viewable on the webpage where articles were posted and read.  *See* DE 75-7 at 1-2.

settlement talks and it was eventually agreed that FAU would retract its disciplinary action in exchange for Plaintiff's removal of any reference to FAU on his blog.  Amended Complaint ¶¶ 79-80.

Approximately two years after the aforementioned settlement agreement, FAU returned its attention to the Form and faculty members' outside activities by issuing a notice wherein all faculty were informed that they had to affirmatively agree, via an electronic program, that they were required to report outside activities as required by an FAU policy which in turn prohibited outside activities that conflicted with a professor's position at the university.  *See* Amended Complaint ¶ 85.  More specifically, FAU required all faculty to agree to the following:

> I affirm that I am required to report any outside activity (compensated or uncompensated) and any financial interest on Florida Atlantic University's Report of Outside Employment or Professional Activity as required in FAU regulations and policies. Questions regarding this requirement are explained at [a web address], and the form is available at [a web address].

*Id.*  Consistent with Plaintiff's prior refusal to complete the Form, Plaintiff refused to affirmatively agree that any FAU policy required him to complete the Form.  Amended Complaint ¶ 90.  Plaintiff's union took the position that faculty members should agree to the policy (as they were required to do) and complete the Form but, afterwards, the faculty could fight the constitutionality of the policy and Form.[3]  *See* Amended Complaint ¶ 92.  Plaintiff did not affirmatively agree, as required, and Plaintiff did not fill out the Form.  Amended Complaint ¶¶ 90-96.  FAU issued a new notice of discipline in connection with Plaintiff's refusal to comply.  Amended Complaint ¶ 93.  Plaintiff demanded that the union file a grievance on his behalf.  Amended Complaint ¶ 96.  The union denied Plaintiff's request, stating that it was the union's

---

[3] In the interest of brevity, the Court does not set forth here the entirety of the communications between Plaintiff and his union representatives.

position that Plaintiff's situation was not grievable.  Amended Complaint ¶ 97.  FAU again demanded that Plaintiff complete the Form.  Amended Complaint ¶ 99.  Plaintiff did not comply to the University's satisfaction and Plaintiff was terminated.  Amended Complaint ¶ 101.

Plaintiff contacted his union for assistance.  Amended Complaint ¶ 102.  The union essentially took the position that Plaintiff's position was hopeless and that, instead of filing a grievance, Plaintiff should negotiate for resignation in lieu of termination.  Amended Complaint ¶ 103.  Ultimately, neither the union nor Plaintiff filed a grievance.  Amended Complaint ¶¶ 104-110.  This lawsuit followed with Plaintiff naming FAU, university officials, his union, and certain union representatives as defendants.

### III.   LEGAL STANDARD

To adequately plead a claim for relief, Rule 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Under Rule 12(b)(6), a motion to dismiss should be granted only if the plaintiff is unable to articulate "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (citing *Twombly*, 550 U.S. at 556). When determining whether a claim has facial plausibility, "a court must view a complaint in the light most favorable to the plaintiff and accept all of the plaintiff's well-pleaded facts as true." *Am. United Life Ins. Co. v. Martinez*, 480 F.3d 1043, 1066 (11th Cir. 2007).

However, the court need not take allegations as true if they are merely "threadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Iqbal*, 556

U.S. at 663. "Mere labels and conclusions or a formulaic recitation of the elements of a cause of action will not do, and a plaintiff cannot rely on naked assertions devoid of further factual enhancement." *Franklin v. Curry*, 738 F.3d 1246, 1251 (11th Cir. 2013). "[I]f allegations are indeed more conclusory than factual, then the court does not have to assume their truth." *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012). Finally, "when the exhibits contradict the general and conclusory allegations of the pleading, the exhibits govern." *Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1206 (11th Cir. 2007) (citing *Associated Builders, Inc. v. Alabama Power Co.*, 505 F.2d 97, 100 (5th Cir. 1974)).

