## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| JAMES TRACY, | ) |
| | ) |
| Plaintiff, | ) |
| | )     Case No. 9:16-cv-80655-RLR-JMH |
| v. | ) |
| | ) |
| FLORIDA ATLANTIC UNIVERSITY | )     **PLAINTIFF'S MEMORANDUM** |
| BOARD OF TRUSTEES, a/k/a FLORIDA | )     **OF LAW IN OPPOSITION** |
| ATLANTIC UNIVERSITY, et al. | )     **TO MOTION TO DISMISS** |
| | ) |
| | ) |
| Defendants. | ) |

COMES NOW, Plaintiff, JAMES TRACY, files this Memorandum of Law in Opposition to the Motion to Dismiss (hereinafter "Motion") filed by Defendants Florida Atlantic University Board of Trustees, a/k/a Florida Atlantic University, John W. Kelly, Diane Alperin and Heather Coltman (the "FAU Defendants") and Defendants Florida Education Association, United Faculty of Florida, Michael Moats, and Robert Zoeller, Jr. (the "Union Defendants"), and states as follows:

## I.      INTRODUCTION

Plaintiff, Dr. James Tracy, was unlawfully terminated from his tenured faculty position at Florida Atlantic University by senior officials at the Defendant University, with the help of his representatives from the faculty union. The unjustifiable discharge, in retaliation for Plaintiff's personal blogging, violated Plaintiff's civil rights, including his First Amendment right to freedom of speech, giving rise to the present action. Defendants' Motion disingenuously attempts to delegitimize Plaintiff's civil rights claims as merely a "simple" wrongful termination resulting from Plaintiff's failure to follow the Defendants' instructions. In doing so, Defendants ask the Court to ignore overwhelming circumstantial and direct evidence Defendants violated Plaintiff's

constitutional rights, including Plaintiff's First Amendment right to free speech. When read in the light most favorable to Plaintiff, the Second Amended Complaint satisfies the legal standard for surviving a motion to dismiss and allows the Court to draw the reasonable inference and conclusion that the Defendants are liable for all alleged misconduct and Plaintiff is entitled to all relief sought.

Plaintiff's Second Amended Complaint contains six (6) counts: Count I, Retaliation against the Defendant University and Defendants Kelly, Alperin and Coltman ¶¶ 122-137; Count II, Conspiracy to Interfere With Civil Rights, Against Defendants Alperin, Coltman, Kelly, Zoeller, Moats, Defendants UFF and FEA and Defendant University ¶¶ 138-167; Count III Facial Challenge to FAU's "Conflict of Interest/Outside Activities" Policy ("the Policy") Against Defendant University ¶¶ 168-190; Count IV "As-Applied" Violation of Professor Tracy's Rights to Free Speech Under the First and Fourteenth Amendments Against Defendant University ¶¶ 191-213; Count V, Declaratory Judgment & Injunction Against Defendant University ¶¶ 214-221; and Count VI, Breach of Contract Against Defendant University ¶¶ 222-232.

## II.    PLAINTIFF'S RESPONSE AND MEMORANDUM OF LAW

Defendants' Motion seeks complete dismissal of only Counts II and IV, and only partly seeks dismissal of Count I with respect to Defendant Kelly. Counts III, V and VI, and most of Count I, remain unchallenged.[1] However, the Second Amended Complaint and applicable case law demonstrate Plaintiff's Second Amended Complaint clearly and sufficiently states claims against each and every named Defendant in each and every count, respectively. Defendants have

---

[1] FAU Defendants have failed to file a responsive pleading with respect to all unchallenged counts.

gone through a great deal of effort in their Motion to twist the facts and misconstrue the nature of Plaintiff's allegations against the Defendants.

The only counts challenged by Defendants' Motion are as follows:

**A.    Count I – Against Defendants Alperin, Coltman and Kelly for Retaliation in Violation of Plaintiff's Rights to Free Speech Under First and Fourteenth Amendments. Sec. Am. Compl. ¶¶ 122-137 [only challenged by Defendant Kelly]**

Through Count I, Defendant Kelly is sued in his personal capacity for terminating Plaintiff in retaliation for his constitutionally protected speech. Count I incorporates Paragraphs 1-121 of the Second Amended Complaint, including but not limited to the following allegations pertaining to Defendant Kelly:

- Defendant Kelly serves "at the pleasure of" the Defendant University's Board of Trustees and is held "responsible for the University's operation and management, performance, its fiscal accountability, and its compliance with federal and state laws, rules and regulations." Sec. Am. Compl. ¶ 12.

- Paragraph 13 of the Second Amended Complaint sets forth Defendant Kelly's express responsibilities and duties at the Defendant University, including:

  - "To be responsible for the organization, operation, and administration of the University . . . .";

  - "To execute all documents on behalf of the University and the BOT consistent with law . . . .";

  - "To serve as the principal liaison officer and official contact between the BOT and the faculty, staff and students of the university.";

  - "To establish and **implement policies and procedures** to recruit, appoint, transfer, promote, compensate, evaluate, reward, demote, **discipline, and remove personnel** . . . ."; and

  - "To ensure [FAU's] compliance with federal and state laws, rules, regulations, and other requirements which are applicable to the University."

  *See* Sec. Am. Compl. ¶ 13. (emphasis added).

- Defendant Kelly is "President and Chief Executive Officer of Florida Atlantic University, designated by the Defendant University's Board of Trustees. Defendant Kelly supervised,

facilitated, recommended and/or approved discipline and termination of Professor Tracy in retaliation . . . for engaging in his constitutionally protected speech and expression on his personal blog." Sec. Am. Compl. ¶ 14.

