UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 9:16-CV-80655-ROSENBERG/HOPKINS

JAMES TRACY,

    Plaintiff,

v.

FLORIDA ATLANTIC UNIVERSITY
BOARD OF TRUSTEES a/k/a
FLORIDA ATLANTIC UNIVERSITY,
et al.,

    Defendants.
_____/

## ORDER DENYING DEFENDANTS' MOTION TO DISMISS

This cause is before the Court on Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint [DE 97]. The Motion has been fully briefed. For the reasons set forth below, the Motion is denied.

### I.    BACKGROUND

This is a case about the First Amendment right to free speech. The setting for this case is a college campus, which is certainly a familiar setting for First Amendment jurisprudence. The story of this case is a story of two competing narratives, both of which are present in the Second Amended Complaint before this Court. The first such narrative, brought by Plaintiff, is that he, a professor, was terminated for exercising his right to free speech in a personal, off-campus blog. The second narrative belongs to Defendants and, according to them, Plaintiff was terminated for consistently and willfully refusing to comply with internal administrative requirements regarding the reporting of outside activities. The

crux of this case is that Plaintiff contends that the Defendants' justification for termination was a pretext—an attempt to manufacture a reason to terminate Plaintiff due to Plaintiff's controversial exercise of free speech in the area of mass shootings and related conspiracies on his personal blog.

In a prior complaint, the precise contours of Plaintiff's allegations of pretext were not clear. After the Court held a hearing and heard argument on a motion to dismiss, the Court dismissed Plaintiff's former complaint on multiple grounds. The primary focus of the Court's decision was that Plaintiff needed to amend his complaint to provide greater clarity as to: (i) what specific constitutional violation he was alleged to have suffered, (ii) whom he was suing, and (iii) the precise legal basis for each of Plaintiff's claims for relief. Plaintiff responded to the Court's order by filing the Second Amended Complaint and, soon after, Defendants filed the Motion to Dismiss before this Court.

Plaintiff's Second Amended Complaint contains the following counts:

- Count I – Retaliation in Violation of Right to Free Speech, against Defendant FAU and Defendants Kelly, Alperin, and Coltman.[1]

- Count II – Conspiracy to Interfere with Plaintiff's Civil Rights, against Defendants Alperin, Coltman, Kelly, Zoeller, Moats,[2] UFF, FEA, and FAU.

- Count III – Facial Challenge to FAU's Conflict of Interest Policy, against Defendant FAU.

- Count IV – As-Applied Challenge to Plaintiff's Right to Free Speech, against Defendant FAU.

- Count V – Declaratory Judgment and Injunction, against Defendant FAU.

---

[1] Defendants Kelly, Alperin, and Coltman are officials at Florida Atlantic University.
[2] Defendants Zoeller and Moats are representatives of Plaintiff's former union. Defendants UFF (the United Faculty of Florida) and FEA (the Florida Education Association) are the unions Defendants Zoeller and Moats represent.

- Count VI – State Law Breach of Contract, against Defendant FAU.

## II.  LEGAL STANDARD APPLICABLE TO A MOTION TO DISMISS

To adequately plead a claim for relief, Federal Rule of Civil Procedure 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Under Rule 12(b)(6), a motion to dismiss should be granted only if the plaintiff is unable to articulate "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (citing *Twombly*, 550 U.S. at 556). When determining whether a claim has facial plausibility, "a court must view a complaint in the light most favorable to the plaintiff and accept all of the plaintiff's well-pleaded facts as true." *Am. United Life Ins. Co. v. Martinez*, 480 F.3d 1043, 1066 (11th Cir. 2007).

However, the court need not take allegations as true if they are merely "threadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 663. "Mere labels and conclusions or a formulaic recitation of the elements of a cause of action will not do, and a plaintiff cannot rely on naked assertions devoid of further factual enhancement." *Franklin v. Curry*, 738 F.3d 1246, 1251 (11th Cir. 2013). "[I]f allegations are indeed more conclusory than factual, then the court does not have to assume their truth." *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012).

