

June 9, 2017

**Sent via Email**

Holly Griffin, Esq. (hgriffin@gunster.com)
Keith Sonderling, Esq. (ksonderling@gunster.com)
G. Joseph Curley, Esq. (gcurley@gunster.com)

Re:   *Tracy v. FAU, et al.*
   Defendant FAU's Responses and Objections to Plaintiff's First Set of Interrogatories Directed to Defendant FAU and Plaintiff's Third Request For Production

Holly,

We write regarding Defendant FAU's Responses and Objections to Plaintiff's First Set of Interrogatories Directed to Defendant FAU, and Plaintiff's Third Request for Production, received on May 16, 2017.

*Interrogatory 1*

Interrogatory 1 asks Defendant FAU to describe when and how the Defendant University first discovered Plaintiff's blogging, identifying the date it first became aware of the activity, and any and all actions undertaken by the Defendant University upon discovery, including but not limited to any investigation or monitoring of the activity. If any reports or documents were created in connection with any of the above-referenced actions, identify them and identify any and all FAU officers, representatives, agents and employees involved in the above-referenced actions.

Defendant FAU, objects to this interrogatory, stating that "monitor" has not been defined. Defendant's subsequent response then purposefully fails to indicate what investigation, or monitoring, if any, was conducted by the Defendant FAU concerning Plaintiff's blogging.

Accordingly, we refer the Defendant FAU to its own definition of "monitor" or "monitoring" as used in connection with FAU's "Conflict of Interest/Outside Activities" Policy (hereinafter "Policy"). We also refer your client to the documents used in connection with enforcement and application of the Policy, including Exhibit "AH" to Plaintiff's Second Amended Complaint, which is entitled, "Florida Atlantic University Monitoring Plan for Potential Conflicts of Interest".

Should no actual definition of "monitor" exist, we refer FAU to following definition of monitor: "to observe and check the progress or quality of something (in this instance Plaintiff's blogging) over a period of time; or to keep under systematic review".

1

Additionally, it is unclear from your client's response exactly how this request "is vague, overbroad, and seeks discovery which is not proportional to the needs of the case" or why FAU would need to "interview each individual who was employed" to answer the question. Plaintiff is not asking when every individual employed by the Defendant FAU learned of the blog.

Notwithstanding, Plaintiff will agree to narrow this request to only FAU administrative officials and staff who were tasked with investigating and/or monitoring Plaintiff's blogging activities, and actions undertaken by these individuals concerning the blogging.

Defendant FAU can and should respond to this request to identify any and all actions undertaken by the University upon official discovery of the blogging, including any investigation or monitoring of Plaintiff's blog, and identify any and all reports or documents concerning these actions and identify any and all FAU administrative officials or staff involved in investigating, monitoring or taking any action whatsoever with respect to Plaintiff's blogging.

*Interrogatory 3*

Interrogatory 3 simply asks Defendant to explain why FAU's Notice of Discipline dated March 28, 2013 was not removed from Plaintiff's personnel file pursuant to the University's 9/26/13 Settlement Agreement.

In response to Interrogatory 3, Defendant Alperin, on behalf of the Defendant FAU, states the Notice of Discipline dated March 28, 2013 "does not appear in Plaintiff's official personnel file." FAU Defendant's answer is clearly non-responsive.

Even if the Notice of Discipline dated March 28, 2013 does not appear in Plaintiff's personnel file *today*, it is undisputable the 2013 Notice appeared and was in fact in Plaintiff's personnel file in early 2016, and was subsequently produced to multiple media outlets in 2016. The Notice at issue was obviously not removed following Plaintiff's settlement with Defendant FAU in 2013. This has also been confirmed by the deposition testimony of both Defendants Coltman and Alperin. Accordingly, Defendant FAU's response should be amended to provide an explanation for why the Defendant FAU did not remove the Notice of Discipline dated March 28, 2013, from Plaintiff's personnel file was as agreed on 9/26/13.

