# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

CASE NO. 9:16-CV-80655-ROSENBERG

JAMES TRACY,

    Plaintiff,

v.

FLORIDA ATLANTIC UNIVERSITY
BOARD OF TRUSTEES a/k/a
FLORIDA ATLANTIC UNIVERSITY,
et al.,

    Defendants.
_____/

## ORDER GRANTING IN PART AND DENYING IN PART THE DEFENDANTS' MOTION FOR COSTS AND DENYING DEFENDANT KELLY'S MOTION FOR FEES

This matter is before the Court on the Defendants' Motion for Costs [DE 454] and Defendant Kelly's Motion for Attorney's Fees [DE 475]. Both Motions have been fully briefed. For the reasons set forth below, the Motion for Costs is granted in part and denied in part and the Motion for Attorney's Fees is denied.

This was a long, protracted, and difficult civil rights case. The docket spans over five hundred docket entries, and the Court has ruled on many lengthy motions. The Court therefore finds it unnecessary to set forth (again) a recitation of the facts and procedural history of the case. Stated succinctly, the Plaintiff alleged that the Defendants conspired to deprive him of his constitutional rights via termination of his employment, and the Defendants prevailed at trial. On appeal, the Eleventh Circuit affirmed this Court's rulings and the jury's verdict. Now that the Eleventh Circuit has issued its mandate, the Defendants seek reimbursement for their costs and attorney's fees. Each requested relief is addressed in turn.

Costs

The Defendants seek to tax costs in the amount of $43,958.27. The Defendants' request is properly supported with documentation and invoices as well as legal argument substantiating the Defendants' entitlement. In response, the Plaintiff argues that most of the requested costs are excessive and unrelated to the needs of the case.

The Plaintiff's argument is unpersuasive, but the Court does not set forth here why each one of the (numerous) costs requested by the Defendants was necessary for the case. Suffice it to say that, in their reply, the Defendants meticulously detail why each requested cost was necessary and, furthermore, the Defendants argue that the reason their costs were substantial was a result of how the Plaintiff conducted his discovery and the manner in which the Plaintiff litigated his case. The Court agrees with the Defendants. The Court therefore accepts, adopts, and incorporates the Defendants' arguments in their reply as the reasons the Defendants are entitled to the full amount of costs they have requested in this case.

Notwithstanding the Defendants' entitlement to reimbursement for their costs, the Plaintiff requests that the Court consider his financial inability to pay. A court may consider a financial inability to pay when awarding costs, provided the inability to pay is supported with "substantial proof." *E.g., Hernandez v. Mascara*, No. 07-CV-14276, 2010 WL 11591779, at *1 (S.D. Fla. Sept. 7, 2010). To substantiate his position, the Plaintiff provides a W-2 form from the year 2020 (in the amount of $4,677) and requests that the Court take judicial notice of his wife's bankruptcy in 2020, *In re Maris Lani Hayashi*, No. 20-16035 (S.D. Fla. Bankr.); DE 503-1. The Court does take judicial notice, and the court records in the bankruptcy case clearly support the proposition that the Plaintiff has five children and that, during the year 2020, the Plaintiff's family relied solely upon

2

the Plaintiff's wife's gross income of approximately $6,700 per month to provide for the children and for the Plaintiff.

In reply, the Defendants argue that best evidence for establishing an inability to pay is evidence from the year 2021, not the year 2020, and that is true. It is also true, however, that substantial evidence was admitted at trial that the Plaintiff's professional reputation as a professor has been permanently damaged. As a result of that damage, the Court is persuaded by the Plaintiff's position that (i) he may well never work in academia again, and (ii) he will not accept a low-paying job in lieu of academia because, were he to do so, he would pay to have someone to take care of his children, which would ultimately defeat the purpose of accepting a low-paying job. The Court is persuaded that the Plaintiff has provided substantial proof of an inability to pay $43,958.27.

In *Hernandez v. Mascara*, this Court adjusted a cost award downward by 90% because of the respondent's inability to pay. 2010 WL 11591779, at *1. In *Stone v. Hendry*, this Court accepted a magistrate judge's recommendation to reduce a cost award by 75%. No. 17-CV-14177, 2020 WL 2772002, at *6 (May 5, 2020). A reduction must account for an inability to pay, but the cost award must still be large enough to provide a "deterrent purpose." *Hernandez*, 2010 WL 11591779, at *1. The amount of the reduction is a matter of judicial discretion. *See, e.g., Chapman v. Al Transport*, 229 F.3d 1012, 1032 (11th Cir. 2000). The Court concludes that a reduction of 90% is appropriate. The Defendants are awarded $4,395.82 in costs.

Fees

Next, Defendant John Kelly requests an award of attorney's fees.[1] Mr. Kelly's request is premised on 42 U.S.C. § 1988 which provides for an award of fees in a civil rights lawsuit when a court finds "that the plaintiff's action was frivolous, unreasonable, or without foundation." Mr. Kelly points to the Court's ruling on summary judgment, wherein the Court entered summary judgment in favor of Mr. Kelly, concluding that no reasonable juror could find that Mr. Kelly was personally involved in the Plaintiff's termination. In his argument to the contrary, the Plaintiff relied upon an e-mail that Mr. Kelly authored. Upon reviewing that e-mail, however, the Court concluded that the Plaintiff's characterization of the e-mail was "frivolous." DE 362 at 23. The Court's usage of the word "frivolous" forms the core of Mr. Kelly's request for fees. The Court's ruling was as follows:

