**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

CASE NO. 16-CV-80655-ROSENBERG/HOPKINS

JAMES TRACY,
    Plaintiff,

v.

FLORIDA ATLANTIC UNIVERSITY
BOARD OF TRUSTEES a/k/a FLORIDA
ATLANTIC UNIVERSITY; et al.,

    Defendants.
_____/

**PLAINTIFF'S RESPONSE IN OPPOSITION TO**
**FAU DEFENDANTS' MOTION FOR RECONSIDERATION**

Plaintiff, JAMES TRACY, by and through the undersigned, files his Response in Opposition to Defendants' Motion for Reconsideration [D.E. 506] ("Motion") and states:

Plaintiff opposes Defendants' Motion for Reconsideration for the reasons set forth in Plaintiff's Amended Response in Opposition to Defendants' Motion for Costs [D.E. 504], and the Court's Order Denying in Part Defendants' Motion for Costs [D.E. 505] which are incorporated herein by reference. The Court did not misapprehend Defendants' arguments and did not improperly reduce Defendants' costs, as the Defendants claim. The reduction of Defendants' costs was warranted, just, within the Court's inherit discretion, and certainly not "clear error" or "manifest injustice". The Court ruled properly and appropriately in reducing Defendants' excessive costs due to the severe financial hardship Plaintiff and his family continue to suffer from his termination by the Defendants, which is well-documented in the record and well-known to the Defendants. If the Defendants' Motion for Reconsideration is granted and an order taxing Defendants' alleged costs of $43,958.27 is entered against Plaintiff, it will cause further severe financial hardship to Plaintiff and his family of seven—including two children who have significant developmental disabilities. Accordingly, Defendants' Motion should be denied.

1

I.     **Plaintiff Presented the Court Substantial Documentation of Plaintiff's Inability to Pay Defendants' Costs and Clear Proof of Plaintiffs' Dire Financial Circumstances**

Defendants initially disingenuously argued in support of their Motion for Costs that "Plaintiff has not provided any facts to support his claimed inability to pay other than his mere conclusory statements" and that "Plaintiff failed to mitigate his alleged damages" [D.E. 498]. In Defendants' Motion for Reconsideration, the Defendants now contend the Court did not properly take into consideration record evidence and substantial documentation in the court record showing Plaintiff's dire financial circumstances and further financial hardship caused by the Defendants which provided sufficient grounds for the Court to consider Plaintiff's financial situation in reducing the Defendants' costs. Defendants' Motion levies new unfounded attacks on both the Plaintiff, as well as the Court—pointing primarily to incomplete and out-of-context deposition testimony and the existence of Plaintiff's legal defense fund and ongoing appeal, to suggest (1) Plaintiff must submit another sworn declaration about his financial status and (2) Plaintiff must establish he is unable to work before the Court can properly reduce Defendants' costs. Neither argument holds water.

Defendants do not present any Eleventh Circuit cases or applicable statutes requiring Plaintiff to submit additional[1] sworn declarations or again set forth his financial status before the Court may use its inherit discretion in reducing Defendants' costs. Defendants' Motion concedes that in the Eleventh Circuit, the district court may consider Plaintiff's financial status as a factor when determining costs awards. Defendants' Motion primarily cites to inapposite cases from the *Seventh* Circuit to suggest Plaintiff must provide new documentation proving he cannot pay $43,958.27 before the Court could exercise its discretion to reduce Defendants' costs based on Plaintiff's financial status and the hardship it would cause to Plaintiff.

Notwithstanding the fact that Defendants are twisting and misrepresenting the standard on motions for costs in the Eleventh Circuit—which is completely within the Court's discretion—the record reflects Plaintiff has already furnished the Court with sufficient proof of his dire financial

---

[1] The record in this case contains multiple sworn declarations submitted by Plaintiff concerning his financial situation. Additionally, Plaintiff submitted to multiple depositions requested by the Defendants, from which the court record contains multiple transcripts that include Plaintiff's sworn testimony and other substantial documentation of Plaintiff's financial situation and true inability to pay Defendants $43,958.27, which the Court has properly considered in reducing Defendants' costs.