## IV.    ANALYSIS

Defendants have raised the following eight grounds upon which they argue that various portions of Plaintiff's Amended Complaint should be dismissed: (1) the individual Defendants named in their official capacities are duplicative of Plaintiff's claims against FAU (Counts II, III, IV, V, and VII), (2) the individual Defendants named in their personal capacities are entitled to qualified immunity (Counts II, III, IV, V, and VII), (3) Plaintiff has not properly pled a claim for retaliation (Count III), (4) the Plaintiff has not properly pled a request for reinstatement (Counts I, II, III, IV, V, and VII), (5) the Plaintiff has not properly pled that Defendants were acting under color of state law (Counts II, III, IV, V, and VII), (6) the Plaintiff has not properly pled a claim for denial of procedural due process (Count V), (7) the Plaintiff has not properly pled a claim for conspiracy to deprive him of his constitutional rights (Counts VI and VII), and (8) a portion of Plaintiff's state law claims are pre-empted under the Florida Public Employee Relations Act and, as a result, this Court does not have jurisdiction over those claims (Counts IX,

Beach of Contract and Count X, Breach of Fiduciary Duty).  Each argument is considered in turn.

(1) Plaintiff's Official Capacity Claims

Plaintiff has named multiple FAU officials[4] as defendants in their official capacities. Plaintiff has also named FAU as a defendant in this case.  Defendants argue that the official capacity defendants are duplicative of Defendant FAU.  When a suit is against an official in his or her official capacity, "the suit is simply 'another way of pleading an action against an entity of which an officer is an agent.'"  *Busby v. City of Orlando*, 931 F.2d 764, 776 (11th Cir. 1993) (quoting *Kentucky v. Graham*, 473 U.S. 159, 165 (1985)).  Such a suit is therefore a suit against the entity that the official represents.  *See id.*  As long as the governmental entity receives notice and an opportunity to respond, "an official-capacity suit is, *in all respects other than name*, to be treated as a suit against the entity."  *Graham*, 473 U.S. at 166 (emphasis added).  The multiple official capacity defendants named in this case are duplicative of Defendant FAU; in light of that duplication, the official capacity defendants in this case have the potential to "confuse lawyers," "confound" the issues, and otherwise confuse a jury.  *See id.* at 165.  Plaintiff merely denies there will be any jury confusion, provided that an appropriate instruction is given to the jury. This Court disagrees.  *Busby*, 931 F.2d at 776.  Accordingly, all of Plaintiff's claims against individual Defendants in their official capacity (Counts II, III, IV, V, and VII) are dismissed with prejudice.

---

[4] Defendants Alperin, Coltman, Perry, Kelley, and Beetle.

7

(2) Plaintiff's Personal Capacity Claims

In addition to naming Defendants in their official capacities, Plaintiff has also named Defendants in their personal capacities.[5]   Unlike official capacity claims, a personal capacity defendant faces personal liability for actions that defendant took under color of state law. *Graham*, 473 U.S. at 165.  The individual defendants argue that they are entitled to qualified immunity against Plaintiff's claims.

"The defense of qualified immunity may be raised and addressed on a motion to dismiss and will be granted if the 'complaint fails to allege the violation of a clearly established constitutional right.'"   *Snider v. Jefferson State Cmty. Coll.*, 344 F.3d 1325, 1327 (11th Cir. 2003).  Qualified immunity protects state actors performing discretionary functions from liability if their conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known."  *See id.*  "For the law to be clearly established to the point that qualified immunity does not apply, the law must have earlier been developed in such a concrete and factually defined context to make it obvious to all reasonable government actors, in the defendant's place, that 'what he is doing' violates federal law." *Jenkins by Hall v. Talladega*, 115 F.3d 821, 823 (11th Cir. 1997).

As a threshold matter, in order for this Court to determine whether any defendant is alleged to have engaged in conduct that violates "clearly established law," the Court must first know what law a Defendant is alleged to have violated.  A review of the Amended Complaint does not make this clear because Plaintiff has alleged multiple (and intertwined) constitutional violations, each of which is in turn alleged to have been committed by different combinations of Defendants.  Defendants argue, and the Court agrees, that while the Amended Complaint is not

---

[5] Defendants Alperin, Coltman, Perry, Kelley, and Bettle.

clear, three different constitutional principles are implicated in the Amended Complaint.  First, Plaintiff alleges that he was fired because he failed to comply with an unconstitutional policy that restricted free speech.   Second, Plaintiff alleges that he was fired because he failed to comply with an unconstitutional policy that was vague. Third, Plaintiff alleges that he was fired for the exercise of his free speech on his blog.  Plaintiff's allegations pertaining to his blog and his allegations pertaining to FAU policies require separate discussion.