- "In November and December 2015, Defendants Alperin, Coltman, and other senior FAU officials and representatives, including FAU General Counsel Larry Glick . . . planned to discipline Professor Tracy in retaliation for his personal blogging . . . under the supervision and with the approval of Defendant Kelly . . . ." Sec. Am. Compl. ¶ 91.

- Plaintiff's "constitutionally protected speech, including his uncompensated opinions and viewpoints expressed on his personal blog, played a substantial part and was a motivating factor" in the decision of Defendant Kelly to terminate Plaintiff. Sec. Am. Compl. ¶ 120.

- Plaintiff's "constitutionally protected speech played a substantial part and was a motivating factor" in the decision of Defendant Kelly to terminate Plaintiff. Sec. Am. Compl. ¶ 126.

- Defendant Kelly "acted unconstitutionally and unlawfully in disciplining and terminating Professor Tracy in order to restrict his, and other similarly situated faculty member's expression and freedom of speech." Sec. Am. Compl. ¶ 127.

- Defendant Kelly "had no legitimate government interest in disciplining or terminating Professor Tracy for his constitutionally protected personal blogging and online speech and expression." Sec. Am. Compl. ¶ 128.

- The retaliatory actions of Defendant Kelly "in response to Professor Tracy's constitutionally protected speech, have had a chilling effect that acts as a deterrent to free speech." Sec. Am. Compl. ¶ 130.

- Defendant Kelly "acted intentionally, knowingly, willfully, wantonly, and in reckless disregard of Professor Tracy's federally-protected constitutional rights and violated clearly established constitutional rights of which all reasonable college administrators and staff should have known . . . ." Sec. Am. Compl. ¶ 131.

- Defendant Kelly "and other officials and representatives at the Defendant University who aided and abetted the unlawful discipline and termination of Professor Tracy acted intentionally, knowingly, willfully, wantonly, and in reckless disregard of Professor Tracy's federally-protected constitutional rights, and without regard to the significant emotional and reputational damage such actions would cause." Sec. Am. Compl. ¶ 132.

### i.   *Plaintiff States A Claim For § 1983 Retaliation Against Defendant Kelly*

FAU Defendants' Motion to Dismiss begins by impermissibly asking the Court to ignore

the bulk of the allegations in the Second Amended Complaint against Defendant Kelly, outlined

4

above, in hopes of diminishing Plaintiff's claims against the Defendant University's President and Chief Executive Officer into "respondeat superior" or "vicarious liability" claims based solely upon the conduct of "subordinates". FAU Defendants point only to the absence of Defendant Kelly's name or signature on three (3) exhibits to the Second Amended Complaint, and misrepresent[2] that Defendant Kelly "neither signed nor received a copy of any of the disciplinary actions taken against Plaintiff". The Second Amended Complaint sets forth ample factual allegations detailing Defendant Kelly's direct participation in Plaintiff's retaliatory firing.

It is alleged that Defendant Kelly was in charge of Plaintiff's discipline and removal. *See* Sec. Am. Compl. ¶ 13. Defendant Kelly stated he would become personally involved in the controversy surrounding Plaintiff's blogging. *See* Sec. Am. Compl. ¶ 103. *see also* Exhibit "AP". Plaintiff was terminated[3] within five (5) days of Defendant Kelly's email stating his intentions to "personally" "deal with" Plaintiff's blogging. Plaintiff has alleged he engaged in constitutionally protected activity and that his protected conduct played a substantial or motivating role in the alleged adverse employment action carried out by Defendant Kelly. *See Walden v. CDC*, 669 F.3d 1277, 1289 (11th Cir. 2012).

---

[2] The bulk of Defendant Kelly's known email communications from late 2015 were only recently obtained by Plaintiff on January 27, 2017, following delayed production of over sixteen hundred (1,600) records requested in August 2016 pursuant to Florida Sunshine Law. Defendant Kelly's email records demonstrate Kelly was *in fact* copied on *multiple* notices regarding Plaintiff's termination, including December 16, 2015 correspondences sent by FAU Vice President & General Counsel David Kian, and Andrew LePlant, Defendant Kelly's "Director, Board Operations & Chief Aide". Defendant Kelly's Chief Aide was tasked with notifying the Defendant University's Trustees that "the University" had "initiated the process of terminating" Plaintiff, and provided top FAU officials, including Defendant Kelly, with a copy of FAU's official press release which was posted on FAU's website. Defendant Kelly's emails also show continued official directives not to use email communication, or "ENGAGE IN ANY PUBLIC COMMENT" or "ANY CONVERSATIONS WITH EACH OTHER" about Plaintiff's discipline and termination, "TO BEST PROTECT THE UNIVERSITY". *See attached* Exhibit "1".

[3] It should be noted Defendant University purportedly uses a "progressive discipline" policy. According to the UFF-FAU Collective Bargaining Agreement, any discipline selected for a particular offense "must be appropriate to the nature and circumstances of the case." (*See Exhibit "C", Section 16.2).* Having withdrawn threatened discipline against Plaintiff in 2013 for his blogging, Plaintiff's termination in late 2015/early 2016 for violating the Policy was technically the first and only disciplinary action selected for Plaintiff's alleged "offense" of failure to timely submit constitutionally protected speech to the Defendant University for evaluation or approval.

Citing *Keith v. DeKalb Cnty., Ga.*, FAU Defendants baldly claim the Second Amended Complaint fails to depict Defendant Kelly's "direct" participation or a "causal connection" between Kelly's conduct and Plaintiff's firing. However, the allegations against Defendant Kelly in the Second Amended Complaint, when read in the light most favorable to the non-moving party, clearly satisfies the standard set forth in FAU Defendants' own case authority. *See Keith*, 749 F.3d 1034, 1047 (11th Cir. 2014).