### III.   ANALYSIS

Defendants argue that Plaintiff's Second Amended Complaint should be dismissed for the following reasons: (1) the Second Amended Complaint fails to allege sufficient facts regarding Plaintiff's claim that Defendant Kelly (an FAU official) retaliated against Plaintiff due to Plaintiff's exercise of his constitutional rights, (2) the Second Amended Complaint fails to allege sufficient facts regarding Plaintiff's claims that there was a conspiracy to deprive him of his constitutional rights, (3) Plaintiff has not pled that he was denied an underlying constitutional right, (4) Plaintiff's allegations of conspiracy are insufficient under the intracorporate conspiracy doctrine, (5) Count III is duplicative of Count IV, and (6) Count IV is "not ripe" because Plaintiff failed to exhaust his administrative remedies.  Each argument is addressed in turn.

**1. The Second Amended Complaint's Allegations Against Defendant Kelly (Count I)**

Defendants argue that Plaintiff has failed to allege sufficient facts regarding Plaintiff's claim that Defendant Kelly retaliated against Plaintiff in response to Plaintiff's exercise of his First Amendment right to free speech (Plaintiff's blog postings on mass shootings and related conspiracies).  In the Court's prior order dismissing Plaintiff's complaint, the Court stated: "Plaintiff must clearly allege the basis for his retaliation claim."  DE 92 at 14.  The basis for the Court's conclusion was that it was unclear whether Plaintiff's retaliation claim was premised on Plaintiff's blog postings or on some other basis.  Plaintiff responded to the Court's prior order by significantly amending and clarifying his retaliation claim, yet Defendants still challenge the sufficiency of Plaintiff's claim under the Federal Rules of Civil

Procedure. The Court sets forth below the allegations Plaintiff has made against Defendant Kelly:

> Defendant Kelly serves "at the pleasure of" the Defendant University's Board of Trustees and is held "responsible for the University's operation and management, performance, its fiscal accountability, and its compliance with federal and state laws, rules and regulations." Sec. Am. Compl. ¶ 12.
>
> Paragraph 13 of the Second Amended Complaint sets forth Defendant Kelly's express responsibilities and duties at the Defendant University, including:
>
> - "To be responsible for the organization, operation, and administration of the University . . . .";
> - "To execute all documents on behalf of the University and the BOT consistent with law . . . .";
> - "To serve as the principal liaison officer and official contact between the BOT and the faculty, staff and students of the university.";
> - "To establish and implement policies and procedures to recruit, appoint, transfer, promote, compensate, evaluate, reward, demote, discipline, and remove personnel . . . ."; and
> - "To ensure [FAU's] compliance with federal and state laws, rules, regulations, and other requirements which are applicable to the University."
>
> *See* Sec. Am. Compl. ¶ 13. (emphasis added).
>
> Defendant Kelly is "President and Chief Executive Officer of Florida Atlantic University, designated by the Defendant University's Board of Trustees. Defendant Kelly supervised, facilitated, recommended and/or approved discipline and termination of Professor Tracy in retaliation . . . for engaging in his constitutionally protected speech and expression on his personal blog." Sec. Am. Compl. ¶ 14.
>
> "In November and December 2015, Defendants Alperin, Coltman, and other senior FAU officials and representatives, including FAU General Counsel Larry Glick . . . planned to discipline Professor Tracy in retaliation for his personal blogging . . . under the supervision and with the approval of Defendant Kelly . . . ." Sec. Am. Compl. ¶ 91.
>
> Plaintiff's "constitutionally protected speech, including his uncompensated opinions and viewpoints expressed on his personal blog, played a substantial part and was a motivating factor" in the decision of Defendant Kelly to terminate Plaintiff. Sec. Am. Compl. ¶ 120.

 Plaintiff's "constitutionally protected speech played a substantial part and was a motivating factor" in the decision of Defendant Kelly to terminate Plaintiff. Sec. Am. Compl. ¶ 126.

 Defendant Kelly "acted unconstitutionally and unlawfully in disciplining and terminating Professor Tracy in order to restrict his, and other similarly situated faculty member's expression and freedom of speech." Sec. Am. Compl. ¶ 127.

 Defendant Kelly "had no legitimate government interest in disciplining or terminating Professor Tracy for his constitutionally protected personal blogging and online speech and expression." Sec. Am. Compl. ¶ 128.

 The retaliatory actions of Defendant Kelly "in response to Professor Tracy's constitutionally protected speech, have had a chilling effect that acts as a deterrent to free speech." Sec. Am. Compl. ¶ 130.