Should Defendant FAU maintain that the Notice was removed in 2013, Plaintiff further hereby amends this Interrogatory to include a request for the name of the individual(s) who removed the March 28, 2013 Notice of Discipline from Plaintiff's personnel file, and the date in which it was actually removed.

*Interrogatory 6*

Interrogatory 6 seeks relevant information concerning any and all conduct of Plaintiff which Defendant believes violated its policies. Defendant however objects to the request as overbroad and not proportional to the needs of the case, then proceeds to list some alleged violations, implying that Plaintiff may have violated other policies at the Defendant FAU.

An issue in this case is the discipline of Plaintiff, and whether the discipline of Plaintiff for alleged failure to timely submit forms was "progressive". It is unclear why, more than one (1) year following Plaintiff's termination, Defendant FAU would need to interview each individual

2

who was employed by Defendant University to identify all conduct of Plaintiff that violated Defendant University's policies.

If there are no other alleged violations of FAU policy known by Defendant, other than those set forth in Defendant FAU's current response to Interrogatory 6, Defendant's answer should be amended to remove the baseless objections or sufficiently indicate that no other violations are known at this time.

*Interrogatory 8*

Interrogatory 8 asks Defendant FAU to identify any and all blogs, websites and/or social media of University personnel, including but not limited to officers, employees, agents and faculty members, which have been disclosed, monitored or subjected to the University's "Outside Activities/Conflict of Interest" Policy since the inception of the Policy.

Defendant FAU completely refuses to answer this interrogatory, and sets forth no legitimate grounds to withhold the relevant and material information sought. Defendant has not and cannot demonstrate how this request is "overbroad", "not proportional to the needs of this case" and "vague" in its failure to define the term "monitor", particularly given the term "monitor" has been used in connection with the Policy by Defendant, and the Defendant FAU has alleged that the Policy was applied "neutrally" to all faculty and staff at FAU for "legitimate" and "proper" reasons, and Defendant has denied that Plaintiff was targeted and singled out using the Policy as a pretext to violate Plaintiff's constitutional rights.

If the Policy was applied evenly to all faculty, as your client claims, Defendant FAU's assertion that it would be obligated to interview each individual who was employed by Defendant University beginning in 2012 to identify blogs, websites and/or social media of Defendant University's personnel which have been disclosed, monitored or subjected to the Policy, appears baseless. According to witness testimony, Defendant FAU receives reports for all "outside activity" reported by faculty and staff. Defendant FAU can and should review these records, and identify all blogs, websites and/or social media which have been disclosed or reported on such reports.

Defendant FAU's response further indicates "Defendants Alperin and Coltman are not aware of any blogs, websites, and/or social media of Defendant University personnel which have or have not been disclosed or subject to Article 19." This clearly contradicts the sworn testimony of Defendants Alperin and Coltman wherein they acknowledged multiple faculty blogs, websites, and/or social media, which had not been disclosed or subjected to the Policy, including but not limited to Defendant Coltman's Facebook page.

Accordingly, Defendant FAU should amend its response to this interrogatory to identify all blogs, websites and/or social media of FAU personnel that has been disclosed, monitored or subjected to the Policy, if any.

3

*Interrogatory 10*

Interrogatory 10 asks Defendant FAU to identify "all persons involved in the decision to discipline and/or terminate Plaintiff, at any time." Defendant objects, claiming "involved in" and "discipline" is not defined.

We refer Defendant to the following definition of "involved": to cause (a person or group) to experience or participate in an activity or situation (in this instance, Plaintiff's discipline and/or termination). Plaintiff also refers Defendant to the following definition of "discipline": using punishment to correct disobedience, or to punish or rebuke someone (here, Plaintiff) formally for an offense.