> Defendant Kelly has cited evidence that he had no involvement in the events in this case. Defendant Kelly is the President of FAU. DE 243 at 1. As such, he has delegated his duty to discipline and terminate faculty to an FAU Provost who in turn delegated the duty to a Vice Provost—Defendant Alperin. *Id.* Supervisory officials are not liable under section 1983 claims on the basis of *respondeat superior* or vicarious liability. *Keith v. DeKalb Cnty., Ga.*, 749 F.3d 1034, 1047-48 (11th Cir. 2014). Instead, for a supervisor to be liable in his individual capacity the supervisor must either directly participate in unconstitutional conduct or there must be a causal connection between the actions of the supervisor and the alleged constitutional deprivation. *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003). "The standard by which a supervisor is held liable in [his] individual capacity for the actions of a subordinate is extremely rigorous." *Braddy v. Fla. Dep't of Labor*, 133 F.3d 797, 802 (11th Cir. 1998).
>
> Plaintiff argues that Defendant Kelly is personally liable due to his personal involvement in this case because he admitted at his deposition that he has the "ultimate responsibility" for the termination of faculty members and that he "monitored the fallout" from Plaintiff's termination. *See* DE 273 at 3-4. That is precisely the kind of vicarious liability that the Eleventh Circuit has repeatedly held is insufficient as a matter of law. *See, e.g.*, *Keith*, 749 F.3d at 1047-48. Plaintiff

---

1 Defendant Kelly has not specified the amount of attorney's fees sought because he first seeks a ruling as to entitlement.

also argues that Defendant Kelly was personally involved in the events of this case because he sent an e-mail pertaining to Plaintiff in which he said he intended to "deal with this personally." DE 273 at 4. That contention is frivolous. The e-mail and the record, reviewed in context, reveals that Defendant Kelly (i) was expressing his desire to communicate to the parents of a deceased child from the Sandy Hook massacre (who had called FAU to complain) personally and (ii) that he never actually spoke with the parents:

> Q: When you say, "Please ask Mr. Stern – for Mr. Stern to put the parents of the child in direct contact with me, I intend to deal with this personally," what do you mean by that?
>
> A: Frequently when someone has lost a child, if they -- if they lose a child who is here at the university, I write them a letter; and then if it's a university student, I also give a scholarship in their name, just a letter of condolence and how sorry I am for what happened and their loss. And I felt compelled -- the same thing with this -- this letter, that I'd like to send a letter just saying how sorry I am he lost a child.
>
> Q: What about Mr. Stern's communication, on December 11th, compelled you to respond?
>
> A: Just – I've lost a child before and I know the pain, and so when I read about a lost child, I felt like I should respond as a spokesperson for the university that I was sorry. I never did though, I never did write the letter.
>
> Q: Is there a reason why not?
>
> A: I guess I just decided that it wasn't something maybe the family wanted to have hashed up again.
>
> Q: Did you ever speak to Mr. Stern?
>
> A: No.
>
> Q: Did you ever speak to the individual that Mr. Stern's referring to whose daughter lost their life?
>
> A: No.
>
> Q: What was the result of your request to Stacy Volnick?

> A: There was no follow-up, further information, nothing else happened.
>
> DE at 243-1 at 344; DE 243-2 at 89-90. Plaintiff has no evidence that Defendant Kelly directly participated in Plaintiff's termination or was otherwise casually involved and, at the very least, Plaintiff has no evidence upon which a reasonable juror could rely to meet the "extremely rigorous" standard necessary to impose supervisor liability on Defendant Kelly. The Court grants Defendant Kelly's Motion for Summary Judgment.

*Id.* at 23-25.

At no time has the Count found the Plaintiff's case to be frivolous. The Plaintiff's case survived summary judgment. The Plaintiff's case survived a motion for directed verdict at trial. The Court's comment about the Plaintiff's usage of an e-mail on summary judgment was limited to that one, specific issue. And while it is true that Defendant Kelly prevailed on summary judgment, it is equally true that the standard to award fees against a plaintiff in a civil rights lawsuit is high. *E.g., Sullivan v. Sch. Bd.*, 773 F.2d 1182, 1188 (11th Cir. 1985).

After presiding over the Plaintiff's trial, the Court can appreciate that this was a highly unusual case, and fee awards under § 1988 must be made on a case-by-case basis. *Id.* at 1188-90. The Plaintiff's speech resulted in a substantial national backlash against his employer. The pressure upon the Defendants to fire the Plaintiff for his speech was great. Because the Plaintiff was fired subsequent to that pressure, the Court can see how the Plaintiff's retaliation claim against the top official at his place of employment, Mr. Kelly, was not frivolous, unreasonable, or without foundation. True, the Court concluded that no reasonable juror could credit the Plaintiff's characterization of his evidence, but it is not as if the Plaintiff had no evidence at all. Mr. Kelly has not met the demanding standard necessary to support an award of fees under § 1988. After all, "[e]ven when the law or the facts appear questionable or unfavorable at the outset, a party may

have an entirely reasonable ground for bringing suit." *Christiansburg Garmet Co. v. EEOC*, 434 U.S. 412, 421-22 (1978). It is important that fees not be awarded in such a way as to discourage "all but the most airtight claims." *Id.* Mr. Kelly's request for fees is denied.

It is hereby **ORDERED AND ADJUDGED:** (i) that the Defendant's Motion for Costs [DE 454] is **GRANTED IN PART AND DENIED IN PART** insofar as the Court awards the Defendants **$4,395.82** in costs, and (ii) that Defendant Kelly's Motion for Attorney's Fees [DE 475] is **DENIED**.

**DONE and ORDERED** in Chambers, West Palm Beach, Florida, this 28th day of June, 2021.

_____
ROBIN L. ROSENBERG
UNITED STATES DISTRICT JUDGE

Copies furnished to Counsel of Record