circumstances, which includes but is not limited to Plaintiff's previously-filed sworn declarations attesting that Plaintiff applied for employment for positions at Missouri State University, Saint Michael's College, Morrisville State College, Auburn University, University of Nevada, Seattle University, University of South Carolina, Manhattan College, University of Oregon, State University at Albany, California Polytechnic State University, Florida State University, Loyola University Maryland, University of North Alabama, University of Houston, Penn State University, Texas Tech University, North Central College, and California State University at Fresno, all of which were rejected. [D.E. 270-11], pages 6-7. Defendants know very well there is sufficient evidence in the record about Plaintiff's dire financial circumstances and economic loss (including more than $760,000 in lost earnings) and hardship because Plaintiff was not permitted by this Court to testify or present any evidence at trial about his damages and economic loss following the Court's rulings on Defendants' motions to exclude this evidence from trial. *See* [D.E. 409] ("Plaintiff's expert witnesses on damages will not testify at trial and may instead be called, if necessary, at any hearing after a jury verdict is rendered in this case."). *See also* Plaintiff's Rule 26 Expert Disclosures [D.E. 239-1]*;* [D.E. 335-4] ("As a result of James Tracy's termination by Florida Atlantic University on January 5, 2016, James and his family have lost earnings and benefits from his employment to date of re-entry into the labor market, probable relocation expenses and child care expenses, legal fees in litigating recovery and probable earnings diminution through his remaining work-life."). Defendants continue to ignore Plaintiff's dire financial circumstances in their continued efforts to retaliate against Plaintiff by attempting to secure a bankrupting costs award, but the Court certainly did not err in considering this evidence.

      The Defendants do not deny that the hardship caused by Plaintiff's termination has since resulted in Plaintiff's spouse[2] filing for bankruptcy last year [*In re Maris Lani Hayashi*, Case No. 20-16035-EPK] and they cannot dispute that Plaintiff and his family are actually suffering from financial hardship now, or that Plaintiff cannot secure work in academia as a result of his termination by the Defendants. Instead, the Defendants' Motion for Reconsideration attempts to obfuscate and discredit Plaintiff's hardship—caused by the Defendants—without any evidence,

---

[2] The Court should recall Defendant Coltman joking about Plaintiff's termination to Plaintiff's spouse's supervisor while Coltman and other administrators from the Defendant University celebrated finally finding the "winning metaphor" to circumvent the First Amendment [D.E. 249-13] ("How is your employee [Plaintiff's spouse]? Mine [Plaintiff] is packing up his office today").

3

based purely on unsubstantiated speculation and despite the overwhelming record evidence in the form of sworn affidavits and other documentary evidence, including Plaintiff's deposition testimony, as well as expert reports and findings concerning Plaintiff's hardship and income loss. Defendants' Motion for Reconsideration erroneously suggests the Court did not properly consider this record evidence in denying the Defendants' Motion for Costs, and baselessly suggests Plaintiff must somehow be able to afford to pay $43,958.27 (after earning only approximately $4,677.54 in 2020 in his first job since Defendants terminated him nearly five years earlier) because of Plaintiff's legal defense fund and ongoing appeal in this case.

Regardless of Defendants' continued misrepresentations and efforts to continue to retaliate against Plaintiff for challenging constitutional rights violations, and now to retaliate against Plaintiff for exercising his constitutional right to file an appeal, Plaintiff's hardship is nevertheless well-documented in the record, including Plaintiff's sworn declaration attesting that he has been unable to secure employment in academia. [D.E. 272-18]. The Court appropriately and properly used its discretion in considering Plaintiff's termination, and the impact this had on Plaintiff's family of seven, including five young children—two of whom have significant developmental disabilities—who continue to suffer substantial financial hardship, surviving on approximately $60,000.00 in annual income from Plaintiff's spouse. The Court also properly considered the fact Plaintiff earned only approximately $4,677.54 in 2020 after nearly five years of unemployment. Defendants' unfounded claim that Plaintiff must first establish that he is "unable to work" before the Court can reduce Defendants' costs is completely meritless and not supported by the law.

Notwithstanding the fact that Plaintiff already presented substantial documentation of Plaintiff's inability to pay $43,958.27, in the event the Court would like Plaintiff to provide a new sworn declaration, the Plaintiff has attached as Exhibit "A" another sworn declaration providing the Court with further substantial documentation demonstrating Plaintiff's inability to pay $43,958.27. Plaintiff's new sworn declaration shows his limited income and liabilities, including approximately $23,120.00 in credit card debt and $105,860.00 in taxes and penalties owed to the IRS. As for Plaintiff's legal defense fund highlighted by Defendants' Motion for Reconsideration—as if it could somehow satisfy Defendants' exorbitant costs—it has a balance of $1,278.00 to date.