*The Constitutionality of FAU's Policies*

The Court addresses the constitutionality of FAU's policies first.  Plaintiff alleges that FAU's conflict of interest policy and Form are unconstitutional.   Amended Complaint ¶ 114. The Form requires, on behalf of a faculty member, a disclosure of information.  It does not, by an employee's execution, restrict speech.   While the theoretical possibility exists that the Form could be used, by FAU, to restrict speech or otherwise restrict an outside activity, Plaintiff never reached that particular point as Plaintiff refused to fill out the Form.  Instead, by Plaintiff's own allegations, his termination was due to his untimely execution of the Form, not from any content disclosed on the Form or actions taken in connection therewith.[6]  Similarly, the policy by FAU at issue is a policy that prohibits outside activities that conflict with a faculty member's position at FAU.  The Court need not express any opinion at this juncture as to whether FAU's policy or Form are unconstitutional.  All that is necessary at present is for the Court to decide whether the policy is so plainly unconstitutional that the individual Defendants are not entitled to qualified immunity.

---

[6] The Court addresses Plaintiff's contention that the Form was used as a pretext for FAU to terminate him later in this Order.

The Court is unaware of any authority that stands for the proposition that FAU's policy (which prohibits conflicts of interest) and FAU's Form (which requires the disclosure of outside activities) violate clearly established law.  For the individual Defendants to lose their qualified immunity it would be necessary, for example, for there to be clear authority that a "person of common intelligence must necessarily guess at the meaning [of the policy] and differ as to its application."  *Connally v. Gen. Constr. Co.*, 46 S. Ct. 126, 127 (1926).  The Court asked Plaintiff, at the hearing, to provide authority that supports the contention that FAU's specific policy was clearly unconstitutional.  Plaintiff provided none.  Plaintiff focused his qualified immunity argument at the hearing on Plaintiff's blogging, not FAU's policies:

> THE COURT: But the Court has to do that inquiry. The defense is out there now. I mean I have to analyze qualified immunity. So I'm giving you a last opportunity to tell the Court if you're aware of what clearly established law there would be as it relates to your arguments about the policy and the application of the policy, not – we've already discussed the blogging. So I understand that fully. I just want to make sure you've been heard and I understand what your position is on the policy vis-a-vis the qualified immunity argument.
>
> MR. BENZION: Well, when we do the qualified immunity argument, we have to still ask what the speech was, so it still refers to the speech. It's not going to – our position is **it's not going to refer to the policy**. It's going to ask the plaintiff what the speech was and whether it was on a matter of public concern. And in every instance in the Complaint, **the speech was the blogging**. So the clearly established law is the law that's -- that I've argued to you today and Pickering and the progeny of those cases . . . .

DE 91 at 62-63 (emphasis added).  Plaintiff represented the foregoing to the Court on multiple occasions:

> THE COURT: [W]hen I'm directing my questions, I'm asking: What exactly is the basis for the First Amendment retaliation, and what is the clearly established right?
>
> MR. BENZION: It's the blogging. We're referring to the blogging as the speech, and the clearly established right is to speak on matters of public concern.