**B.      Count II – Against Defendants Alperin, Coltman, Kelly, Zoeller, Moats, Defendants UFF and FEA and Defendant University for Conspiracy to Interfere with Plaintiff's Civil Rights. Sec. Am. Compl. ¶¶ 138-167.**

Through Count II, all named Defendants are sued because in 2015 and 2016 they were intertwined in a symbiotic relationship with the Defendant University, which involved a conspiracy between all named Defendants to discipline and terminate Plaintiff in retaliation for exercising his constitutionally protected speech. Count II incorporates Paragraphs 1-137 of the Second Amended Complaint, including the following:

- "In January 2013, Defendants Coltman, Alperin, and other senior FAU officials and representatives, including FAU General Counsel Larry Glick, "began planning how to use the public controversy surrounding Professor Tracy's blog to not only discipline Professor Tracy for his blogging, but also to undermine FAU faculty union membership and representation." Sec. Am. Compl. ¶ 50 *See also* Exhibit "AK".

- Defendant Coltman, Defendant Alperin and other senior officials and representatives of the Defendant University, including former FAU President Mary Jane Saunders and FAU General Counsel Glick began a coordinated effort to monitor Plaintiff's blog, and "find winning metaphors" to overcome the First Amendment in "ethically" disciplining Plaintiff for his personal blogging. Sec. Am. Compl. ¶ 49, 53  *See* Exhibit "AK".

- Defendants Coltman, Alperin, FAU General Counsel Glick and other senior FAU officials and representatives, were directed not to communicate by e-mail, which could be discovered through public records requests. They also agreed to monitor and evaluate the personal blogging of Professor Tracy ("JT"), and to "centrally handle" the controversy surrounding the blog. Sec. Am. Compl. ¶ 53.

- "In November and December 2015, Defendants Alperin, Coltman, and other senior FAU officials and representatives, including FAU General Counsel Larry Glick, once again

planned to discipline Professor Tracy in retaliation for his personal blogging, this time under the supervision and with the approval of Defendant Kelly. Upon information and belief, in furtherance of their unlawful objectives, FAU's General Counsel Glick met with Defendant Zoeller and reached an understanding and agreement that Defendants UFF and FEA would not contest the discipline and termination of Professor Tracy." Sec. Am. Compl. ¶ 91.

- "In furtherance of the conspiracy, Defendants Alperin, Coltman and FAU General Counsel Glick internally labeled Professor Tracy the "poster child" to "quit UFF membership", and planned to use the controversy surrounding his personal blogging to undermine Professor Tracy's representation by Defendants UFF and FEA." Sec. Am. Compl. ¶ 145.  See also Exhibit "AK".

- "In furtherance of the conspiracy to interfere with Professor Tracy's civil rights, and in retaliation for Professor Tracy's personal blogging, the Defendant University, through Defendant Alperin canceled Professor Tracy's course, "Media, War and Crisis" and reassigned Professor Tracy to an undergraduate course he had not previously taught, at times of the day that conflicted with his child care schedule." Sec. Am. Compl. ¶ 146

- "After initial efforts to discipline Professor Tracy for his personal blogging failed in 2013, Defendants Alperin and Coltman once again, in furtherance of the conspiracy to interfere with Professor Tracy's civil rights, attempted to unlawfully discipline Professor Tracy for his personal blogging in November and December of 2015." Sec. Am. Compl. ¶ 147.

- "Defendant Kelly personally supervised and approved FAU officials and representatives efforts in 2015 to discipline and dismiss Professor Tracy in retaliation for his personal blogging, with acknowledgement and approval of the Chairman of the Defendant University's Board of Trustees." Sec. Am. Compl. ¶ 148.

- "In furtherance of the conspiracy to interfere with Professor Tracy's civil rights, in November and December of 2015, including December 17, 2015, Defendants Zoeller, individually and on behalf of the Defendants UFF and FEA, met with FAU General Counsel Larry Glick, acting on behalf of the Defendant University and Defendants Kelly, Alperin and Coltman. During these meetings, which occurred in person at FAU's campus, an understanding and agreement was reached to sabotage Professor Tracy's defense against FAU's unlawful discipline, and to secure Professor Tracy's termination or resignation in lieu of termination." Sec. Am. Compl. ¶ 149.

- "Although Defendant Moats and Defendants UFF and FEA previously advised and instructed Professor Tracy not to submit personal blogging to the Defendant University for approval or restriction when faced with identical unlawful directives and threats of discipline for his personal blogging, in 2015, in furtherance of the conspiracy, Defendants Moats and Defendants UFF and FEA about-faced Professor Tracy and aided and abetted Professor Tracy's unlawful discipline and termination for his personal blogging. Defendant Moats and Defendants UFF and FEA agreed not to file a grievance or respond

to the Defendant University's Notices of Discipline on Professor Tracy's behalf, while actively deceiving Professor Tracy into believing that a timely response and grievance would be filed by Defendants UFF and FEA." Sec. Am. Compl. ¶ 150.

- "In furtherance of the conspiracy to interfere with Professor Tracy's civil rights, Defendants Kelly, Alperin, Zoeller and other officials and representatives of the Defendant University and Defendants UFF and FEA, disregarded and dismissed multiple faculty complaints and requests for FAU officials to cease and desist infringing upon constitutionally protected faculty speech and expression." Sec. Am. Compl. ¶ 151.