 Defendant Kelly "acted intentionally, knowingly, willfully, wantonly, and in reckless disregard of Professor Tracy's federally-protected constitutional rights and violated clearly established constitutional rights of which all reasonable college administrators and staff should have known . . . ." Sec. Am. Compl. ¶ 131.

 Defendant Kelly "and other officials and representatives at the Defendant University who aided and abetted the unlawful discipline and termination of Professor Tracy acted intentionally, knowingly, willfully, wantonly, and in reckless disregard of Professor Tracy's federally-protected constitutional rights, and without regard to the significant emotional and reputational damage such actions would cause." Sec. Am. Compl. ¶ 132.

 The Court concludes that the Plaintiff has not pled mere "labels and conclusions or a formulaic recitation of the elements of a cause of action." Viewing all inferences in Plaintiff's favor, as the Court must at this state of the proceedings, the inference from the allegations in the Second Amended Complaint is that Defendant Kelly was personally (and not vicariously) involved in a retaliatory violation of Plaintiff's First Amendment rights. As a result, Defendant Kelly is sufficiently on notice of the claim against him such that he is able to answer that claim. For this reason, Defendants' Motion to Dismiss is denied as to Count I.

## 2. The Second Amended Complaint's Allegations Against Defendants Zoeller, Moats, Alperin, Coltman, and Kelly (Count II)

Just as with Count I, Defendants argue that Plaintiff has failed to allege sufficient facts regarding the Union Defendants (Zoeller and Moats) and the FAU Defendants (Alperin, Coltman, and Kelly) in connection with Plaintiff's conspiracy count, Count II. In the Court's prior order dismissing Plaintiff's complaint, the Court required Plaintiff to amend his complaint to "plead his conspiracy counts with greater clarity as to who, what, where, when, and why." DE 92 at 18. The Court again notes that it must view all allegations in the Second Amended Complaint in the light most favorable to Plaintiff, and it is in this light the Court sets forth below Plaintiff's relevant allegations:

> "In January 2013, Defendants Coltman, Alperin, and other senior FAU officials and representatives, including FAU General Counsel Larry Glick, "began planning how to use the public controversy surrounding Professor Tracy's blog to not only discipline Professor Tracy for his blogging, but also to undermine FAU faculty union membership and representation." Sec. Am. Compl. ¶ 50 *See also* Exhibit "AK".
>
> Defendant Coltman, Defendant Alperin and other senior officials and representatives of the Defendant University, including former FAU President Mary Jane Saunders and FAU General Counsel Glick began a coordinated effort to monitor Plaintiff's blog, and "find winning metaphors" to overcome the First Amendment in "ethically" disciplining Plaintiff for his personal blogging. Sec. Am. Compl. ¶ 49, 53 *See* Exhibit "AK".
>
> Defendants Coltman, Alperin, FAU General Counsel Glick and other senior FAU officials and representatives, were directed not to communicate by e-mail, which could be discovered through public records requests. They also agreed to monitor and evaluate the personal blogging of Professor Tracy ("JT"), and to "centrally handle" the controversy surrounding the blog. Sec. Am. Compl. ¶ 53.
>
> "In November and December 2015, Defendants Alperin, Coltman, and other senior FAU officials and representatives, including FAU General Counsel Larry Glick, once again planned to discipline Professor Tracy in retaliation for his personal blogging, this time under the supervision and with the approval of

7

Defendant Kelly. Upon information and belief, in furtherance of their unlawful objectives, FAU's General Counsel Glick met with Defendant Zoeller and reached an understanding and agreement that Defendants UFF and FEA would not contest the discipline and termination of Professor Tracy." Sec. Am. Compl. ¶ 91.

"In furtherance of the conspiracy, Defendants Alperin, Coltman and FAU General Counsel Glick internally labeled Professor Tracy the "poster child" to "quit UFF membership", and planned to use the controversy surrounding his personal blogging to undermine Professor Tracy's representation by Defendants UFF and FEA." Sec. Am. Compl. ¶ 145. See also Exhibit "AK".