If anyone other than Defendants Alperin, Coltman and Provost Perry were involved in the decision to discipline and/or terminate Plaintiff, they must be identified. This would include any other officer, representative, and/or agent of the Defendant FAU, including but not limited to any of FAU's staff attorneys, and/or other parties in this case.

Defendant FAU should amend this response to remove its baseless objection, and provide a full and complete answer.

*Interrogatory 11*

Interrogatory 11 asks Defendant FAU to set forth any and all agreements made relating to the discipline and/or termination of Plaintiff, and to identify all persons involved in the agreement(s) and documents relating to the agreement(s).

It should be noted Defendant FAU did not object to the term "discipline" as previously objected to in previous interrogatories.

However, in response to this Interrogatory, while Defendant FAU identifies an agreement which was made pursuant to requests from Union officials, concerning the Notice of Proposed Discipline—Termination, the response however fails to identify any persons involved in, or identify any and all documents relating to such an agreement, including but not limited to any communications, correspondence, e-mails, text messages or notes of conversations, memoranda, etc.

Defendant FAU should amend this response to fully answer the question regarding the agreement to extend the deadline for Plaintiff to respond to the Notice of Proposed Discipline—Termination, and identify any persons involved in, or identify any and all documents relating to such agreement, including but not limited to any communications, correspondence, e-mails, text messages or notes of conversations, memoranda, etc.

*Interrogatory 13*

Interrogatory 13 asks Defendant to identify all donors to the Defendant FAU who complained about Plaintiff or Plaintiff's blogging, and identify all documents and communications relating to such complaints.

In response to Interrogatory No. 13, Defendant refuses to identify any donors who complained about Plaintiff or Plaintiff's blogging, citing to Florida Statute 1004.28(5)(a) and (b), a Florida

statute that only appears to designate confidentiality of such information during "annual financial audits". It certainly does not and cannot bar the identity of donors in this case.

Defendant also fails to demonstrate how this request, which is certainly relevant to the motivation behind Defendnat FAU's discipline and termination of Plaintiff, overbroad, is not proportional to the needs of the case, or is vague.

Plaintiff seeks the names of any donors, or those who were expected to donate to the Defendant FAU. This information is clearly relevant to Plaintiff's claims of First Amendment retaliation, and Defendant FAU's defenses. Multiple witnesses have now testified, and Defendant Coltman's notes indicate donors were upset and had complained about Plaintiff and his blog.

No law bars Defendant FAU from disclosing this relevant and material information in this case. On the contrary, the Federal Rules of Civil Procedure require a full and complete response to this request. Defendant must amend this response, withdraw its baseless objections and answer the question. Further, Plaintiff will agree to a confidentiality stipulation concerning the identity of any donors revealed pursuant to this request.

*Interrogatory 14*

Interrogatory 14 asks Defendant to "Set forth the agenda of the November 30, 2015 Consultation, identifying all persons in attendance at the Consultation, whether physically or electronically (i.e. telephone or internet participation) and identify any and all documents, notes, or memoranda relating to the Consultation."

In response to Interrogatory 14, Defendant FAU indicates that is withholding documents and relevant information pertaining to the November 30, 2015 "Consultation" between the FAU Defendants and Union Defendants Zoeller and Moats which occurred only minutes before the Defendants Zoeller and Moats voted to deny Plaintiff's absolute right to grieve the Defendant FAU's November 10, 2015 Notice of Discipline.

If Defendant FAU has nothing to hide about this meeting, Defendant FAU should have no problem identifying any and all documents, notes, or memoranda relating to the meeting, and identifying all persons who appeared at the meeting. Moreover, Defendant's email records from November 2015 indicate one of the topics to be discussed at the Consultation was "the status of tenure at FAU". Within minutes of this meeting, Defendants Zoeller and Moats, participated in a "Grievance Committee" vote which resulted in the denial of Plaitniff's absolute right to grieve the November 10, 2015 Notice of Discipline. Thus, Defendant's claim that this meeting, or the topics discussed between the Defendants, who are alleged co-conspirators in this case, is somehow irrelevant to the case, is completely baseless and without merit.