4

**II.     The Court Did Not Err in Exercising its Discretion to Reduce Defendants' Costs**

Plaintiff and his family, who have already suffered immensely for the past several years as a result of Plaintiff's wrongful termination from a highly-publicized termination for "insubordination"—unlawfully levied by the Defendants in retaliation for Plaintiff's constitutionally-protected personal blogging—will only suffer further substantial financial hardship should Defendants' entire costs be taxed against Plaintiff. The Court properly exercised its discretion to reduce Defendants' costs based upon the substantial financial hardship of Plaintiff and his family. *Blevins v. Heilig-Meyers Corp.*, 184 F.R.D. 663, 669 (M.D. AL 1999) (holding that plaintiff was entitled to a 90% reduction of Defendants' costs given the substantial hardship she and her family would suffer should she be required to pay the entire amount of Defendants' costs); *See*, *e.g.*, *Smith v. Southeastern Pa. Transp. Auth.*, 47 F.3d 97, 100 (3d Cir.1995) (citing cases that "recognize that a district court may consider a losing party's indigency in applying Rule 54(d)"); *In re Ruben*, 825 F.2d 977, 987 (6th Cir.1987) ("district judges are encouraged to consider the question of indigency fully for the record" in assessing costs); *Burroughs v. Hills*, 741 F.2d 1525, 1542 (7th Cir.1984) ("a losing party may overcome [Rule 54(d)'s] presumption by a showing of indigency"); *Poe v. John Deere Co.*, 695 F.2d 1103, 1108 (8th Cir.1982) ("It is of course within a court's discretion to deny costs because a plaintiff is poor or for other good reason"); *cf. Harris v. Forsyth*, 742 F.2d 1277, 1278 (11th Cir.1984) (costs against an indigent is within court's discretion).

There was good reason for the Court to reduce Defendants' costs 90%, including but not limited to the substantial documentation presented by Plaintiff throughout pendency of this action, as well as the sound and legal reasons presented by this Court in its Order reducing the costs. The fact that Plaintiff's earnings in 2020 of $4,677.54—after already suffering from several years of unemployment and his spouse's recent bankruptcy—barely covers Defendants' reduced cost award should alone dispel any further contention by Defendants that Plaintiff hasn't sufficiently presented substantial documentation of his dire financial circumstances. The record demonstrates that Plaintiff is clearly unable to pay Defendants' costs of $43,958.27. Accordingly, the Court did not err in reducing Defendants' costs award.

## CONCLUSION

WHEREFORE, Plaintiff respectfully requests the Court deny Defendants' Motion for Reconsideration.

**CERTIFICATE OF SERVICE**

      I HEREBY CERTIFY that on this 9th day of August, 2021, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record per the attached Service List via transmission of Notices of Electronic Filing generated by CM/ECF.

/s/ Louis Leo IV
Louis Leo IV, Esq.
FL Bar No. 83837
Joel Medgebow
FL Bar No. 84483
**Florida Civil Rights Coalition, P.L.L.C.**
1279 W. Palmetto Park Rd. #273731
Boca Raton, FL 33486
Telephone: (561) 714-9126
Email: louis@floridacivilrights.org

**SERVICE LIST**

Louis Leo IV, Esq. (louis@floridacivilrights.org)
Joel Medgebow, Esq. (Joel@medgebowlaw.com)
Matthew Benzion, Esq. (mab@benzionlaw.com)
Florida Civil Rights Coalition, P.L.L.C.,
1279 W. Palmetto Park Rd. #273731
Boca Raton, FL 33486

Enrique Arana, Esq. (eArana@carltonfields.com)
Carlton Fields Jorden Burt, P.A.
100 SE Second Street, Suite 4200
Miami, Florida 33131

*Counsel for Plaintiff*

Holly Goodman, Esq. (hgoodman@gunster.com)
Gunster, Yoakley & Stewart, P.A.
777 South Flagler Dr. Suite 500 East
West Palm Beach, FL 33401

*Counsel for FAU Defendants*