DE 91 at 53.[7] Based upon the Court's own research that there is no clearly established law that governs the constitutionality of FAU's *specific policy* (both as to vagueness and as a restraint on speech), upon Plaintiff's failure to provide any authority on this issue, and upon Plaintiff's representations and argument at the hearing, Plaintiff's claims against the individual Defendants in their personal capacities are dismissed with prejudice. Those claims are dismissed with prejudice as to any allegation that an FAU policy was unconstitutional (Counts II, III, IV, V, and VII). *See Hansen v. Soldenwagner*, 19 F.3d 574, 576 (11th Cir. 1994) "[O]ur decisions tilt strongly in favor of immunity by recognizing that only in the rarest of cases will reasonable government officials truly know that the termination or discipline of a public employee violated 'clearly established' federal rights."); *Dartland v. Metro. Dade Cty.*, 866 F.2d 1321, 1323 (11th Cir. 1989) ("[T]he employer is entitled to immunity except in the extraordinary case where [a] balancing test would lead to the inevitable conclusion that the discharge of the employee was unlawful.").

*The Constitutionality of an Alleged Termination Premised on Plaintiff's Blogging*

Turning to whether the individual Defendants are entitled to qualified immunity as to Plaintiff's blog postings, the law in this area is clearly established. A state employer may not retaliate against a state employee for engaging in constitutionally protected speech. *Rankin v. McPherson*, 483 U.S. 378, 383 (1987). A public employee's speech is protected if the content of that speech is a matter of public concern even if, for example, the speech attacks a superior. *See*

---

[7] Plaintiff's lack of authority on this issue stands in contrast to the argument pressed by Plaintiff in his response to Defendants' motion that included: "FAU Defendants were violating clearly established law, [and] the FAU Defendants nonetheless continued to knowingly violate the tenured faculty's constitutional rights through the enforcement of FAU's unconstitutionally vague and confusing policy, resulting in Plaintiff's termination." DE 84 at 23 (raised in the context of qualified immunity).

*Garrison v. State of La.*, 379 U.S. 64, 85 (1964).  Speech by a professor that has been held to be protected speech directed at matters of public concern include such matters as criticism of inadequate facilities, criticism on a university's level of education, and the status of a university's accreditation.  *Maples v. Martin*, 858 F.2d 1546 (11th Cir. 1988).  Speech that does not rise to the level of public concern includes accusations of plagiarism, as that type of speech concerns "internal administration of the educational system and personal grievances."  *Williams v. Ala. State Univ.*, 102 F.3d 1179, 1183 (11th Cir. 1997).[8]

Here, Plaintiff has clearly alleged that his blog postings concerned a matter of public concern—his independent research on current events and socio-political issues in the context of mass casualty events—and, as outlined above, there exists a clear body of law that governs the exercise of free speech on matters of public concern.  Amended Complaint ¶¶ 46-47, 163-65. The Court's analysis does not end there, however.  When speech pertains to a matter of public concern, the Court must weigh whether the employee's interest in commenting on matters of public concern outweighs the employer's interest in suppressing the speech.  *Pickering v. Bd. of Educ.*, 391 U.S. 563, 568 (1968).  The problem at present is the clarity of Plaintiff's Amended Complaint.

As outlined above, Plaintiff's Amended Complaint conflates the premise upon which Plaintiff's constitutional claims are brought.  Although Plaintiff clarified at the hearing that it was his intention to focus his claim on his exercise of speech on his blog, the allegations in Plaintiff's Amended Complaint also establish that Plaintiff was fired for refusing to comply with

---

[8] Plaintiff's allegations concerning his termination due to his failure to file an internal disclosure form (and the wording of the policy in connection therewith) is a matter of "internal administration" and "personal grievances" which reinforce the Court's decision to dismiss Plaintiff's claims against the individual Defendants on the matter of FAU's policies, see discussion *supra*.

a university policy.  While it may easily be read and inferred from the Amended Complaint that Plaintiff alleges the reason for his termination, failure to comply with a policy, was a pretext— the true reason for his termination was his blog postings—this is not pled with clarity.  As such, Defendants' motion to dismiss understandably struggled to focus on what ultimately may well be a central issue in this case—the balancing of Plaintiff's interests against FAU's interests.  *See Garcetti v. Ceballos*, 547 U.S. 410, 418 (2006) (holding that once it is determined that speech is a matter of public concern, the relevant inquiry then becomes whether the government had an adequate justification for treating the employee differently from the general public).  The Court cannot undertake that analysis at this time—not because of a lack of clarity in the law, but due to a lack of clarity in the Amended Complaint.  In light of this lack of clarity, the Court declines to deny any individual Defendant qualified immunity based upon Plaintiff's representation at the hearing that: (A) his blog posting was a matter of public concern, (B) he was fired for that exercise of speech, (C) events subsequent to his blog postings were pretext to cover the true reason for his termination, and (D) Plaintiff's interest in his exercise of speech outweighs FAU's interest in suppressing that speech.  All of this must be clearly pled without conflation with other theories that implicate qualified immunity concerns.  This Plaintiff has not done.  Plaintiff will be afforded another, final, opportunity to amend his pleading.  The individual Defendants in their personal capacities are dismissed without prejudice as to Plaintiff's allegations pertaining to his blog.