- "In October, November and December of 2015, and in furtherance of the conspiracy to interfere with Professor Tracy's civil rights, Defendants Kelly, Alperin, Zoeller, Moats and other officials and representatives of the Defendant University and Defendants UFF and FEA ignored Professor Tracy's complaints that his uncompensated, constitutionally protected personal blogging could not be subjected to restriction by the Defendant University." Sec. Am. Compl. ¶ 152.

- "In November 2015, in furtherance of the conspiracy to interfere with Professor Tracy's civil rights, Defendant Coltman demanded Professor Tracy submit four (4) years of personal blogging to FAU officials for evaluation." Sec. Am. Compl. ¶ 153.

- "In response to and in support of Defendant Coltman's demands, and in furtherance of the conspiracy to interfere with Professor Tracy's civil rights, Defendants Zoeller and Moats coerced Professor Tracy into submitting four (4) years of constitutionally protected blogging to Defendant Coltman and the Defendant University." Sec. Am. Compl. ¶ 154.

- "In furtherance of the conspiracy to interfere with Professor Tracy's civil rights, in 2015, Defendants Alperin, Coltman, Kelly and other senior administrative officials and representatives of the Defendant University, including FAU General Counsel Glick, acted unconstitutionally and unlawfully in disciplining Professor Tracy in retaliation for his personal blogging." Sec. Am. Compl. ¶ 155.

- "In furtherance of the conspiracy to interfere with Professor Tracy's civil rights, Defendants Zoeller, Defendant Moats and officials and/or representatives of Defendants UFF and FEA purposefully failed to file a grievance or contest the Defendant University's retaliatory discipline of Professor Tracy for his personal blogging." Sec. Am. Compl. ¶ 156.

- "In furtherance of the conspiracy to interfere with Professor Tracy's civil rights, in 2015, Defendants Alperin, Coltman, Kelly and the Defendant University, acted unconstitutionally and unlawfully in issuing FAU's Notice of Intent to Terminate Professor Tracy in retaliation for his personal blogging." Sec. Am. Compl. ¶ 157.

- "In furtherance of the conspiracy to interfere with Professor Tracy's civil rights, Defendant Zoeller and Defendant Moats, and other representatives of Defendants UFF

and FEA purposefully failed to respond or grieve FAU's Notice of Intent to Terminate, as promised to Professor Tracy, which could have deferred and prevented Professor Tracy's termination." Sec. Am. Compl. ¶ 158.

- "In furtherance of the conspiracy to interfere with Professor Tracy's civil rights, Defendant Moats and Defendant Zoeller misadvised and attempted to mislead Professor Tracy into believing the unlawful and unconstitutional discipline by FAU was "valid" and lawful." Sec. Am. Compl. ¶ 159. *See also* Exhibits "AA" & "AC".

- "In December 2015, in furtherance of the conspiracy to interfere with Professor Tracy's civil rights, Defendants Claims Moats and Defendant Zoeller also repeatedly instructed Professor Tracy not to exercise his constitutional rights, including his freedom of speech and expression." Sec. Am. Compl. ¶ 160.

- "In furtherance of the conspiracy, the Union Defendants, including Defendants Moats, Defendant Zoeller, and other representatives of the Defendants UFF and FEA attempted to pressure and coerce Professor Tracy into resigning from his tenured position." Sec. Am. Compl. ¶ 161.

- "In furtherance of the conspiracy, the Union Defendants, including Defendants Moats, Defendant Zoeller, and other representatives of the Defendants UFF and FEA attempted to discourage Professor Tracy from taking any legal action against the Defendant University, falsely claiming that any challenge to his termination would be unsuccessful." Sec. Am. Compl. ¶ 162.

- "Willful failure to file a timely response or grievance by representatives and agents of Defendants UFF and FEA, including but not limited to Defendant Zoeller and Moats resulted in Professor Tracy's discipline and termination by the Defendant University." Sec. Am. Compl. ¶ 163.

### i. Count II States Claims Against Each Named Defendant for Conspiracy to Interfere With Plaintiff's Civil Rights Under Sections 1983 & 1985.

Defendants' Motion to Dismiss attempts to obfuscate the nature of Count II, by reducing Plaintiff's claim of conspiracy to violate Plaintiff's First Amendment right to freedom of speech (a substantive due process violation), into merely a procedural due process claim. However, a plain reading of Count II, in the light most favorable to Plaintiff, demonstrates Count II sufficiently alleges Defendants conspired to interfere with and deprive Plaintiff of his right to freedom of speech. *See* Sec. Am. Compl. ¶¶ 138-167. *see also Collins v. City of Harker Heights*, 112 S.Ct. 1061 (1992)(holding substantive due process protection means plaintiff's right is

protected against certain government actions regardless of the fairness of the procedures used to implement them); *see also Daniels v. Williams*, 474 U.S. 327, 331 (1986) (holding the constitutional violation is complete as soon as the prohibited action is taken); *Gilbert v. Homar*, 520 US 924 (1997) (holding that tenure is a federally protected property right).