"In furtherance of the conspiracy to interfere with Professor Tracy's civil rights, and in retaliation for Professor Tracy's personal blogging, the Defendant University, through Defendant Alperin canceled Professor Tracy's course, "Media, War and Crisis" and reassigned Professor Tracy to an undergraduate course he had not previously taught, at times of the day that conflicted with his child care schedule." Sec. Am. Compl. ¶ 146

"After initial efforts to discipline Professor Tracy for his personal blogging failed in 2013, Defendants Alperin and Coltman once again, in furtherance of the conspiracy to interfere with Professor Tracy's civil rights, attempted to unlawfully discipline Professor Tracy for his personal blogging in November and December of 2015." Sec. Am. Compl. ¶ 147.

"Defendant Kelly personally supervised and approved FAU officials and representatives efforts in 2015 to discipline and dismiss Professor Tracy in retaliation for his personal blogging, with acknowledgement and approval of the Chairman of the Defendant University's Board of Trustees." Sec. Am. Compl. ¶ 148.

"In furtherance of the conspiracy to interfere with Professor Tracy's civil rights, in November and December of 2015, including December 17, 2015, Defendants Zoeller, individually and on behalf of the Defendants UFF and FEA, met with FAU General Counsel Larry Glick, acting on behalf of the Defendant University and Defendants Kelly, Alperin and Coltman. During these meetings, which occurred in person at FAU's campus, an understanding and agreement was reached to sabotage Professor Tracy's defense against FAU's unlawful discipline, and to secure Professor Tracy's termination or resignation in lieu of termination." Sec. Am. Compl. ¶ 149.

"Although Defendant Moats and Defendants UFF and FEA previously advised and instructed Professor Tracy not to submit personal blogging to the Defendant University for approval or restriction when faced with identical

unlawful directives and threats of discipline for his personal blogging, in 2015, in furtherance of the conspiracy, Defendants Moats and Defendants UFF and FEA about-faced Professor Tracy and aided and abetted Professor Tracy's unlawful discipline and termination for his personal blogging. Defendant Moats and Defendants UFF and FEA agreed not to file a grievance or respond to the Defendant University's Notices of Discipline on Professor Tracy's behalf, while actively deceiving Professor Tracy into believing that a timely response and grievance would be filed by Defendants UFF and FEA." Sec. Am. Compl. ¶ 150.

"In furtherance of the conspiracy to interfere with Professor Tracy's civil rights, Defendants Kelly, Alperin, Zoeller and other officials and representatives of the Defendant University and Defendants UFF and FEA, disregarded and dismissed multiple faculty complaints and requests for FAU officials to cease and desist infringing upon constitutionally protected faculty speech and expression." Sec. Am. Compl. ¶ 151.

"In October, November and December of 2015, and in furtherance of the conspiracy to interfere with Professor Tracy's civil rights, Defendants Kelly, Alperin, Zoeller, Moats and other officials and representatives of the Defendant University and Defendants UFF and FEA ignored Professor Tracy's complaints that his uncompensated, constitutionally protected personal blogging could not be subjected to restriction by the Defendant University." Sec. Am. Compl. ¶ 152.

"In November 2015, in furtherance of the conspiracy to interfere with Professor Tracy's civil rights, Defendant Coltman demanded Professor Tracy submit four (4) years of personal blogging to FAU officials for evaluation." Sec. Am. Compl. ¶ 153.

"In response to and in support of Defendant Coltman's demands, and in furtherance of the conspiracy to interfere with Professor Tracy's civil rights, Defendants Zoeller and Moats coerced Professor Tracy into submitting four (4) years of constitutionally protected blogging to Defendant Coltman and the Defendant University." Sec. Am. Compl. ¶ 154.

"In furtherance of the conspiracy to interfere with Professor Tracy's civil rights, in 2015, Defendants Alperin, Coltman, Kelly and other senior administrative officials and representatives of the Defendant University, including FAU General Counsel Glick, acted unconstitutionally and unlawfully in disciplining Professor Tracy in retaliation for his personal blogging." Sec. Am. Compl. ¶ 155.

"In furtherance of the conspiracy to interfere with Professor Tracy's civil rights, Defendants Zoeller, Defendant Moats and officials and/or representatives of Defendants UFF and FEA purposefully failed to file a grievance or contest the Defendant University's retaliatory discipline of Professor Tracy for his personal blogging." Sec. Am. Compl. ¶ 156.