Defendant FAU should amend and fully answer this question, as it clearly seeks relevant and discoverable information and documents.

*Interrogatory 15*

Interrogatory 15 asks Defendant FAU to set forth the date(s) and agenda(s) of any and all meetings held at the University relating to Plaintiff's blogging, identifying all persons (including but not limited to FAU officers, employees, agents, and representatives) in attendance at the meetings, whether physically or electronically (i.e. telephone or internet participation) and identify any and all documents, notes, or memoranda relating to the meetings. "Agenda" is defined as a list items, issues, topics, plans or concerns that were discussed or addressed, i.e. Plaintiff's speech, Plaintiff's grievance, FAU's "Outside Activities/Conflict of Interest" Policy, etc.

However, yet again, Defendant FAU has completely failed to respond to this Interrogatory, claiming it is overbroad, vague and not proportional to the needs of this case "because it fails to identify appropriate custodians", again suggesting Defendant FAU must interview everyone at the Defendant University to answer this request.

Additionally, Defendant claims that meetings held in January 2013 were somehow not "related to" Plaintiff's blogging. This is clearly contradicted by the evidence and testimony in this case, including but not limited to the testimony of Defendants Coltman and Alperin, as well as Defendant Coltman's 2013 notes from these meetings concerning Plaintiff's blogging, attached to the Second Amended Complaint as Exhibit "AK".

Accordingly, Defendant should amend its answer to provide a full and complete response, and withdraw its baseless objections.

*Interrogatory 17*

Interrogatory 17 asks Defendant to "Set forth the raise(s), if any, received by any and all FAU officers, employees, agents and/or representatives since Plaintiff's termination. "Raise" is defined as an increase in wages, salary, bonuses, or any other form of compensation. This includes but is not limited to any bonus received by any FAU officer, employee, agent, representative, and/or the increase in salary of any FAU employee."

Defendant objects claiming this request is overbroad and not proportional to the needs of the case. However, any raise(s) received by Plaintiff's collective bargaining unit, and thus Plaintiff would have received had he not been terminated, would certainly be relevant to Plaintiff's damages claim. The testimony in this case thus far has established that shortly after Plaintiff's termination, UFF-FAU secured a raise which Plaintiff would have benefited from had his employment not been terminated in January 2016.

Additionally, any raises, or bonuses received by the Defendants Kelly, Alperin, Coltman, and/or any other FAU faculty or staff member who participated in, or facilitated Plaintiff's termination would be also be relevant to motive and intent. It is understood that Defendant Kelly for example received a maximum bonus in 2016.

Accordingly, Defendant should withdraw its baseless objections and actually respond to this interrogatory.

6

*Interrogatory 21*

Interrogatory 21 asks Defendant FAU to set forth how exactly the Defendant University's "Outside Activities/Conflict of Interest" Policy was applied to each and every FAU employee, identifying each employee that the policy was applied to. Defendant objects, claiming the request is overbroad and not proportionate to the needs of the case, then refuses to provide any meaningful response to this request.

How FAU's "Outside Activities/Conflict of Interest" Policy, one of the main policies at issue in this case, was applied to other faculty, staff and administrators at the Defendant FAU is undeniably relevant, particularly considering Defendant FAU has alleged that the Policy used as a pretext to terminate Plaintiff's tenured professorship was "neturally" applied to all other faculty members.

Additionally, Plaintiff hereby limits the time period of the request to January 2012 to and through the date of a response to the Interrogatory, and further limits the request to only professors and instructors at the Defendant FAU, in addition to any and all FAU officials and/or administrators who are tasked with enforcement of the "Outside Activities/Conflict of Interest" Policy itself.