(3) <u>Plaintiff's Claim for Retaliation</u>

Defendants argue that Plaintiff's claim for retaliation (Count III) is inadequately pled because Defendants cannot ascertain what they are alleged to have retaliated against.

Defendants' argument is premised on the confusion in the Amended Complaint as to what constitutional injury Plaintiff is proceeding under to pierce Defendants' qualified immunity—an injury premised on Plaintiff's blogging or an injury premised on Plaintiff's failure to comply with an alleged unconstitutional policy.  The Court agrees.  Plaintiff must clearly allege the basis for his retaliation claim.  Plaintiff's Count III is dismissed without prejudice.  Notwithstanding the Court's decision to dismiss this claim without prejudice, the Court hereby rejects Defendants' argument that Plaintiff cannot show his exercise of speech was adversely affected by his termination.[9]

(4) <u>Plaintiff's Request for Reinstatement</u>

Defendants argue that Plaintiff has not properly pled a basis in the Amended Complaint to seek reinstatement.[10]  More specifically, Defendants concede that Defendant FAU has the capacity to reinstate Plaintiff to his position, if the Court ordered it to do so, but Plaintiff has not properly pled that the individual Defendants in this case have the same authority and capacity to reinstate Plaintiff as FAU does.  *See Jones v. Ward*, No. 1:10-CV-202, 2011 WL 1187807, at *5 n.5 (M.D. Ala. Mar. 30, 2011).  This issue has become moot as the Court has dismissed the individual Defendants with prejudice as to the official capacity counts and both with and without prejudice as to the personal capacity counts.  In the event Plaintiff has a good faith basis to plead in a future amended pleading that an individual Defendant has the authority (in his or her personal capacity) to reinstate Plaintiff, Plaintiff must so plead.

---

[9] *See Bennett v. Hendrix*, 423 F.3d 1247 (11th Cir. 2005) (holding that the proper test to determine whether a plaintiff suffers an adverse action is if the action [termination] would likely deter a person of ordinary firmness from the exercise of First Amendment rights).

[10] Although Defendants pressed the argument in their motion to dismiss that Plaintiff's request for injunctive relief failed due to Plaintiff's lack of standing, at the hearing Defendants conceded that a request for reinstatement is sufficient prospective relief (DE 91 at 13) such that Plaintiff has standing to bring Counts I, II, III, and IV, provided that Plaintiff has properly pled his request for reinstatement.

(5) <u>Plaintiff's Pleadings on the Issue of Acting under Color of State Law</u>

Defendants argue that Plaintiff has only alleged, in a conclusory fashion, that the individual Defendants have acted under color of state law (relevant to Counts II, III, IV, V, and VI).  While it is true that Plaintiff only refers to Defendants acting under color of law a few times in his Amended Complaint, the Court is required to view all inferences in the Amended Complaint in Plaintiff's favor.  Amended Complaint ¶¶ 9, 20.  Viewed in that light, it is easily inferred that the individual Defendants' actions in this case were undertaken in connection with their respective positions at a public university.  Defendants' arguments on this issue are rejected and their motion to dismiss is denied as to this point.