Plaintiff is not required to produce a "smoking gun" to prove a conspiracy to violate his constitutional rights existed or resulted in his unlawful termination. *See Bendiburg v. Dempsey*, 909 F. 2d 463, 469 (11th Cir. 1990). Actual proof of the existence of a conspiracy may be based on circumstantial evidence. *Grinder v. City of Auburn*, 618 F. 3d, 1240, 1260 (11th Cir. 2010). Circumstantial evidence in a conspiracy alleged under 42 U.S.C. §§ 1983 and 1985 has no less weight than direct evidence. *Burrell v. Bd. Of Trs. Of Ga. Military College*, 970 F.2d 785, 788-789 (11th Cir. 1992). It is open to a jury to infer from circumstantial evidence that a state actor and private party had a "meeting of the minds". *Id. See also Adickes v. S.H. Kress & Company*, 398 U.S. 144, 158 (1970). "To be held liable for the acts of all co-conspirators, each co-conspirator 'need only know of the scheme and assist in it in some way.'" *Principal Life Ins. Co. v. Mosberg*, 2010 WL 473042, at *6 (S.D.Fla. Feb. 5, 2010) (quoting *Donofrio v. Matassini*, 503 So.2d 1278, 1281 (Fla.Dist.Ct.App. 1987)). Plaintiff's Second Amended Complaint abundantly provides ample circumstantial and direct evidence, including overt acts committed by all named Defendants from which the Court and a jury could reasonably infer that a conspiracy to violate Plaintiff's civil rights existed.

### ii. Count II Sufficiently Alleges Union Defendants Conspired To Violate Plaintiff's Constitutional Right to Freedom of Speech

Plaintiff's Second Amended Complaint abundantly details and outlines the Union Defendants' role in the conspiracy to deprive Plaintiff of his federally protected rights, including his right to freedom of speech. Union Defendants UFF and FEA, and Defendant Moats first

defended Plaintiff from the Defendant University's initial attempts to encroach on Plaintiff's federally protected rights in 2013. *See* Sec. Am. Compl., ¶¶ 60-66; 68-71; 75-76; 79-80; 82. Following meetings with senior officials and representatives of the Defendant University, the Union Defendants, including Defendant Zoeller and Defendant Moats, jointly participated with the FAU Defendants in violating Plaintiff's constitutional rights, by changing their 2013 position regarding the scope and application of the Defendant University's "Conflict of Interest/Outside Activities" Policy and forms with respect to Plaintiff's blogging, and pressuring and coercing Plaintiff into, *inter alia*, submitting prior restraint forms for administrative evaluation and discipline. *See* Sec. Am. Compl. ¶¶ 91-121; 138-167. It is a reasonable inference Union Defendants only changed their position with respect to Plaintiff's First Amendment rights as a result of an unlawful understanding and agreement reached between FAU Defendants and Union Defendants through the Defendants' collective bargaining agents, Defendant Zoeller and FAU General Counsel Glick.[4]

It is alleged that meetings took place between the Defendants in November and December of 2015, wherein FAU Defendants and Union Defendants reached an unlawful understanding and agreement to deprive Plaintiff of his civil rights. Thereafter, in furtherance of the unlawful agreement, it is alleged Union Defendants actively deceived Plaintiff by misadvising Plaintiff of his rights and the law, then coerced Plaintiff into a trap set by FAU Defendants by conditioning their obligation to defend Plaintiff upon Plaintiff's compliance with FAU Defendants' unconstitutional directives. *See* Sec. Am. Compl. ¶¶ 94, 96, 110. In furtherance of the conspiracy, Union Defendants prevented Plaintiff from filing a timely

---

[4] *See* Sec. Am. Compl. ¶ 50. Exhibit "AK". *See also* Sec. Am. Compl., Exhibit "O", p. 4 (email from Defendant Zoeller stating, "We're going to address [Plaintiff's problem with the FAU's Conflict of Interest/Outside Activities Policy] in collective bargaining.") See also Exhibit "C", Page 90 (showing FAU General Counsel Glick as signatory to UFF-FAU Collective Bargaining Agreement as agent and representative of FAU Defendants).

response to FAU Defendants' Notice of Termination by misrepresenting to Plaintiff that they would respond on his behalf. Then Union Defendants failed to file a response to the Notice of Termination, causing Plaintiff's uncontested termination for the benefit of the Defendant University, and senior FAU officials and co-conspirators, including Defendants Kelly, Alperin and Coltman. *See* Sec. Am. Compl. ¶¶ 116, 156, 158.

The Union Defendants' dubious reasoning for their failure to timely respond on Plaintiff's behalf, as promised, was provided to Plaintiff two (2) weeks after the Union Defendants missed Plaintiff's response deadline: "Nothing [Union Defendants] could have said would have satisfied [FAU Defendants], so there was no sense in putting anything on record . . . ." *See* Sec. Am. Compl., ¶ 117, *see also* Exhibit "AD". It is alleged that the Union Defendants conspired with and jointly participated with Defendant University, and Defendants Kelly, Alperin and Coltman, in securing Plaintiff's unconstitutional termination. *See Lehman v. Scott*, 2009 WL 1228433, at *3 (M.D. Fla. May 4, 2009)(holding that the "joint participation" doctrine, requires courts to examine whether the government and non-state actor defendant(s) are "intertwined in a symbiotic relationship," as well as whether the relationship involves "the specific conduct of which plaintiff complains.").

### iii. *Count II Alleges FAU Defendants Conspired With Union Defendants Using Defendant University's Collective Bargaining Agent and Representative*

Faced with overwhelming circumstantial and direct evidence of a conspiracy to interfere with Plaintiff's civil rights, Defendants' Motion to Dismiss attempts to downplay the significance of meetings held between Union Defendant Zoeller, President and collective bargaining agent for the UFF-FAU Chapter of Defendants UFF and FEA, and FAU General Counsel Larry Glick, FAU Defendants' collective bargaining agent and representative. FAU General Counsel Glick is also alleged to have originally met with Defendants Alperin and

Coltman, and other senior FAU officials to find "winning metaphors" to overcome the First Amendment and "ethically discipline" Plaintiff for his blogging. *See* Sec. Am. Compl., ¶¶ 50-55, 88-99, 106, 110, 144-145, 149, 155. *See also* Exhibit "AK".