"In furtherance of the conspiracy to interfere with Professor Tracy's civil rights, in 2015, Defendants Alperin, Coltman, Kelly and the Defendant University, acted unconstitutionally and unlawfully in issuing FAU's Notice of Intent to Terminate Professor Tracy in retaliation for his personal blogging." Sec. Am. Compl. ¶ 157.

"In furtherance of the conspiracy to interfere with Professor Tracy's civil rights, Defendant Zoeller and Defendant Moats, and other representatives of Defendants UFF and FEA purposefully failed to respond or grieve FAU's Notice of Intent to Terminate, as promised to Professor Tracy, which could have deferred and prevented Professor Tracy's termination." Sec. Am. Compl. ¶ 158.

"In furtherance of the conspiracy to interfere with Professor Tracy's civil rights, Defendant Moats and Defendant Zoeller misadvised and attempted to mislead Professor Tracy into believing the unlawful and unconstitutional discipline by FAU was "valid" and lawful." Sec. Am. Compl. ¶ 159. *See also* Exhibits "AA" & "AC".

"In December 2015, in furtherance of the conspiracy to interfere with Professor Tracy's civil rights, Defendants Moats and Defendant Zoeller also repeatedly instructed Professor Tracy not to exercise his constitutional rights, including his freedom of speech and expression." Sec. Am. Compl. ¶ 160.

"In furtherance of the conspiracy, the Union Defendants, including Defendants Moats, Defendant Zoeller, and other representatives of the Defendants UFF and FEA attempted to pressure and coerce Professor Tracy into resigning from his tenured position." Sec. Am. Compl. ¶ 161.

"In furtherance of the conspiracy, the Union Defendants, including Defendants Moats, Defendant Zoeller, and other representatives of the Defendants UFF and FEA attempted to discourage Professor Tracy from taking any legal action against the Defendant University, falsely claiming that any challenge to his termination would be unsuccessful." Sec. Am. Compl. ¶ 162.

"Willful failure to file a timely response or grievance by representatives and agents of Defendants UFF and FEA, including but not limited to Defendant

>Zoeller and Moats resulted in Professor Tracy's discipline and termination by the Defendant University." Sec. Am. Compl. ¶ 163.

The Court concludes that Plaintiff's Second Amended Complaint satisfies federal pleading standards and does not amount to mere "labels and conclusions or a formulaic recitation of the elements of a cause of action."  There is sufficient factual content in the Second Amended Complaint as to who, what, where, when, and why such that Defendants can answer the claim of conspiracy to violate Plaintiff's constitutional rights.  With respect to these arguments, Defendants' Motion to Dismiss is denied as to Count II.

### 3. Plaintiff's Allegation that he was Denied a Constitutional Right (Count II)

Defendants raise the argument in their motion that Plaintiff has failed to allege that he was denied a constitutional right stemming from his allegations of conspiracy because "this Court has already determined that Plaintiff was afforded due process with respect to his termination."  DE 97 at 13. Defendants restate their argument in their reply in arguing that, "[A]s this Court ruled that Plaintiff was not denied his right to procedural due process, and Plaintiff's only allegations stated with any particularity reflects that [Defendants] alleged conspiracy to deny him of his procedural due rights, Plaintiff cannot state a claim for conspiracy."  DE 104 at 6.  Defendants' premise is therefore that Plaintiff has only properly alleged a conspiracy to deprive him of procedural due process.  The Court does not agree.  It is true that the Court previously determined that Plaintiff's claim for denial of procedural due process failed as a matter of law because Plaintiff was never denied procedural due process— he simply did not elect to avail himself of procedural due process.  DE 92 at 16.  But, that determination did not address whether Plaintiff suffered a constitutional injury that resulted from an alleged conspiracy to inflict such an injury.  In fact, the Court even noted in its prior

11

order that "[T]he Court hereby rejects Defendants' argument that Plaintiff cannot show his exercise of speech was adversely affected by his termination" by citing to *Bennett v. Hendrix*, 423 F.3d 1247 (11th Cir. 2005), which held that the proper test to determine whether a plaintiff suffers an adverse action, or a constitutional injury, is whether that action (here termination) would likely deter a person of ordinary firmness from the exercise of his First Amendment rights. *Id.* at 14. The Court finds that Plaintiff has alleged a conspiracy to deprive him of his First Amendment right to free speech, in accordance with federal pleading standards, for all of the reasons set forth above in section 2 and below in section 6. Defendants' Motion to Dismiss is denied as to Count II as to any argument pertaining to procedural due process.