*Interrogatory 22*

Interrogatory 22 asks Defendant to describe how Defendant FAU is able to "address and anticipate in a reasonable manner potential conflicting circumstances which include, among other things, business and personal interests outside of the Defendant University that create conflicts of interest or commitment on the part of Defendant University's personnel", and identify all documents used in connection with addressing and anticipating any such "potential conflicting circumstances". If any "potential conflicting circumstances" addressed and anticipated by you involved the Plaintiff, identify those circumstances."

Defendant FAU has refused to respond to Interrogatory No. 22, indicating only that Defendant Alperin has "testified at length regarding Article 19". This is plainly improper and non-responsive. The question was not directed to Defendant Alperin, it was directed to the Defendant FAU.

If the Defendant FAU has no policy setting forth how it is able to address and anticipate in a reasonable manner potential conflicting circumstances which include, among other things, business and personal interests outside of the Defendant University that create conflicts of interest or commitment on the part of Defendant University's personnel, that should be the response.

*Interrogatory 23*

Interrogatory 23 asks Defendant to set forth the date when the University's "Outside Activities/Conflict of Interest" Policy first went into effect, identifying the individual(s) who drafted and/or adopted the Policy, and identify any and all documents, including written notes, or memoranda relating to the intent, creation and/or implementation of the Policy.

Again, Defendant FAU has completely refused to respond to Interrogatory 23, claiming the request about the Policy at issue in this case is overbroad and seeks information that is irrelevant and not proportional to the needs of the case. This case involves both facial and as applied challenges to

the Policy, thus when the Policy went into effect and was applied at the Defendant University is certainly relevant, in addition to any and all documents concerning the Policy.

Defendant FAU should amend its deficient and non-responsive answer to provide a full and complete response

*Request to Produce 1*

Request to Produce 1 asks Defendant for all documents, ESI, communications, tangible things and other records relating to the November 30, 2015 "Consultation" held at the Defendant University. Defendant FAU responded indicating it would only produce the "Agenda" of the meeting with the Union Defendants, and objects to producing any other documents or communications concerning this meeting, which took place minutes for the Union Defendants voted to deny Plaintiff's absolute right to grieve the November 10, 2015 Notice of Discipline issued by the Defendant FAU.

Defendant FAU's relevance objection is baseless, and if the Defendant has nothing to hide, it should certainly produce the documents and communications concerning this meeting, which is clearly at issue in this case.

*Request to Produce 3*

This Request seeks all documents, ESI, communications, tangible things and other records relating to the Defendant University's methodology or procedures, if any, in connection with addressing and anticipating potential conflicts of interest or commitment on the part of Defendant University's personnel.

Defendant FAU responds by indicating it will only produce Defendant University will produce a copy of the 2012-2015 Collective Bargaining Agreement and the 2015-2018 Collective Bargaining Agreement, then objects, indicating that there may be other documents, ESI, communications and tangible things and other records relating to the Defendant University's methodology or procedures, if any, in connection with addressing and anticipating potential conflicts of interest or commitment on the part of Defendant University's personnel.

It is unclear from Defendant FAU's response what documents and information Defendant FAU is withholding. If the Defendant FAU has no other documents or records relating to its methodology or procedures in connection with addressing and anticipating potential conflicts of interest or commitment on the part of Defendant University's personnel, it should respond indicating that no such documents exist. If it has documents other than the two documents referenced above, which are responsive to this request, it must produce them.

The request is clearly relevant to the case, and concerns the very Policy used to discipline and terminate Plaintiff's tenured professorship. Defendant FAU has denied it used the Policy in a manner inconsistent with how the Policy was applied to other faculty and staff at the Defendant FAU.

*Request to Produce 4*

Request to Produce 4 seeks "All documents, ESI, communications, tangible things and other records relating to purported violations of the University's "Outside Activities/Conflict of Interest" Policy by FAU personnel Kevin Wagner, Steven Kajiura, Aaron Kula, and/or James Cunningham." According to the testimony and evidence thus far in this case, all of these personnel have reportedly faced discipline for not submitting the same forms Plaintiff was disciplined and terminated for failing to submit.