(6) <u>Plaintiff's Due Process Claim</u>

Defendants argue that Plaintiff's denial of due process claim, Count VI, must be dismissed with prejudice because Plaintiff's own allegations establish that he was not denied due process.  At the pre-termination stage, a tenured public employee must receive, as a matter of constitutional rights, "notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story."  *Marshall v. City of Cape Coral*, 797 F.2d 1555, 1560 (11th Cir. 1986).  Plaintiff alleges that he received notice of his disciplinary action.  Amended Complaint ¶ 93.  Plaintiff alleges that he received notice of his termination. Amended Complaint ¶ 101.  Plaintiff alleges that he received an extension of time to file a grievance in connection with his termination.  Amended Complaint ¶¶ 103, 108.  A grievance procedure whereby Plaintiff could contest his termination is attached to Plaintiff's Amended Complaint.  DE 75-3.  An e-mail authored by Plaintiff is attached to his Amended Complaint wherein Plaintiff states the following: "Do you know if UFF will represent me on . . . the

15

grievance?  I am concerned because time is a factor and I will need to know if I should go ahead and begin the grievance process myself."  DE 75-22.

Plaintiff clearly had notice of the charges against him and a forum for Plaintiff to dispute his termination existed.  That is all that due process requires.  In *Marshall v. City of Cape Coral*, the court noted: "A volitional choice to forego available procedures, however unwise, cannot give rise to a subsequent complaint that one has been deprived of procedural protections."  797 F.2d at 1560.  That is precisely what occurred here.  Plaintiff knew about available procedures, and he chose not to avail himself of those procedures.  By contrast, a procedural due process violation accrues when a public entity refuses to provide a process.  *Cotton v. Jackson*, 216 F.3d 1328, 1330 (11th Cir. 2000).

In response, Plaintiff argues that the due process available to him was "an illusion" because the Defendants were biased against him—he could not receive a fair hearing.  But that is not equivalent to a public entity refusing to provide a process for Plaintiff to dispute his termination.  Moreover, even if Defendants were biased against Plaintiff, such bias, if known, must be raised at the due process hearing.  *See McKinney v. Pate*, 20 F.3d 1550, 1562 (11th Cir. 1994).  In sum, Plaintiff does not allege that he was denied process; rather, Plaintiff alleges that he did not avail himself of the due process forum that was available to him.[11]  The law does not require Plaintiff to be provided a forum that he subjectively deems acceptable.  Defendants provided a due process forum, together with notice of that forum, pursuant to Plaintiff's own allegations.  Plaintiff's procedural due process claim, Count VI, is dismissed with prejudice.

---

[11] At the hearing on this matter, Plaintiff complained that the due process forum available to him did not afford him the remedies he would like.  That is irrelevant.  If Plaintiff seeks more relief than he may be able to obtain from a due process procedure and therefore foregoes the provided forum, that is not equivalent to a public entity denying him due process.  Plaintiff is entitled to "notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story."  *Marshall*, 797 F.2d at 1560.

(7) <u>Plaintiff's Claim for Conspiracy to Deprive him of Constitutional Rights</u>

Defendants argue that Plaintiff's claim for conspiracy to deprive Plaintiff of his constitutional rights is improperly pled.  "A plaintiff claiming conspiracy under section 1983 must make particularized allegations that a conspiracy exists."  *Kivesto v. Miller, Canfield, Paddock & Stone*, 413 F. App'x 136, 139 (11th Cir. 1984).  Here, Plaintiff has identified certain union Defendants[12] whom he alleges entered a conspiracy with FAU to deprive him of his constitutional rights, but many aspects of the conspiracy are unclear such as: who was a part of the conspiracy (at FAU), when was the conspiracy formed, and why was the conspiracy formed.  Moreover, while a motive to deprive Plaintiff of his constitutional rights may be inferred as to FAU (public pressure to fire Plaintiff), the motive is not so easily discernible as to the union Defendants.