It is alleged FAU Defendants' agent and representative, FAU General Counsel Glick, met with, conspired with and secured the joint participation of Defendant Zoeller and the Union Defendants to discipline and terminate Plaintiff in retaliation for his blogging. *See* Sec. Am. Compl., ¶¶ 50-55, 88-99, 106, 110, 144-145, 149, 155. *See also* Exhibit "AK". The Second Amended Complaint alleges ample facts which give rise to the reasonable inference that each alleged co-conspirator knew of the scheme and assisted in some way. *See* Sec. Am. Compl. ¶¶ 138-164. *See also Principal Life Ins. Co.*, 2010 WL 473042, at *6 (S.D.Fla. Feb. 5, 2010). Plaintiff sets forth more than just ample circumstantial evidence, but overwhelming direct evidence, including numerous overt acts committed by all named Defendants, in furtherance of the conspiracy to interfere with Plaintiff's civil rights.

### iv. FAU Defendants Are Not Shielded By "Intracorporate Conspiracy Doctrine" Because They Conspired With An Outside Third Party

While it is true a corporation can't conspire with itself, it is alleged FAU Defendants conspired with outside third parties, including Defendant Zoeller, Defendant Moats and Defendants UFF and FEA. Thus intracorporate conspiracy doctrine is inapplicable to the present action and does not apply to the conspiracy to interfere with civil rights alleged in Count II.

Furthermore, FAU Defendants' disingenuous claim that Defendants Kelly, Alperin, and Coltman can't conspire to violate the First Amendment, when the overt acts committed in furtherance of the conspiracy to violate Plaintiff's civil rights fall "within the scope of their employment". This notion defies decades of First Amendment jurisprudence. *See Healy v. James*, 408 U.S. 169, 180 (1972); *see also Bloedom v. Grube*, 631 F.3d 1216 (11th Cir. 2011);

*see also Keeton v. Anderson-Wiley*, 664 F.3d 865 (11th Cir. 2011); *see* also *Beckwith v. City of Daytona Beach Shores Fla.,* 58 F.3d 1554, 1563 (11th Cir. 1995).

  ***v.  Defendants Jointly Violated Plaintiff's First Amendment Rights***

    Defendants self-serving claim that Plaintiff knew about available "procedures" to challenge FAU Defendants' decision to terminate his employment, and "chose not to avail himself of those procedures" may be a purported affirmative defense to allegations of violations of Plaintiff's *procedural*[5] due process rights, however, Defendants' Motion offers no defense to Count II's allegations of conspiracy to interfere with Plaintiff's First Amendment right to freedom of speech, which is in effect, a *substantive* due process claim. *See id.* Defendants' reliance on *Crenshaw* or any other non-analogous case involving plaintiffs who didn't allege, or couldn't establish illegal motives behind their firing, is misplaced. FAU Defendants can offer no analogous cases involving plaintiffs whose federally protected tenure rights were unconstitutionally stripped under similar circumstances. *See Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 578 (1972); *Perry v. Sindermann*, 408 U.S. 593, 602–603 (1972). Defendants instead must mischaracterize and twist the facts in an attempt to subvert the administration of justice in the present action.

**C. Count IV – Against Defendant University for As-Applied Violation of Plaintiff's Right to Free Speech. Sec.  Am. Compl. ¶¶ 191-213**

    Through Count IV, Plaintiff challenges the application of Article 19, the Defendant University's "Conflict of Interest/Outside Activities" Policy to Plaintiff and his blog. The count incorporates Paragraphs 1-121 and 169-188 of the Second Amended Complaint, including:

---

[5] Defendants' purported affirmative defense that Plaintiff "chose" or somehow elected not to respond to the Defendant University's Notice of Termination is not only patently false, it also plainly disregards the four corners of the Second Amended Complaint which alleges Plaintiff's termination by "default" was the result of deception, false promises and purposeful inaction by Union Defendants. Moreover, even if Plaintiff had willfully failed to respond to FAU Defendants' termination notice, Defendants could still nonetheless be liable for violating Plaintiff's constitutional right to freedom of speech. *See Lovell v. Griffin*, 303 U.S. 444 (1938).

- "On December 11, 2015, Defendant Coltman again directed Professor Tracy to submit four (4) years of "Outside Activity/Conflict of Interest" forms for his personal blogging or "receive further disciplining up to and including termination." Sec. Am. Compl. ¶ 105. *See also* Exhibit "W".

- "In response to Defendant Coltman's December 11 email, and as directed by Defendants Zoeller and Moats, Professor Tracy, under duress, submitted "Outside Activity/Conflict of Interest" forms for his personal blogging. [See Exhibit "X"]. Defendant Coltman in turn forwarded Professor Tracy's completed forms to Defendant Alperin, FAU General Counsel Larry Glick and Vice President & General Counsel David Kian." Sec. Am. Compl. ¶ 106.

- "The following day, December 16, 2015, the Defendant University, by and through Defendant Alperin issued FAU's Notice of Intent to Terminate Professor Tracy, indicating Professor Tracy was being terminated for his alleged failure to timely submit "Activity Forms" or "Activity Reports" for his personal blogging. The Notice claimed:

  > "By simply submitting the completed Activity Forms, you would have been compliant with no further discipline. However, you again refused the Dean's clear directive and did not submit the forms by the new deadline."

  > "You again failed to submit any Activity Reports for the three years in question for your blog, which you clearly spend time and resources maintaining and contributing to. You have yet again deprived the University of the forms needed to assess if a conflict exists for the blog activity . . . ."" Sec. Am. Compl. ¶ 107. *See also* Exhibit "Y".