### 4. Plaintiff's Allegations and the Intracorporate Conspiracy Doctrine (Count II)

Defendants argue that Plaintiff's Second Amended Complaint fails under the intracorporate conspiracy doctrine. That doctrine holds that a corporation (or a public entity) cannot conspire with itself. *Dickerson v. Alachua Cnty.*, 200 F.3d 761, 767 (11th Cir. 2000); *see also Grider v. City of Auburn*, 618 F.3d 1240, 1261 (11th Cir. 2010) (applying the doctrine to public entities). That is not Plaintiff's allegation. Plaintiff's allegation is that officials at a public entity conspired with union representatives to jointly deprive Plaintiff of his constitutional rights—the alleged conspiracy extends beyond Defendant FAU and encompasses representatives of an independent union[3]. For that reason, Defendants' arguments under the intracorporate conspiracy doctrine are rejected, and Defendants' Motion to Dismiss is denied as to Count II as to this ground.

### 5. The Relief Sought by Plaintiff as to Defendant FAU's Policies (Count III and Count IV)

Defendants argue that Count III is duplicative of Count IV. The allegations in Count III are that a certain FAU policy (requiring disclosure of outside activities) is unconstitutional on its face. The allegations in Count IV are that the policy was applied to Plaintiff in an unconstitutional way.[4] A plaintiff is permitted to plead causes of action in the alternative. *See* Fed. R. Civ. P. 8(d)(2); *see also Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 805 (1999). Plaintiff's express intent is to plead Count III and Count IV in the alternative. DE 102 at 16. For this reason, Defendants' Motion to Dismiss is denied as to Count III and Count IV on these grounds.

### 6. Plaintiff's Requirement to Exhaust Administrative Remedies (Count IV)

Defendants argue that Plaintiff cannot allege that a policy was applied to him in an unconstitutional way because, by his own allegations, Plaintiff did not comply with that policy. Defendants' argument is targeted against Plaintiff's as-applied challenge, Count IV. Unlike a facial constitutionality challenge, which is "purely legal [and] presumptively ripe for judicial review," an as-applied constitutionality challenge addresses whether a law or rule is "unconstitutional on the facts of a particular case or party" and, as a result, "it necessarily requires the development of a factual record for the court to consider." *Harris v. Mexican Speciality Goods, Inc.*, 564 F. 3d 1301 (11th Cir. 200). Viewing all inferences in the Second Amended Complaint in the light most favorable to Plaintiff, the Court does not conclude, at

---

[4] Plaintiff has clarified that Count IV is intended as an as-applied challenge to FAU's policy, not as a facial challenge to that policy (which is encompassed in Count III). DE 102 at 16 ("[T]he allegations of Count IV, detail exactly how the Policy was applied by the Defendant University to Plaintiff and his uncompensated personal blogging. *See also* Sec. Am. Compl. ¶ 211, 213. These allegations, read in the light most favorable to Plaintiff, draw the reasonable inference that the Policy was unconstitutional as-applied to Plaintiff, resulting in injury that can in fact be remedied by the Court.").

this stage in the proceedings, that Plaintiff's failure to exhaust administrative remedies means that Defendants' policies could not have been applied to him in an unconstitutional way. The gravamen of Plaintiff's Second Amended Complaint is that actions were taken against him, in a conspiracy, *prior to* his opportunity to exercise administrative remedies and that he received deceptive advice pertaining to his right to utilize administrative procedures. In light of the foregoing, a factual record is required to evaluate Count IV and Defendants' Motion to Dismiss is denied as to that count.

### IV.    CONCLUSION AND RULING

For all of the foregoing reasons, it is hereby **ORDERED AND ADJUDGED** that Plaintiff's Second Amended Complaint satisfies federal pleading standards and Defendants' Motion to Dismiss [DE 97] is **DENIED**. Defendants shall answer Plaintiff's Amended Complaint within seven (7) days of the date of rendition of this Order.

**DONE and ORDERED** in Chambers, Fort Pierce, Florida, this 21st day of February, 2017.

_____
ROBIN L. ROSENBERG
UNITED STATES DISTRICT JUDGE

Copies furnished to Counsel of Record