The request is clearly relevant to Plaintiff's First Amendment claims, two of which are directed at the very policy the above-named professors faced or may have been disciplined pursuant to. Thus, Defendant FAU's objection to relevance is completely baseless. Defendant FAU should withdraw its objection, respond to the request and produce any responsive documents in its possession, custody and control.

*Request to Produce 4*

Request to Produce 4 seeks all documents, ESI, communications, tangible things and other records relating to any instructions given to FAU personnel concerning the submission of online activities, including but not limited to Facebook, Twitter, blogging and other forms of social media activity, pursuant to the University's "Outside Activities/Conflict of Interest" Policy.

Defendant FAU again refuses to respond to this request, or produce any responsive documents whatsoever, objecting on the grounds of relevance, overbroad and not proportional to the needs of this case. The request is narrowly tailored to only documents concerning instructions given to FAU personnel relating to the submission of online activities like blogging, pursuant to the Policy that was used to discipline and terminate Plaintiff. Thus the requested documents are clearly relevant to Plaintiff's First Amendment claims, including retaliation, and Defendant FAU's defense alleging that the Defendant FAU treated Plaintiff no differently than any other employee.

If Plaintiff was the only faculty member at Defendant FAU who was given instructions on submitting his online activities pursuant to the University's "Outside Activities/Conflict of Interest" Policy, then Defendant FAU should amend its response and state so. If other employees are reporting online activities, like blogging and other social media, FAU Defendant must produce the documents concerning such activities, so Plaintiff may determine if in fact the Policy was applied evenly, as alleged by the Defendant FAU.

*Request to Produce 6*

Request to Produce 6 seeks Defendant FAU's documents, ESI, communications, tangible things and other records relating to the "progressive" discipline methodology used by Florida Atlantic University

Defendant FAU's response indicates it will only produce a copy of the 2012-2015 Collective Bargaining Agreement and the 2015-2018 Collective Bargaining Agreement, but no other

documents, citing objections to over breadth, and claiming the request is "not properly limited to, for example, Defendant University's policies on progressive discipline."

The request is clearly limited to only the "progressive" discipline methodology used by Florida Atlantic University, and includes Defendant FAU's policies on progressive discipline. If the Defendant FAU does not actually have a "progressive" discipline methodology, it must amend its response to indicate that no such documents exist. If Defendant has documents setting forth the methodology, it cannot withhold them, as an issue in this case is whether or not Plaintiff's discipline was "progressive".

*Request to Produce 7*

Request to Produce 7 seeks Defendant FAU's documents relating to the "progressive" discipline methodology used in connection with alleged violations of the University's "Outside Activities/Conflict of Interest" Policy.

Defendant FAU's response, once again, indicates it will only produce a copy of the 2012-2015 Collective Bargaining Agreement and the 2015-2018 Collective Bargaining Agreement, but no other documents, citing objections to over breadth and relevance objections, and claiming "documents relating to other employees of Defendant University who actually submitted complete Outside Activities/Conflict of Interest forms" are somehow not relevant to Plaintiff's claims.

The request is appropriately narrowed to documents relating to the "progressive" discipline methodology used in connection with alleged violations of the University's "Outside Activities/Conflict of Interest" Policy, a policy clearly at issue in this case. If the Defendant FAU does not actually use a "progressive" discipline methodology in connection with the Policy, Defendant FAU must amend its response to indicate that no such documents exist. If Defendant has documents concerning how the Defendant FAU has used "progressive" discipline in connection with alleged violations of the University's "Outside Activities/Conflict of Interest" Policy, it cannot withhold them, as an issue in this case is whether or not Plaintiff's discipline was progressive.

*Request to Produce 8*

Request to Produce 8 seeks all documents, ESI, communications, tangible things and other records relating to the "progressive" discipline methodology used in connection with allegations of insubordination. Defendant objects as burdensome, claiming that this request would require Defendant University to review the discipline records of all of its many thousands of employees to determine which employees were disciplined for insubordination.