Upon review of the Amended Complaint, the Court is left with further questions.  The allegations tell a narrative of the union Defendants providing substantial assistance to Plaintiff.  The union Defendants were successful in prior negotiations on Plaintiff's behalf with FAU.  But something changed.  Because Plaintiff does not clearly say what changed, there is a stark contrast with the prior portions of Plaintiff's Amended Complaint detailing how the union Defendants helped him, and the latter portions describing how the union conspired with FAU to have him terminated.  Somewhere in the middle of these contrasting narratives was a decision, by the union, that Plaintiff should agree to a policy and *then* fight the policy, as opposed to refusing to comply with the policy altogether.  While this advice may be inconsistent in the context of Plaintiff's allegations (Plaintiff alleges the union previously took the opposite position), Plaintiff appears to equate that inconsistent advice with conspiracy and betrayal,

---

[12] Defendants Zoeller and Moats.

notwithstanding the fact that there are minimal factual allegations in the Amended Complaint for the Court to draw such an inference.   At its core, the Amended Complaint relies upon the following paragraph to allege the existence of a conspiracy:

> Upon information and belief, Defendants Zoeller, Defendant Moats and/or representatives of the Defendant University, in addition to other co-conspirators not yet known to Professor Tracy, shared the common goal of terminating Professor Tracy's employment at FAU and violating his constitutional rights, and acting alone or in the concert of others, conspired to terminate Professor Tracy's tenured appointment at Florida Atlantic University and to violate Professor Tracy's constitutional rights, including his right to free speech and due process.

Amended Complaint ¶ 191.   At the hearing on this matter, Plaintiff relied upon certain general factual allegations to establish the existence of a conspiracy, but the importance of those allegations to the paragraph quoted above is not immediately apparent.   In summary, Plaintiff needs to plead his conspiracy counts with greater clarity as to who, what, where, when, and why. *See Briggs v. Briggs*, 245 F. App'x 934, 935 (11th Cir. 2007) ("A plaintiff claiming a conspiracy under section 1983 must make particularized allegations that a conspiracy exists.").   Plaintiff's conspiracy counts, Count VI and Count VII, are dismissed without prejudice for all of the reasons set forth above.

### (8) Plaintiff's State Law Claims against the Union Defendants

Plaintiff has brought both federal and state law claims against the union Defendants in this case.   Defendants conceded at the hearing on this matter that Plaintiff's section 1983 claim against the union Defendants, Count VI, is properly before this Court.[13]   DE 91 at 102. Defendants argue, however, that Plaintiff's Count IX (Breach of Contract) and Count X (Breach of Fiduciary Duty) are pre-empted by the Florida Public Employee Relations Act ("PERA").

---

[13] *See* Fla. Stat. § 447.501(3) (exempting claims pertaining to a person's right to free speech from the scope of PERA).

The Florida Legislature enacted PERA to regulate labor union activities involving public employees and created it to "settle disputes regarding alleged unfair labor practices."  Fla. Stat. § 447.503.  Florida courts have interpreted PERA broadly and have held that it has exclusive jurisdiction over activities that "arguably" constitute unfair labor practices.  *Browning v. Brody*, 796 So. 2d 1191, 1192 (Fla. Dist. Ct. App. 2001).  According to PERA, unfair labor practices include "[i]nterfering with, restraining, or coercing public employees in the exercise of any rights guaranteed them under [PERA]" and "[r]efusing to discuss grievances in good faith pursuant to the terms of the collective bargaining agreement."  Fla. Stat. §§ 447.501(1)(a), (f).

Courts that have considered federal claims against unions in conjunction with claims such as breach of contract concluded that the state law claims are pre-empted by PERA.  For example, in *Gadzkinsky v. Fort Walton Beach*, No: 3:10-CV-425, 2011 WL 2690403, at *3 (N.D. Fla. July 8, 2011), the district court concluded that the plaintiff's breach of contract claim was "more appropriately characterized as a breach of the duty of good faith and fair representation, which is an unfair labor practice covered by [PERA], thereby falling under PERA's exclusive jurisdiction."  Other courts have reached the same conclusion.  *Alexander v. Orange Cty. Pub. Schs.*, No.6:09-CV-1107, 2009 WL 2870504, at *1 (M.D. Fla. Sept. 1, 2009); *Browning v. Brody*, 796 So. 2d 1191, 1192 (Fla. Dist. Ct. App. 2001).