- "Prior to Professor Tracy's discipline and termination, no other tenured faculty member had ever been disciplined, or terminated for failure or refusal to submit uncompensated personal blogging or any other form of constitutionally protected speech and expression to the Defendant University for approval or restriction." Sec. Am. Compl. ¶ 121.

- "The Defendant University's "Conflict of Interest/Outside Activities" Policy is unconstitutional as it was applied to Professor Tracy's personal blogging and constitutionally protected speech and expression." Sec. Am. Compl. ¶ 192.

- At all times material to this Second Amended Complaint, both faculty and administrative officials tasked with enforcement of the Policy could not understand it, and needed an opinion from FAUs' legal department to clarify the Policy's meaning, scope, and application. Sec. Am. Compl. ¶ 209. *See also* Exhibits "AM", "AN" and "AO".

- The Policy, as applied to Professor Tracy's constitutionally protected speech,

directly resulted in substantial and irreparable harm to Professor Tracy, including lost income, reputational disparagement, the loss of a tenured appointment at Florida Atlantic University and out of pocket expenses, including but not limited to attorneys' fees and costs. Sec. Am. Compl. ¶ 211.

- To prevent further violation of constitutional rights of the Defendant University's faculty members, including Professor Tracy, it is appropriate and proper that this Court issue an Order declaring that the Defendant University's "Conflict of Interest/Outside Activities" Policy is unconstitutional as applied to Professor Tracy's personal blogging and constitutionally protected speech and expression. Sec. Am. Compl. ¶ 212.

### i. Count IV States a Claim Against Defendant University for As-Applied Violation of Professor Tracy's Rights to Free Speech.

It is well settled, pursuant to *Federal Rules of Civil Procedure*, that Plaintiff may set out two (2) or more statements of a claim alternatively or hypothetically, either in a single count or defense or in separate ones or state as many separate claims or defenses as the party has regardless of consistency. *See* Fed. R. Civ. P. 8(d)(2); *see also Cleveland v. Policy Management Systems Corp.*, 526 U.S. 795 (1999). An as-applied challenge addresses whether a state policy is unconstitutional on the facts of a particular case or to a particular party. *See Harris v. Mexican Specialty Foods, Inc.*, 564 F.3d 1301, 1308 (11th Cir. 2009).

### a. Count IV Is Not a Facial Challenge to Defendant University's Policy.

Unlike facial challenges, as-applied challenges require the development of a factual record of how a challenged policy is applied for the Court to consider. *Id.; see also Siegel v. LePore*, 234 F.3d 1163, 1171 (11th Cir. 2000); *Near v. Minnesota*, 283 U.S. 697 (1931); *see also United States v. O'Brien*, 391 U.S. 367 (1968)(holding government regulation that prohibits speech  must be "content neutral" and prohibit no more speech than is essential to further a substantial government interest). The distinction between facial and as-applied challenges is not so well defined that it has some automatic effect or that it must always control the pleadings and disposition in every case involving a constitutional challenge. *See American Federation of State,*

16

*County and Mun. Employees Council 79 v. Scott*, 717 F.3d 851 (11th Cir. 2013). The distinction "goes to the breadth of the remedy employed by the Court, not what must be pleaded in a complaint." *Id. See also Citizens United v. Fed. Election Comm'n*, 558 U.S. 310, 331 (2010); *Jacobs v. Fla. Bar*, 50 F.3d 901, 905 n. 17 (11th Cir. 1995)(holding courts are not bound by a party's characterization of the complaint as facial, but rather look to whether "the complaint sets forth a cause of action for an as-applied challenge"). Plaintiff's Second Amended Complaint sufficiently alleges in Count IV that Plaintiff has suffered an injury-in-fact fairly traceable to the operation of the Defendant University's "Conflict of Interest/Outside Activities" Policy and a favorable judgment is likely to redress that injury. *See Harell v. The Florida Bar*, 608 F.3d 1241, 1253*; Kelly v. Harris*, 331 F.3d 817, 819–20 (11th Cir. 2003).

Defendants, ignoring most of what Plaintiff has alleged, baldly assert "Plaintiff does not allege what particular circumstances make the Policy unconstitutional as applied to him specifically". However, when read in the light most favorable to Plaintiff, Paragraphs 1-121 of the Second Amended Complaint, incorporated fully into Count IV, and the allegations of Count IV, detail exactly how the Policy was applied by the Defendant University to Plaintiff and his uncompensated personal blogging. *See also* Sec. Am. Compl. ¶ 211, 213. These allegations, read in the light most favorable to Plaintiff, draw the reasonable inference that the Policy was unconstitutional as-applied to Plaintiff, resulting in injury that can in fact be remedied by the Court.

### b.  *Plaintiff Was Not Required to Exhaust Any Administrative Remedies*

After terminating Plaintiff for his purported violation of the Policy, the Defendant University's Motion to Dismiss now dubiously argues Plaintiff's As-Applied Challenge to the Policy is "not ripe" because the unconstitutional Policy could not have been "applied" to Plaintiff

"unless and until an administrative decision had been formalized" and "without the presentation of a binding conclusive administrative decision, no tangible controversy exists and the Court has no authority to act". The Defendant University's misleading argument relies on a single inapplicable case, *Digital Properties, Inc.*, which was a *commercial speech* case involving an adult book store and zoning ordinances. FAU Defendants cite no case involving an as-applied challenge to a public university policy which violates free speech rights of tenured faculty. Nonetheless, the Defendant University's nonsensical position is that because Plaintiff allegedly did not "timely" submit forms pursuant to the Policy, Plaintiff is now barred from challenging the Policy—the very policy Plaintiff is accused of violating! *See* Sec. Am. Compl. Exhibit "Y" ("You have engaged in continued misconduct in violation of . . . CBA Article 19 [the Policy]. Therefore . . . this letter constitutes formal Notice of Proposed Discipline- Termination.").