Defendant FAU's response necessarily suggests thousands of employees at FAU have been disciplined for insubordination, or that Defendant has no way of determining whether "progressive" discipline was used in connection such insubordination claims and discipline against other faculty members, without reviewing thousands of records. This is doubtful.

It would not be unduly burdensome, or unreasonable for Defendant to review any and all disciplinary records pertaining to other faculty members who have been disciplined for insubordination. Accordingly, Defendant should amend its response and produce records and documents responsive to this request.

*Request to Produce 10*

Request to Produce 10 seeks Plaintiff's entire FAU personnel file, in its entirety, to date.

Defendant FAU responded indicating it has produced documents responsive to this Request. After initially representing that Plaintiff's personnel file was only **100** documents (documents bates numbered FAU 1014-1114), your office then produced additional documents, claiming the personnel file is now only **240** total documents. This clearly contradicts Defendant FAU's records from 2016 indicating that Tracy's personnel file, as of April 2016, was approximately 953 "pages" of documents in addition to 34 "double sided" pages.

To date, the entire personnel file, as it existed before and shortly after Plaintiff's termination, and as was produced to multiple media outlets, has clearly not been produced in this case, yet.

Defendant FAU must produce Plaintiff's entire personnel file. If the personnel file has been altered and is now missing documents which were previously included in the file, Defendant's amended response should indicate which documents produced to date consist of what is currently in Plaintiff's FAU personnel file, so that Plaintiff can determine which documents have been removed, lost or destroyed.

*Request to Produce 12*

Request to Produce 12 seeks all documents, ESI, communications, tangible things and other records relating to the FAU Faculty Senate Meeting held on September 4, 2015.

Defendant FAU has offered to only produce the following records: "agendas, meeting minutes, and recordings". Defendant FAU then objects to this request, but fails to demonstrate how the request is vague, overbroad, and not proportional to the needs of the case, particularly considering a significant portion of this meeting at issue consisted of complaints about the Policy which was used to discipline and terminate Plaintiff, in addition to multiple requests to the FAU Defendants to stop threatening faculty members with discipline for exercising constitutional rights.

Nonetheless, Plaintiff agrees to limit this request to all documents, ESI, communications, tangible things and other records relating to the topic of Defendant FAU's "Conflict of Interest/Outside Activities" Policy or threats of discipline pursuant to the Policy referenced at the Senate Faculty meeting held on September 4, 2015.

*Request to Produce 13*

Request to Produce 13 seeks documents and records relating to the training, enforcement, instruction, advisement, application, direction, monitoring, supervision, and/or explanation of Articles 5, 16, and/or 19 of the 2012-2015 UFF-FAU Collective Bargaining Agreement, if any, by the Defendant University, or any of its officers, employees, representatives and/or agents.

11

Defendant FAU completely refuses to produce any documents in response to this Request, despite clear relevance of the request. If Defendant FAU has no documents or records relating to the training, enforcement, instruction, advisement, application, direction, monitoring, supervision, and/or explanation of Articles 5, 16, or 19, it must revise its response to indicate that no such documents exist. If such documents exist, it must produce them.

*Request to Produce 14*

Request to Produce 14 sets forth specific email accounts of several fact witnesses in this case, and provides search terms for each email account. The terms are relevant to the issues in this case, and the request clearly seeks relevant documents.

Regarding any claim of privilege for responsive documents found in email accounts of FAU's general counsel, which are being withheld on the basis of privilege, Defendant must produce a privilege log for any such withheld communications.

Given that the Defendant was served with these requests in April and discovery cut off is quickly approaching, please respond indicating whether Defendant FAU will amend the responses outlined above and produce documents as requested, during our meet and confer today at 3 PM.

Thank you,

/s/

Louis Leo IV, Esq.