Here, Plaintiff's state law claims against the union Defendants are grounded in his contention that they should have represented him, and filed a grievance on his behalf, in connection with his termination:

> The Union Defendants . . . breached the [agreement] by failing to file a grievance or response on behalf of Professor Tracy when he was faced with an unlawful disciplinary action.
>
> . . .

> The Union Defendants . . . breached the [agreement] by failing to represent and defend Professor Tracy when faced with an unlawful disciplinary action.
>
> . . .
>
> The Union Defendants . . . breached their fiduciary duty to Professor Tracy by, among other things, failing to ensure the proper procedures were followed to safeguard and protect Professor Tracy's tenured employment and constitutional rights.
>
> . . .
>
> The Union Defendants . . . breached their fiduciary duty . . . by advising and instructing Professor Tracy that he should submit "Outside Activities" forms for his personal blogging and constitutionally protected speech . . . .

Amended Complaint ¶¶ 221, 222, 228, 230.  Plaintiff's claims against the union Defendants in the instant case resemble the claims in cases such as *Fort Walton Beach* that fall within the exclusive jurisdiction of PERA.  Plaintiff has filed suit against the union Defendants because of his dissatisfaction with how the union represented him in the discipline and grievance process. The Florida Supreme Court has expressly held that, once a union chooses to represent a grievant, "the manner in which it handles the grievance, *including a decision not to process the grievance for lack of merit*, is subject to the statutory duty of fair representation" which is in turn subject to the exclusive jurisdiction of PERA.  *Galbreath v. Sch. Bd. of Broward Cty.*, 446 So. 2d 1045, 1047 (Fla. 1984) (emphasis added).  Plaintiff's claims against the union Defendants amount to an allegation of an unfair labor practice.  For all of the foregoing reasons, Plaintiff's Count IX and Count X are dismissed with prejudice due to the Court's lack of subject matter jurisdiction over those claims.

## V.     CONCLUSION AND RULING

It is hereby **ORDERED AND ADJUDGED** that Defendants' Motion to Dismiss [DE

79] is **GRANTED IN PART AND DENIED IN PART** as follows:

1. Plaintiff's claims against the individual Defendants in their official capacities, Count II, Count III, Count IV, Count V, and Count VII, are **DISMISSED WITH PREJUDICE**;

2. Plaintiff's claims against the individual Defendants in their personal capacities, Count II, Count III, Count IV, Count V, and Count VII, are **DISMISSED WITH PREJUDICE** as to any allegation pertaining to an unconstitutional FAU policy;

3. Plaintiff's claims against the individual Defendants in their personal capacities, Count II, Count III, Count IV, Count V, and Count VII, are **DISMISSED WITHOUT PREJUDICE** as to any allegation pertaining to Plaintiff's termination as a result of his blog postings;

4. Plaintiff's claim for retaliation, Count III, is **DISMISSED WITHOUT PREJUDICE** as more fully specified in this Order;

5. Plaintiff's claim for denial of procedural due process, Count V, is **DISMISSED WITH PREJUDICE**;

6. Plaintiff's conspiracy claims, Count VI and Count VII, are **DISMISSED WITHOUT PREJUDICE** as more fully specified in this Order;

7. Plaintiff's state law claims against the union Defendants, Count IX and Count X, are **DISMISSED WITH PREJUDICE** due to the Court's lack of subject matter jurisdiction over those claims;

8. Plaintiff shall have until December 28, 2016, to amend his complaint;

9. Defendants shall have ten (10) days from the date of filing of Plaintiff's new amended complaint to file a responsive pleading or responsive motion;

10. The Court's requirement for any and all motions to dismiss to be consolidated into a single filing remains in effect;

11. Page limitations in any future motion to dismiss, response, or reply shall be governed by the Local Rules;

12. The prior stay of discovery in this case is hereby **LIFTED** and discovery shall commence upon Plaintiff's filing of a new amended complaint; and

13. The Court will set a new trial date and pretrial deadlines by separate order.

**DONE and ORDERED** in Chambers, Fort Pierce, Florida, this 15th day of December, 2016.

_____
ROBIN L. ROSENBERG
UNITED STATES DISTRICT JUDGE

Copies furnished to Counsel of Record