Taking all facts and allegations in the Second Amended Complaint as true, the Defendants unlawfully used the Policy to apply a prior restraint to Professor Tracy's constitutionally protected speech. It is undisputable that Plaintiff did in fact turn in the forms pursuant to unlawful directives, and was fired the very next day, using, as a pretext, an alleged violation of the Policy. The Defendant University's administrative decision to discipline and terminate Plaintiff for failure to submit Plaintiff's constitutionally protected speech and expression to the Defendant University for administrative evaluation and censorship pursuant to the Policy, is certainly a tangible controversy involving First Amendment violations for which the Court has authority to act. *See Pickering v. Board of Ed. of Township High School Dist. 205, Will Cty.,* 391 U.S. 563, 568 (1968); *Garcetti v. Ceballos*, 547 U.S. 410, 421 (2006). *Healy*, 408 U.S. 169, 180 (1972); *Bloedom v. Grube*, 631 F.3d 1216 (11th Cir. 2011); *Keeton*, 664 F.3d 865 (11th Cir. 2011). *Beckwith,* 58 F.3d 1554, 1563 (11th Cir. 1995). *Siegel*, 234 F.3d 1163, 1171

(11th Cir. 2000); *Near*, 283 U.S. 697 (1931); *U.S. v. O'Brien*, 391 U.S. 367 (1968). When read in the light most favorable to Plaintiff, the Second Amended Complaint and Count IV sufficiently alleges the Policy is unconstitutional as it was applied to Plaintiff and his personal blogging.

### D. Plaintiff's Second Amended Complaint Satisfies *Twombly/Iqbal* Standard

Defendants' Motion to Dismiss impermissibly asks the Court to raise the "exceedingly low" threshold that Counts I, II and IV of the Second Amended Complaint must satisfy. *See Ancata v. Prison Health Svcs., Inc.* 769 F.2d 700, 703 (11th Cir. 1985); *Jackam v. Hospital Corp. of Am. Mideast, Ltd.*, 800 F.2d 1577, 1579 (11th Cir. 1986). A complaint survives a motion to dismiss even if it is "improbable" that a plaintiff would be able to prove those facts and if the possibility of recovery is extremely "remote and unlikely". *See Bell Atlantic v. Twmobly*, 550 U.S. 544, 556 (2007); *see also Sanjuan v. American Bd. Of Psychiatry and Neurology, Inc.*, 40 F. 3d 247, 251 (7th Cir. 1994) (noting that at the pleading stage, the plaintiff receives the benefit of imagination).

The Second Amended Complaint, which sets forth more than two hundred (200) factual allegations and over forty (40) exhibits, is far from illusory or imaginative. Plaintiff explicitly, and with the level of specificity required under the law, alleges the Defendants have violated and will continue to violate well established law and constitutional rights absent intervention from the Court. When read in the light most favorable to Plaintiff, the Second Amended Complaint indisputably satisfies the legal standard for surviving a motion to dismiss. *See Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1940 (2009).

## V.    CONCLUSION

Defendants' Motion to Dismiss improperly offers Defendants' own unsupported conclusions as dispositive of the facts at issue in the present civil rights action. Defendants

grossly mischaracterize the facts and Plaintiff's claims, in effect asking the Court to view their own twisted factual allegations in the light most favorable to the Defendants. This is plainly improper. The facts and circumstances set forth in Counts I, II and IV, of the Second Amended Complaint, when read in the light most favorable to Plaintiff, indisputably allow the Court to draw the reasonable inference that Defendants are liable for all alleged misconduct.

WHEREFORE, Plaintiff respectfully requests that the Defendants' Motion to Dismiss be denied, and grant any and all further relief as is just and proper.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 30th day of January 2017, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record identified on the below Service List via transmission of Notices of Electronic Filing generated by CM/ECF.

/s/ Louis Leo IV
**Louis Leo IV, Esq.**
Florida Bar No. 83837
louis@floridacivilrights.org
Florida Civil Rights Coalition, P.L.L.C.
& Medgebow Law, P.A.
4171 W. Hillsboro Blvd. Suite 9
Coconut Creek, FL 33073
Telephone: 954-478-4223
Fax: 954-239-7771

## SERVICE LIST

Louis Leo IV, Esq. (louis@floridacivilrights.org)
Joel Medgebow, Esq. (Joel@medgebowlaw.com)
Matthew Benzion, Esq. (mab@benzionlaw.com)
Florida Civil Rights Coalition, P.L.L.C., Medgebow Law, P.A. & Benzion Law, P.A.
4171 W. Hillsboro Blvd. Suite 9
Coconut Creek, Florida 33073

*Counsel for Plaintiff*

Gerard J. Curely, Jr., Esq. (jcurley@gunster.com)
Keith E. Sonderling, Esq. (ksonderling@gunster.com)
Holly Griffin, Esq. (hgriffin@gunster.com)
Gunster, Yoakley & Stewart, P.A.
777 South Flagler Dr. Suite 500 East
West Palm Beach, FL 33401

*Counsel for FAU Defendants*

Robert F. McKee, Esq. (yborlaw@gmail.com),
Christopher Borzell, Esq. (cborzell@gmail.com)
Melissa Mihok, Esq. (melissa@melissacmihokpa.com)
Robert F. McKee, P.A. & Melissa C. Mihok, P.A.
1718 E. Seventh Ave. Ste. 301
Tampa, FL 33605

*Counsel for Union Defendants*